# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

## No. 23-1223

---

### SMITH & WESSON BRANDS, INC.; SMITH & WESSON SALES COMPANY; and SMITH & WESSON INC.,

*Plaintiffs-Appellants,*

v.

### ATTORNEY GENERAL OF THE STATE OF NEW JERSEY; NEW JERSEY DIVISION OF CONSUMER AFFAIRS,

*Defendants-Appellees.*

---

### APPELLANTS' OPENING BRIEF AND
### JOINT APPENDIX VOLUME I OF III (JA1-JA21)

---

**On Appeal from the United States District Court for the
District of New Jersey, No. 20-CV-19047**

---

Courtney G. Saleski
**DLA PIPER LLP (US)**
One Liberty Place
1650 Market Street
Suite 5000
Philadelphia, PA 19103
(215) 656-2431

Joseph A. Turzi
Edward S. Scheideman
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
(202) 799-4000

Christopher M. Strongosky
**DLA PIPER LLP (US)**
51 John F. Kennedy
Parkway, Suite 120
Short Hills, NJ 07078
(973) 520-2550

*Attorneys for Plaintiffs-Appellants Smith & Wesson Brands, Inc.,
Smith & Wesson Sales Company, and Smith & Wesson Inc.*

April 24, 2023

## <u>CORPORATE DISCLOSURE STATEMENT UNDER RULE 26.1</u>

Appellants' Corporate Disclosure Statements were previously filed at Third Circuit Docket Entries 5, 6, and 7.

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................... iv

STATEMENT OF JURISDICTION ...................................................1

STATEMENT OF THE ISSUES.........................................................2

INTRODUCTION ................................................................................3

STATEMENT OF THE CASE.............................................................5

I.   Statement of the Facts ...............................................................5

    A.   The Attorney General's Office Is Targeting Smith & Wesson
        Because of the Company's Viewpoint. .......................................5

    B.   The Attorney General's Office Served a Subpoena Facially
        Targeting Smith & Wesson's Second Amendment Advocacy
        and Retaliated with a State-Court Enforcement Proceeding After
        Smith & Wesson Filed Its Federal Complaint.............................8

    C.   The Chancery Division Ordered Production After the Expedited
        Summary Action. ......................................................................10

    D.   The Attorney General's Office Has Failed to Provide a Basis
        for Its Investigation and, When Pressed by Courts, It Has
        Misrepresented Smith & Wesson's Advertisements. .................12

II.  Procedural History ...................................................................14

    A.   This Court Reversed the District Court's *Younger* Dismissal...................14

    B.   Proceedings in the District Court on Remand ...........................15

    C.   The New Jersey Appellate Division Declined to Address the Merits
        of Smith & Wesson's Constitutional Objections.......................16

STATEMENT OF RELATED PROCEEDINGS....................................18

SUMMARY OF ARGUMENT ..............................................................19

STANDARD OF REVIEW ...................................................................21

ARGUMENT ........................................................................................21

I.   The New Jersey Appellate Division's Subsequent Opinion Removes the
     Basis for the District Court's Holding on Claim Preclusion. ...........21

II.  In the Alternative, the District Court Order Should Be Reversed Because
     the District Court Erred in Concluding That Smith & Wesson's Claims
     Are Barred by New Jersey's Preclusion Doctrines.............................26

     A.   Claim Preclusion Does Not Apply Because the Chancery Division's
          Procedures Prevented a Full and Fair Opportunity to Litigate.................27

     B.   Because the Different Proceedings Raised Distinct Claims, Claim
          Preclusion Cannot Apply............................................................34

     C.   Under *Bruen*, the Second Amendment Analysis Changed After the
          Chancery Division's Order...........................................................40

     D.   The District Court Erred by Relying on the Entire Controversy
          Doctrine, an Argument the Attorney General's Office Did Not
          Even Press .............................................................................41

III. The District Court's Order Should Be Reversed Because Smith & Wesson
     Reserved Its Right to Proceed in Federal Court................................44

CONCLUSION ....................................................................................46

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aldossari ex rel. Aldossari v. Ripp,*
  49 F.4th 236 (3d Cir. 2022) ..................................................24

*Alexander v. Gardner-Denver Co.,*
  415 U.S. 36 (1974)..............................................................29

*Allen v. McCurry,*
  449 U.S. 90 (1980)..............................................................29

*Axon Enter., Inc. v. F.T.C.,*
  — U.S. —, No. 21-1239, 2023 WL 2938328 (Apr. 14, 2023)...........26

*B.F. v. Division of Youth & Family Services,*
  686 A.2d 1249 (N.J. App. Div. 1997) ...........................................*passim*

*Ohio ex rel. Boggs v. City of Cleveland,*
  655 F.3d 516 (6th Cir. 2011) ..................................................23

*Bondi v. Citigroup, Inc.,*
  32 A.3d 1158 (N.J. App. Div. 2011) ........................................36, 37

*Bradley v. Pittsburgh Bd. of Educ.,*
  913 F.2d 1064 (3d Cir. 1990) ..................................................45

*Cafferata v. Peyser,*
  597 A.2d 1101 (N.J. App. Div. 1991) ...........................27, 28, 29, 43

*Central R.R. v. Neeld,*
  139 A.2d 110 (N.J. 1958) ......................................................24

*Culver v. Ins. Co. of N. Am.,*
  559 A.2d 400 (N.J. 1989) ......................................................34

*Defense Distributed v. Bruck,*
  30 F.4th 414 (5th Cir. 2022) ....................................................6

*District of Columbia v. Heller*,
554 U.S. 570 (2008)..............................................................................6

*DM Arbor Ct., Ltd. v. Houston*,
988 F.3d 215 (5th Cir. 2021) ..............................................................24

*England v. Louisiana State Board of Medical Examiners*,
375 U.S. 411 (1964)......................................................................*passim*

*Est. of Roman v. Newark*,
914 F.3d 789 (3d Cir. 2019) ...............................................................26

*Exxon Mobil Corp. v. Healey*,
28 F.4th 383 (2d Cir. 2022) ................................................................31

*Exxon Mobil Corp. v. Schneiderman*,
316 F. Supp. 3d 679 (S.D.N.Y. 2018) ..........................................30, 31

*Grabowsky v. Twp. of Montclair*,
115 A.3d 815 (N.J. 2015) ...................................................................27

*Herrera v. Wyoming*,
139 S. Ct. 1686 (2019).........................................................................40

*Home Depot USA, Inc. v. Lafarge N. Am., Inc.*,
59 F.4th 55 (3d Cir. 2023) ..................................................................21

*In re Hubert*,
129 A. 698 (N.J. Ch. 1925)..................................................................23

*Instructional Sys., Inc. v. Computer Curriculum Corp.*,
35 F.3d 813 (3d Cir. 1994) ..................................................................44

*Kozyra v. Allen*,
973 F.2d 1110 (3d Cir. 1992) ..............................................................43

*Levchuk v. Jovich*,
855 A.2d 635 (N.J. Law. Div. 2004) ..............................................28, 43

*Levine v. Seidel*,
319 A.2d 747 (N.J. App. Div. 1974) ...................................................28

*Merritts v. Richards*,
  62 F.4th 764 (3d Cir. 2023) ............................................................24, 25

*Mitchum v. Foster*,
  407 U.S. 225 (1972).................................................................................9

*N. Mill St., LLC v. Aspen*,
  6 F.4th 1216 (10th Cir. 2021) ...............................................................24

*N.Y. State Rifle & Pistol Association, Inc. v. Bruen*,
  142 S. Ct. 2111 (2022)...............................................................20, 40, 41

*O'Brien v. Baldwin*,
  65 A.2d 65 (N.J. App. Div. 1949) ........................................................37

*Olds v. Donnelly*,
  696 A.2d 633 (N.J. 1997) ......................................................................42

*Olivieri v. Y.M.F. Carpet, Inc.*,
  897 A.2d 1003 (N.J. 2006) ..............................................................20, 40

*Parkford Owners for Better Cmty. v. Windeshausen*,
  296 Cal. Rptr. 3d 825 (Cal. App. 2022)................................................25

*Pascucci v. Vagott*,
  362 A.2d 566 (N.J. 1976) ......................................................................37

*Prado v. State*,
  895 A.2d 1154 (N.J. 2006) ....................................................................37

*Pryor v. Nat'l Collegiate Athletic Ass'n*,
  288 F.3d 548 (3d Cir. 2002) ..................................................................21

*Riley v. Nat'l Fed'n of Blind of N.C., Inc.*,
  487 U.S. 781 (1988)...............................................................................11

*Rippon v. Smigel*,
  158 A.3d 23 (N.J. App. Div. 2017) .......................................................26

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
  515 U.S. 819 (1995)..................................................................................8

*Rosendale v. Brusie,*
  374 F. App'x 195 (2d Cir. 2010) ........................................................24

*Sensient Colors Inc. v. Allstate Ins. Co.,*
  939 A.2d 767 (N.J. 2008) ................................................................11

*Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.,*
  27 F.4th 886 (3d Cir. 2022) .......................................................*passim*

*State v. Cusick,*
  282 A.2d 781 (N.J. App. Div. 1971) ................................................21

*United States v. Athlone Indus., Inc.,*
  746 F.2d 977 (3d Cir. 1984) ...........................................................34

*Velasquez v. Franz,*
  589 A.2d 143 (N.J. 1991) ...........................................19, 22, 23, 24

*Walker v. Choudhary,*
  40 A.3d 63 (N.J. App. Div. 2012) ...................................................24

*Younger v. Harris,*
  401 U.S. 37 (1971)...............................................................4, 14, 45

**Statutes, Regulations, and Rules**

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1331 ...................................................................................1

42 U.S.C. § 1983 ...........................................................................*passim*

N.J.S.A. § 56:8-6..............................................................................36, 37

N.J.A.C. § 13:45A-4.1 .....................................................................37, 41

N.J.R. 1:9-6 .......................................................................................36, 37

N.J.R. 4:67-4 .....................................................................................33, 43

N.J.R. 4:30A......................................................................................42, 43

## <u>Constitutional Provisions and Other Authorities</u>

U.S. Constitution, First Amendment .................................................*passim*

U.S. Constitution, Second Amendment ...........................................*passim*

U.S. Constitution, Fourth Amendment .............................................12, 36

Charles Alan Wright & Arthur R. Miller, Federal Practice &
   Procedure § 2369 (4th ed. 2022)..........................................................23

N.J. Prac., Landlord & Tenant Law § 19.11 n.46...................................43

1 N.J. Pleading & Practice Forms § 2:98................................................43

## <u>STATEMENT OF JURISDICTION</u>

The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331 because this case arose under 42 U.S.C. § 1983.  This Court has jurisdiction under 28 U.S.C. § 1291.

The District Court dismissed the Complaint on December 27, 2023.  JA2. Appellants Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, and Smith & Wesson Inc. (collectively, "Smith & Wesson") filed a timely notice of appeal on January 25, 2023.  JA1.

## <u>STATEMENT OF THE ISSUES</u>

Did the District Court err by dismissing this case on res judicata grounds where a subsequent opinion of the Appellate Division gutted the reasoning relied upon by the District Court, the District Court's application of New Jersey's claim preclusion and entire controversy doctrines was riddled with errors, and Smith & Wesson reversed its right to litigate in federal court?

## **INTRODUCTION**

This appeal stems from an overreaching, politically motivated investigation by the New Jersey Attorney General's Office.  The Office issued an administrative subpoena in October 2020 ("Subpoena") to Smith & Wesson, in an investigation purportedly under New Jersey's Consumer Fraud Act ("CFA").  The investigation and Subpoena, in operation and effect, seek to punish Smith & Wesson for its public advocacy of Second Amendment rights.  Smith & Wesson filed this case to challenge the Subpoena's validity and to seek redress for the unconstitutional conduct by the Attorney General's Office.  Ample evidence from the public record—detailed in Smith & Wesson's Amended Complaint—shows that Smith & Wesson is entitled to litigate the merits of its constitutional claims.  After being reversed by this Court once, the District Court allowed the Attorney General's Office to file a new motion to dismiss, and dismissed on the grounds of claim preclusion and the entire controversy doctrine.

Although the District Court's decision contains numerous errors warranting reversal, this Court may reverse without considering those errors.  On January 26, 2023, after the District Court issued its decision and Smith & Wesson appealed, the New Jersey Appellate Division concluded that the Chancery Division could not have erred by failing to consider any of Smith & Wesson's constitutional arguments "on the merits."  JA597-98.  The Appellate Division added that even if such an obligation

existed, Smith & Wesson's constitutional claims were "not ripe for [its] consideration."  JA598.  The Appellate Decision ruling, being the final word on the state-court proceeding, establishes that no final adjudication on the merits exists to support the District Court's ruling of claim preclusion.

Even absent the Appellate Division's subsequent opinion, the District Court's decision must be reversed for three principal reasons.  *First*, the requirements for claim preclusion have not been met because the state-court proceeding was summary in nature and New Jersey courts would not give it preclusive effect.  *Second*, the District Court's order contained numerous errors in the application of New Jersey's claim preclusion and entire controversy doctrines.  *Third*, Smith & Wesson properly reserved its claims in federal court under the *England* doctrine by loudly objecting to the state-court summary action.

The District Court's reasoning contains a number of doctrinal errors, just like the last time this case was on appeal when this Court reversed the District Court's erroneous decision to abstain on *Younger* grounds.  *Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 27 F.4th 886, 888 (3d Cir. 2022); *see also Younger v. Harris*, 401 U.S. 37 (1971).  In a concurring opinion, Judge Matey observed that Smith & Wesson's allegations give rise to "[p]ointed questions that are all appropriately considered by" the District Court on remand.  *Id.* at 897 (Matey, J., concurring).

4

Judge Matey's review of those allegations led him to observe that "the whole point" of the Attorney General's investigation appeared to be deterrence of constitutionally protected activity. *Id.* at 896-97 & n.4. For that reason, Judge Matey explained that, on remand, the District Court should "wrestle with the perplexing facts of this case," which "present novel questions at the crossroads between the guarantees in the First and Second Amendments." *Id.* at 896. Opining on the Attorney General's behavior, including misrepresenting a basis for the investigation, Judge Matey observed that the litigation tactics employed by the Attorney General's Office "suggest[ed] that careful review of New Jersey's entire investigation is warranted." *Id.* at 897 n.7. Neither the District Court nor the state court have ever wrestled with these perplexing facts (or even permitted discovery). This Court should accordingly reverse.

## STATEMENT OF THE CASE

### I.   Statement of the Facts

### A.   The Attorney General's Office Is Targeting Smith & Wesson Because of the Company's Viewpoint.

The Attorney General's Office has engaged in a pattern of conduct that targets Smith & Wesson because of its viewpoint on the Second Amendment and related issues. Smith & Wesson's allegations in its 51-page Amended Complaint detail the company's outspoken public advocacy of Second Amendment rights.

5

In short, the Attorney General's Office has demonstrated an unrelenting effort to circumscribe Second Amendment rights, and related speech, by Smith & Wesson and other Second Amendment-protected businesses and Second Amendment advocates.    Smith & Wesson's views are summarized in its "Principles for Responsible Engagement" ("Principles"), JA299, in which the company expresses a commitment to "engag[ing] in advocacy through education, communication, and public affairs efforts on behalf of its shareholders, employees, and customers" who oppose "the imposition of onerous and unnecessary regulations adversely impacting citizens' Second Amendment rights." *Id.*   Smith & Wesson advocates that the Supreme Court's 2008 ruling in *District of Columbia v. Heller*, 554 U.S. 570 (2008), "confirm[ed] the broad rights of citizens to possess firearms" and is "settled law." *Id.*

The Principles articulate positions that are directly at odds with the Attorney General's well-advertised attempts to use his regulatory and prosecutorial authority to impose gun control, even by means of litigation outside of the state of New Jersey, conduct for which he has been criticized by the courts. *See, e.g.*, *Defense Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022) (explaining that Attorney General's Office had engaged in "tactics suggesting the abusive manipulation of federal court procedures in order to delay or altogether avoid meaningful merits consideration of Plaintiffs' claims"); *Smith & Wesson Brands, Inc.*, 27 F.4th at 897 & n.4 (Matey, J.,

concurring). While serving as Attorney General, Gurbir Grewal (who issued the Subpoena) announced that the lawful carrying of firearms should not be allowed because "[p]ublic carrying of firearms is dangerous to our residents and to law enforcement." JA311. Further, he publicly vowed to "turn up the heat" on Smith & Wesson. JA348. In pursuit of that goal, he issued facially flawed "reports" that falsely sought to place responsibility for crimes—committed by third parties—on Smith & Wesson as a firearm manufacturer. JA303-10. Although there has been some subsequent turnover of Attorneys General, the Office "has continued moving forward with this investigation." JA388.

The Attorney General's Office's investigation has been influenced by a partnership with groups with an anti-Second Amendment agenda such as the Giffords Law Center. JA54-55. In the words of that group, the Office has paired "the investigative and enforcement powers of the state" with the efforts of anti-Second Amendment activists to advance their political interests. JA313. As part of that effort, the Attorney General has hired as "Special Counsel for Firearms Safety Litigation" the same lawyers who have formally partnered with the activists in the Firearms Accountability Counsel Taskforce. JA353; JA301. The Attorney General's Office pays these firms on a contingency basis, creating a bounty system that incentivizes targeting of Smith & Wesson and other manufacturers, rather than the

impartial administration of justice that prosecutors are duty bound to pursue.  JA56-57; JA328.

**B.**    **The Attorney General's Office Served a Subpoena Facially Targeting Smith & Wesson's Second Amendment Advocacy and Retaliated with a State-Court Enforcement Proceeding After Smith & Wesson Filed Its Federal Complaint.**

The Attorney General's Office issued the Subpoena in October 2020, following a series of public acts and statements targeting Smith & Wesson.  JA84-97.  The Subpoena purports to investigate as-yet undefined "fraudulent" conduct directed at consumers.  The reality of the Subpoena is otherwise.  It seeks documents relating primarily to opinions or value judgments (which cannot, by virtue of being opinion, constitute fraud) on matters of current public debate, *i.e.*, First Amendment protected speech.  These opinion-based topics include: (1) whether firearms enhance safety; (2) whether the concealed carrying of firearms enhances one's "lifestyle"; (3) whether "novice, untrained [c]onsumers" can effectively use a Smith & Wesson firearm for personal or home defense; and (4) whether Smith & Wesson firearms can be legally carried and concealed.  JA95.[1]

In December 2020, Smith & Wesson responded to the Subpoena by serving timely objections and by contemporaneously filing a Complaint in the U.S. District

---

[1] Focusing on opinion speech and targeting Smith & Wesson constitute classic viewpoint discrimination, which the U.S. Constitution forbids.  *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

Court for the District of New Jersey.  Through its Complaint, Smith & Wesson asserted constitutional and other claims because the Attorney General's Subpoena targeted protected opinion with the goal of suppressing that speech.  JA33-83.  Smith & Wesson's federal lawsuit sought relief under 42 U.S.C. § 1983, the primary method by which federal courts protect citizens against oppressive and unconstitutional state action.  Smith & Wesson asked the District Court to do what the Supreme Court has long described as the role of federal courts under 42 U.S.C. § 1983: "to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972).

Two months after Smith & Wesson filed suit, and after seeking and receiving two extensions in federal court, the Attorney General's Office moved to sidestep the District Court action (and the threshold constitutional issues it raised) by filing a summary action in the Chancery Division seeking to enforce the Subpoena.  JA122-29.  The 7-page complaint "alleged only [a] violation of a subpoena." *Smith & Wesson Brands, Inc.*, 27 F.4th at 892.  The Attorney General's Office asked the Chancery Division to enforce the Subpoena and compel production, "irrespective of the merits" of the federal suit.  JA139.  The Chancery Division ultimately did so.

The Attorney General's Office requested draconian sanctions such as a total ban on Smith & Wesson's advertisement and sale of merchandise in New Jersey,

even though such sanctions could not be had at that stage as a matter of New Jersey law. JA133. In other words, the Attorney General's Office asked the Chancery Division, in a summary, expedited action, to both prohibit Smith & Wesson from speaking and doing business in the state of New Jersey because Smith & Wesson filed the federal court action. No emergent circumstances justified the summary and expedited relief. The ten years of "advertising" information requested did not suddenly become more relevant or pressing. The *only* thing that had changed in the interim was that Smith & Wesson filed suit in federal court to vindicate its constitutional rights.

## C.    The Chancery Division Ordered Production After the Expedited Summary Action.

On June 30, 2021, the Chancery Division ordered Smith & Wesson to comply with the Subpoena. JA274. The court ignored almost all of Smith & Wesson's constitutional objections, and those it did address were rejected summarily. JA276-88. The Chancery Division completely failed to address the chilling effect of the Attorney General's Office's conduct on Smith & Wesson's First and Second Amendment rights, along with other constitutional objections. *Id.*

The Chancery Division even failed to address the most basic issues related to the Attorney General's first purported justification for the Subpoena—compelled speech pursuant to New Jersey's Hazardous Products Regulation by requiring Smith

& Wesson to disclose New Jersey law in its advertisements to consumers. Such a requirement would unconstitutionally compel speech by forcing Smith & Wesson to make affirmative statements conveying the government's message, without any showing that this requirement is the least burdensome means to do so, as required by the First Amendment. *See Riley v. Nat'l Fed'n of Blind of N.C., Inc.*, 487 U.S. 781, 797-98 (1988).

Finally, the Chancery Division held that New Jersey's "first-to-file" rule, which requires that a subsequently filed action be stayed when it involves the same or similar issues as an earlier-filed action, did not require a stay of the state court proceedings. JA281-84; *see, e.g.*, *Sensient Colors Inc. v. Allstate Ins. Co.*, 939 A.2d 767, 774 (N.J. 2008). The court justified its ruling on this issue by labeling Smith & Wesson's federal suit a "tactical maneuver." JA283. The state court never explained how filing a well-pled complaint in federal court was a "tactical maneuver"—especially given that 42 U.S.C. § 1983, the statute under which Smith & Wesson sued, specifically gives plaintiffs the right to challenge state government actors' deprivation of constitutional rights.

After unsuccessfully moving for a stay, Smith & Wesson produced documents to the Attorney General's Office pursuant to the Subpoena. The parties have agreed that, should Smith & Wesson prevail, the Attorney General's Office would return the subpoenaed documents. JA394, JA399-400.

**D.      The Attorney General's Office Has Failed to Provide a Basis for Its Investigation and, When Pressed by Courts, It Has Misrepresented Smith & Wesson's Advertisements.**

The summary action demonstrated that the Attorney General had no valid basis for the Subpoena in the first instance.  Tellingly, during a May 27, 2021, hearing before the Chancery Division, when pressed by the court to explain the basis underlying the issuance of the Subpoena, counsel for the Attorney General all but admitted there was none.  He was further unable to articulate any factual statement made by Smith & Wesson that he suspected was false or fraudulent.

When the court asked the Assistant Attorney General to articulate an "anchor" to justify the Subpoena requests—*i.e.*, "specific statements [or] specific products" that may have violated the CFA—the Assistant Attorney General explained that the entire investigation was and remains grounded in speculation and hypotheticals.  *See* JA257.  He stated that a factual basis for the Subpoena was "not appropriate to disclose here because (a) it's our investigative thinking and our strategy, and (b) we don't have all of the arguments yet."  *Id.*  At no time did the Assistant Attorney General even attempt to meet his Fourth Amendment burden to show that the Subpoena was reasonably related to a legitimate purpose by disclosing the necessarily public statements that allegedly deceived consumers.

When asked to clarify, the Attorney General's Office simply stated that "we have *concerns* that there *might* be a violation of the regulation.  We haven't

conclusively determined that yet, nor have we conclusively determined that there's a statutory violation." JA258 (emphasis added). Indeed, the Attorney General's Office did not "yet know what advertisements will be at issue, let alone which specific statements might violate the CFA," JA231, even though these advertisements are public by their very nature. Thus, the Attorney General's Office inexplicably was unable to identify for the court any publicly available advertisements that it believed were potentially misleading to New Jersey consumers.

When subsequently questioned by this Court at oral argument about whether a single false advertisement existed, the Assistant Attorney General "selectively quoted" from an advertisement—inaccurately twisting a "precise" and "aspirational" statement in an advertisement into a claim about safety. *Smith & Wesson Brands, Inc.*, 27 F.4th at 897 n.4 (Matey, J., concurring). Judge Matey commented that the actual advertisement contained a "far-more precise statement, it seems, than New Jersey's misleading argument." *Id.* A similar misrepresentation occurred in front of the Appellate Division, when the Assistant Attorney General asserted that Smith & Wesson had claimed in an advertisement that a firearm was "superior" to another. JA567 (docket notation of letter to Appellate Division). That statement was demonstrably false, and the Attorney General could neither identify

such an advertisement nor point to when it had been submitted to the Chancery Division (because it was not).

## II.    Procedural History

### A.    This Court Reversed the District Court's *Younger* Dismissal

Smith & Wesson first appealed to this Court after the District Court dismissed on *Younger* abstention grounds. *Smith & Wesson Brands, Inc.*, 27 F.4th at 888. This Court analyzed the procedural posture of the state-court and federal-court actions and rejected the Attorney General's Office's arguments that *Younger* should apply. The Court determined that the summary action was not quasi-criminal and, thus, was not a civil enforcement action. *Id.* at 891-92. The Third Circuit emphasized that Smith & Wesson acted well within its rights when it filed this action because federal law authorizes this § 1983 lawsuit. *Id.* at 893.

In a concurring opinion, Judge Matey explained that, on remand, the District Court should "wrestle with the perplexing facts of this case," which "present novel questions at the crossroads between the guarantees in the First and Second Amendments." *Id.* at 896 (Matey, J., concurring). Smith & Wesson's allegations give rise to "[p]ointed questions that are all appropriately considered by the District Court on remand." *Id.* at 897. The Attorney General's Office's litigation conduct "suggests that careful review of New Jersey's entire investigation is warranted." *Id.*

at 897 & n.4.  Judge Matey noted that "the whole point" of the investigation appears to be deterrence of constitutionally protected activity.  *Id.*

## B.    Proceedings in the District Court on Remand

On remand, Smith & Wesson requested that it be permitted to seek discovery. The District Court initially set a discovery conference.  Doc. No. 56.  Smith & Wesson timely served its initial disclosures but the Attorney General's Office did not, taking the position that it need not engage in *any* discovery.  Doc. No. 58.  After learning that the defendant did not want to engage in discovery, the District Court reversed course, cancelling the Rule 16 conference and ordering that no discovery could be exchanged until it resolved the forthcoming motion to dismiss.  *See* Doc. No. 60.

The District Court dismissed with prejudice Smith & Wesson's Amended Complaint without oral argument.  The District Court made clear that it was dismissing on the ground of claim preclusion, rather than issue preclusion.  JA11 & n.3.  The court found that "the New Jersey Superior Court's 'June 30, 2021 order rejecting [Smith & Wesson's] constitutional arguments is a final judgment that precludes relitigation of the same claims and issues in this case.'"  JA11 (quoting Motion to Dismiss); *see* JA21 (referring to the order as a "prior final judgment on the merits").

Smith & Wesson timely appealed.  JA1.

### C.    The New Jersey Appellate Division Declined to Address the Merits of Smith & Wesson's Constitutional Objections

After Smith & Wesson appealed to this Court, the New Jersey Appellate Division issued an opinion in the state-court subpoena-enforcement proceedings. JA574-601.   In the opinion, the court affirmed the Chancery Division's order enforcing the Subpoena, but it explicitly *declined* to address the merits of Smith & Wesson's constitutional objections to the Subpoena.  JA597-599.

Relying on the doctrine of "strict necessity," the Appellate Division first explained that it would consider Smith & Wesson's constitutional objections only if "absolutely necessary" to resolve the underlying dispute over the enforceability of the Subpoena.  JA591-93.  Proceeding from that premise, the Appellate Division concluded it was unnecessary to adjudicate those constitutional arguments on the merits because constitutional objections to a subpoena need not be adjudicated during summary subpoena-enforcement proceedings.  The court thus rejected Smith & Wesson's argument that "the trial court erred by not addressing each constitutional argument on its merits."  JA597-98.  Then, the court concluded that, even if there were such an obligation, it would not apply because Smith & Wesson's constitutional claims were "not ripe for [the court's] consideration."  JA598.  In so holding, the court reasoned that the claims were not ripe because there would be "no hardship to the parties by declining to address [Smith & Wesson's] constitutional

arguments now." JA599.  The court further reasoned that declining to address the merits would "avoid 'premature adjudication'" of Smith & Wesson's constitutional claims, which Smith & Wesson had preserved.  *Id.*  So the court "end[ed its] analysis" and "disposed of" Smith & Wesson's "constitutional arguments" without further discussion or any analysis of their merits.  *Id.*

Having declined to consider the merits of those claims, the Appellate Division concluded that the Subpoena was valid and affirmed.  JA599-601.

## STATEMENT OF RELATED PROCEEDINGS

After Smith & Wesson filed this lawsuit, the New Jersey Attorney General's Office moved in state court, on February 12, 2021, to enforce compliance with the administrative Subpoena in a summary action. *See* JA122. As explained above, the New Jersey Appellate Division has affirmed the Chancery Division's order compelling Smith & Wesson to produce documents responsive to the Subpoena. JA574.

As detailed throughout this brief, this is the second time this case has come before this Court. *See Smith & Wesson Brands, Inc.*, 27 F.4th at 886.

## SUMMARY OF ARGUMENT

The District Court erred by dismissing on the grounds of res judicata (claim preclusion) and the entire controversy doctrine and by failing to adjudicate Smith & Wesson's federal constitutional claims on the merits. In doing so, the District Court ignored or misapplied basic principles of preclusion. This Court should accordingly reverse the District Court's order and remand.

As a threshold matter, this Court can reverse without addressing the various errors committed by the District Court. That is because, *after* the District Court dismissed this case, the Appellate Division issued an Opinion in the state-court proceeding explicitly declining to address the merits of Smith & Wesson's constitutional objections to the Subpoena. As a result, Smith & Wesson's constitutional claims have *not* been resolved by the state courts in a "final adjudication on the merits," as required for claim preclusion to apply. *Velasquez v. Franz*, 589 A.2d 143, 147 (N.J. 1991). The District Court's contrary ruling that this action was barred by claim preclusion was based on the now-superseded New Jersey Chancery Division's decision, which cannot have any preclusive effect as a matter of law. As a result, this Court should vacate the District Court's ruling.

In the alternative, this Court should reverse even if this Court is inclined to address the District Court's ruling on the merits because the District Court's dismissal of this action as barred by claim preclusion cannot withstand scrutiny.

*First*, Smith & Wesson's constitutional claims are not barred because the Chancery Division's procedures denied Smith & Wesson a full and fair opportunity to develop and litigate those claims. *Second*, claim preclusion does not apply because the claims raised by Smith & Wesson in federal court, on the one hand, and the defenses it was forced to raise in state court, on the other, are meaningfully distinct from one another, including with respect to the relief sought, the theories of liability, and the evidence and material facts relevant to each proceeding. *Third*, at a minimum, Smith & Wesson's Second Amendment claims cannot be barred by claim preclusion because, after the Chancery Division issued its decision, the Supreme Court announced a significant change of law in *N.Y. State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), which constitutes an intervening change in the applicable legal context that requires a new determination on the merits. *Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1010 (N.J. 2006).

*Finally*, the District Court further erred by concluding (sua sponte) that Smith & Wesson's claims were barred by the entire controversy doctrine and by rejecting Smith & Wesson's reservation of its right to litigate in its chosen forum (federal court) under the "*England* reservation" rule first announced *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 421-22 (1964).

## STANDARD OF REVIEW

This Court reviews questions of law, including the application of preclusion doctrines, de novo. *See Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 61 (3d Cir. 2023). This Court also reviews de novo a district court's decision granting a motion to dismiss. *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 559 (3d Cir. 2002). "In evaluating whether dismissal is proper, a court must accept all the factual allegations of the complaint as true, and must draw all reasonable inferences to aid the pleader." *Id.* (internal quotation marks and ellipses omitted).

## ARGUMENT

### I.    The New Jersey Appellate Division's Subsequent Opinion Removes the Basis for the District Court's Holding on Claim Preclusion.

One month after the District Court dismissed this case, the New Jersey Appellate Division issued an opinion in the state-court proceeding that *explicitly declined to address the merits of Smith & Wesson's constitutional arguments*. That opinion is now the controlling opinion in that case and for purposes of claim preclusion here. *See, e.g.*, *State v. Cusick*, 282 A.2d 781, 783 (N.J. App. Div. 1971). The Chancery Division's decision—insofar as it can be read to address the merits of Smith & Wesson's constitutional objections—no longer has any force or effect in determining whether Smith & Wesson's claims were adjudicated "on the merits."

No question exists that the Appellate Division removed the very basis for the District Court's opinion, *i.e.*, that Smith & Wesson's constitutional claims have been resolved in state court in a final judgment on the merits.  Indeed, the District Court's finding of preclusion rested explicitly on the (erroneous) conclusion that the Chancery Division's order enforcing the Subpoena "represents a prior final judgment on the merits" for preclusion purposes.  JA21; *see* JA11-12.  The District Court stressed that the Chancery Division had "expressly rejected S&W's claims that the '[S]ubpoena itself violates constitutional rights.'"  JA8; JA14.

While the Appellate Division affirmed the Chancery Division's subpoena-enforcement order, it declined to consider Smith & Wesson's constitutional arguments on the merits.  JA597-99.  Rejecting Smith & Wesson's argument that the Chancery Division had failed to consider its constitutional arguments, the Appellate Division ruled that the Chancery Division had no need to consider the merits of those claims before enforcing the Subpoena.  This explicit rejection of an on-the-merits consideration necessarily forecloses any basis for claim preclusion, a doctrine that requires an "adjudication on the merits."  *See Velasquez v. Franz*, 589 A.2d 143, 147 (N.J. 1991).

The Appellate Division then continued beyond its ruling rejecting any consideration of the merits and put the final nail in the claim-preclusion coffin by explaining that declining to address the merits would "avoid 'premature

22

adjudication'" of Smith & Wesson's constitutional arguments, *i.e.*, *that the constitutional issues were not ripe.* JA599. Despite U.S. Supreme Court precedent identifying constitutional harms as existing at the moment of the violation, the Appellate Division ruled that there would be "*no hardship to the parties by declining to address defendant's constitutional arguments now.*" *Id.* That ruling on ripeness effectively vitiated the District Court's ruling in this case because an adjudication on ripeness grounds is *not* an adjudication on the merits. As such, "res judicata does not apply to claims that were not ripe for review in a previous action." *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 522 (6th Cir. 2011);[2] *see, e.g.*, Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2369 (4th ed. 2022) (explaining that a "dismissal for lack of jurisdiction . . . , is not an adjudication of a claim's merits and thus dismissing with prejudice would be premature").

It is precisely because dismissals on ripeness grounds are non-substantive threshold rulings granted *without prejudice* that they lack preclusive effect as a matter of law. And that is also why the District Court's *with prejudice* dismissal of Smith & Wesson's claims here cannot be reconciled with the Appellate Division's post-dismissal ripeness ruling. As this Court has explained, the "primary function"

---

[2] New Jersey courts follow these same principles. *See In re Hubert*, 129 A. 698, 698 (N.J. Ch. 1925) ("The principle of res adjudicata is not applicable. The question now presented was not then ripe for decision."), *aff'd*, 133 A. 920 (N.J. Eq. 1926); *Velasquez*, 589 A.2d at 148.

of dismissals with prejudice "is to indicate that a judgment has preclusive effects," whereas dismissals without prejudice on threshold grounds "*typically should not have preclusive effects*." *Merritts v. Richards*, 62 F.4th 764, 772 n.4 (3d Cir. 2023); *see Aldossari ex rel. Aldossari v. Ripp*, 49 F.4th 236, 262 (3d Cir. 2022); *N. Mill St., LLC v. Aspen*, 6 F.4th 1216, 1235 n.22 (10th Cir. 2021) (dismissal without prejudice appropriate when the court relies on ripeness grounds); *DM Arbor Ct., Ltd. v. Houston*, 988 F.3d 215, 220 (5th Cir. 2021) (same); *Rosendale v. Brusie*, 374 F. App'x 195, 197 (2d Cir. 2010) (declining to afford preclusive effect to an earlier "dismissal of the claim as not ripe for review" because the court dismissed without prejudice and "did not dispose of the claim on the merits").

Under New Jersey law, *the Appellate Division's express rejection of any merits' consideration* means that a core requirement of claim preclusion—*i.e.*, a "valid and final adjudication on the merits of the claim"—is absent here. *See Velasquez*, 589 A.2d at 147; *Central R.R. v. Neeld*, 139 A.2d 110, 113 (N.J. 1958); *see also Walker v. Choudhary*, 40 A.3d 63, 74-75 (N.J. App. Div. 2012) (declining to apply claim preclusion where claims were previously dismissed on summary judgment but for reasons unrelated to the merits of the claims). Indeed, the Appellate Division's rejection of Smith & Wesson's argument that the Chancery Court was compelled to consider the constitutional issues implicitly acknowledges that the state courts have not in any way "adjudicated" the "merits" of those claims. And even if

the Appellate Division's decision could be read differently, courts have found that "a ground reached by the trial court and properly challenged on appeal, but not embraced by the appellate court's decision . . . should be evaluated" for preclusion purposes "as though the trial court had not reached the issue." *Parkford Owners for Better Cmty. v. Windeshausen*, 296 Cal. Rptr. 3d 825, 834 (Cal. App. 2022) (internal quotation marks omitted).

These principles foreclose the application of claim preclusion to the now-operative Appellate Division opinion declaring that Smith & Wesson's objections need not and should not be reviewed on the merits. That opinion cannot have any preclusive effect on the constitutional claims that Smith & Wesson is pursuing in this action. *Richards*, 62 F.4th at 772 n.4. A contrary conclusion would mean that Smith & Wesson's constitutional claims can *never* be considered on the merits in any court. Taken together, the effect of those rulings is that Smith & Wesson's claims cannot be heard in state court because they are purportedly "premature," but cannot be pursued in federal court because they have been dismissed with prejudice. Absent this Court's intervention, Smith & Wesson would be foreclosed from litigating in the District Court due to that court's dismissal *with* prejudice, even after the Appellate Division's holding that Smith & Wesson may not protest (as pled) an ongoing violation of the U.S. Constitution. Not only is this result inconsistent with New Jersey's preclusion principles but it is also inconsistent with due process

principles and with the spirit of the U.S. Supreme Court's recent pronouncement that litigants are entitled to adequate judicial review and recourse when raising constitutional challenges to agency action. *Axon Enter., Inc. v. F.T.C.*, — U.S. —, No. 21-1239, 2023 WL 2938328, at *8 (Apr. 14, 2023) (stressing the constitutional concerns that arise where, as here, "[j]udicial review of [a party's] structural constitutional claims would . . . come too late to be meaningful").

In sum, because the Appellate Division affirmed *without* addressing the merits, this Court should reverse the District Court's dismissal of this action with prejudice and remand for consideration of the merits of Smith & Wesson's claims.

## II.    In the Alternative, the District Court Order Should Be Reversed Because the District Court Erred in Concluding That Smith & Wesson's Claims Are Barred by New Jersey's Preclusion Doctrines.

If this Court decides to reach the merits of the District Court's opinion (it need not), this Court can and should reverse on the first element of claim preclusion for the reasons explained above or on the third element for the reasons explained below.

"There are three basic elements to [claim preclusion]: (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." *Rippon v. Smigel*, 158 A.3d 23, 37 (N.J. App. Div. 2017); *see also Est. of Roman v. Newark*, 914 F.3d 789, 804 (3d Cir. 2019).  In addition, New Jersey

courts have developed a number of carve-outs to the equitable doctrine of claim preclusion, two of which are explained below: a party did not have a full and fair opportunity to litigate and a subsequent change in the law.

### A.    Claim Preclusion Does Not Apply Because the Chancery Division's Procedures Prevented a Full and Fair Opportunity to Litigate.

As an initial matter, under New Jersey law, a summary action such as the one at issue here should not be given preclusive effect.  New Jersey courts have repeatedly held that summary actions—which are unique proceedings in which the usual panoply of rights are not present—do not have preclusive effect because of the significant procedural differences inherent in those actions.  *See, e.g.*, *Cafferata v. Peyser*, 597 A.2d 1101, 1104 (N.J. App. Div. 1991); *Grabowsky v. Twp. of Montclair*, 115 A.3d 815, 822 (N.J. 2015).  The Chancery Division's order cannot have preclusive effect here, and the District Court's order to the contrary was erroneous.

Preclusion is not appropriate for obvious reasons—specialized and expedited actions by their very nature do not afford a litigant a full and fair opportunity to litigate claims.  Expedited actions are "tailored to the prompt, inexpensive determination of small claims *and thus may be wholly inappropriate to the determination of the same issues when presented in the context of a much larger claim*."  *Cafferata*, 597 A.2d at 1104 (quoting Restatement (Second) of Judgments

§ 28 (emphasis added)).    Such "*proceedings were never intended to have preclusionary consequences beyond their own scope*." *Id.* (emphasis added).    To hold otherwise would convert each preclusion doctrine from "an equitable device into a trap for the unsuspecting," which would not comport with equity. *Id.*; *see also Levine v. Seidel*, 319 A.2d 747, 749 (N.J. App. Div. 1974) (declining to give preclusive effect to foreclosure proceedings); *Levchuk v. Jovich*, 855 A.2d 635, 641 (N.J. Law. Div. 2004) (no preclusive effect given to summary probate proceeding because the "constrictive procedure does not necessarily lend itself to resolution of all issues between the involved parties").

In *B.F. v. Division of Youth & Family Services*, 686 A.2d 1249, 1254 (N.J. App. Div. 1997), the Appellate Division overturned a trial court ruling that B.F.'s *subsequently filed* § 1983 claim was precluded by a summary proceeding in state court.    In that case, the Division of Youth & Family Services had sought termination of B.F.'s parental rights in a summary action. *Id.* at 1252.    The Appellate Division found no preclusion of the newer § 1983 case, relying heavily on the expedited nature of the summary action. *Id.* at 1254.    The court explained that it would not apply preclusion based on an after-the-fact requirement that a party should have engaged in voluntary motions practice. *See id.* ("Requiring motion practice for the purpose of avoiding the preclusive effect of the entire controversy doctrine would

obviously cause unwarranted delay in these cases so sensitive to the effects of delay.").

Even arbitrations that allow for discovery can fail to meet this standard because "the factfinding process . . . usually is not equivalent to judicial factfinding." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 57-58 (1974).   Like summary actions, the "rights and procedures common to civil trials, such as discovery, . . . cross-examination, and testimony under oath, are often severely limited or unavailable" in arbitration. *Id.*  The informality of arbitration "enables it to function as an efficient, inexpensive, and expeditious means for dispute resolution," but makes it an inadequate forum to fully litigate cases. *Id.* at 58.  The same is true of summary actions.

Like New Jersey, the U.S. Supreme Court has recognized that the requisite substantive and procedural safeguards must have been present to apply claim preclusion. *See Allen v. McCurry*, 449 U.S. 90, 100-01 (1980).  In *McCurry*, the Court emphasized that issue preclusion "does not apply where the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court." *Id.* at 101.  Thus, preclusion principles should not apply to a § 1983 action where, as here, the Chancery Division's procedures or practices disallowed a full investigation and presentation of the evidence. *See id.*

It is readily apparent that the summary action in this case shared all of the procedural and substantive failings identified in *B.F.* and *Cafferata*. The summary action (which was filed after the federal action) concerned only a limited and specific issue: whether documents should be produced pursuant to the Subpoena. The Attorney General's 7-page Verified Complaint contained a single claim for document production. The Chancery Division issued a show-cause order in response. The summary action did not call for an Answer, the matter was decided through expedited motions practice within the matter of a few months, there was no discovery, and there were no witnesses. The District Court's decision to apply preclusion under these circumstances vitiated the procedural and substantive safeguards that the preclusion doctrines require.

The Chancery Division's opinion illustrates an almost complete absence of consideration of Smith & Wesson's: (1) specific First Amendment theories, including retaliation, viewpoint discrimination, compelled speech, prior restraint, and improper restriction of commercial speech, (2) Second Amendment arguments, or (3) Equal Protection and other arguments. As such, the dismissal by the District Court on claim preclusion grounds was error.

And the District Court went even further by embracing the Chancery Division's flawed reasoning. The only substantive analysis the Chancery Division could be said to have applied is a bare analogy to one opinion, *Exxon Mobil Corp.*

*v. Schneiderman*, 316 F. Supp. 3d 679 (S.D.N.Y. 2018), finding Smith & Wesson's well-pled federal allegations "speculative" because another court in a different case (*Exxon*) applying a different state's law had "rebuffed a nearly identical challenge." JA288. That finding is facially invalid because the District Court was required to treat the allegations contained in Smith & Wesson's complaint as true, along with all reasonable inferences to be drawn from that complaint. The court not only failed to do so, it did the contrary, speculating as to what the facts might be completely without the benefit of testimony or other evidence.

The District Court also ignored a critically important distinction in *Exxon*— that it was Exxon itself that had invoked the jurisdiction of the state court, in addition to the federal court, to challenge the validity of a subpoena. *See* JA17-20. Exxon even sought the same relief in each forum. *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 401 (2d Cir. 2022). That procedural difference is dispositive because Smith & Wesson only filed its federal claims in federal court and has remained steadfast in asserting its right to proceed exclusively in federal court. The District Court also circumvented procedural safeguards and fundamental due process by concluding *sua sponte* that Smith & Wesson could have and should have converted the summary action into a plenary action in State court on the Subpoena, JA16-17. In other words, it reasoned that Smith & Wesson should have forfeited its right, as expressly recognized by the Third Circuit, to present its constitutional claims to a federal court

in favor of a state court forum in which Smith & Wesson was obligated to litigate.

A fundamental error in the District Court's decision, one that affects each of its conclusions, is that it improperly equates an opportunity to make arguments with the preclusion principle that claims were fully and fairly litigated. In this case, Smith & Wesson did not have its allegations taken as true, an opportunity to develop facts, or the benefit of examining witnesses. While such principles are relevant in every case, they are particularly relevant in this (federal) case, where the issue of the Attorney General's motives is an intensely factual one that requires discovery. The District Court's ruling itself is inconsistent with New Jersey law, which rejects the imposition of such an obligation on litigants who properly choose a federal forum. For example, in *B.F.*, the Appellate Division found that it was inappropriate to apply preclusion based on the ability to raise issues through voluntary motions practice. 686 A.2d at 1254. As the Appellate Division concluded in *B.F.*, Smith & Wesson had no obligation to request discovery or engage in additional motions practice that would delay the summary action. *See id.*

While the District Court faulted Smith & Wesson for not demanding a full-fledged jury trial and filing counterclaims in the summary subpoena enforcement proceedings in the New Jersey Chancery Division, *see* JA16-17 (citing N.J.R. 4:67-4(b), -5), the New Jersey Attorney General's Office tellingly never made those arguments in *any* of the state court or federal proceedings. That makes sense. The

New Jersey Court Rules that the District Court cited on this point apply only where the defendant "is entitled to a jury trial." *Id.*; *see* N.J.R. 4:67-4(b). The Attorney General's Office surely has not taken the position that every recipient of an administrative subpoena is entitled to demand a jury trial on their defenses to a subpoena in a summary subpoena enforcement proceeding—and Smith & Wesson is unaware of any case law suggesting that such a right exists under New Jersey law. There is no basis for the District Court's conclusion that Smith & Wesson could have availed itself of these procedures during the subpoena-enforcement proceedings—much less that it was obligated to do so, especially since Smith & Wesson first filed its claims and demanded a jury trial in federal court.

Now, in federal court, the Attorney General's Office is attempting to vitiate § 1983 through procedural wrangling. The Office claimed that Smith & Wesson's first-filed federal lawsuit is "of no moment." ECF 66-1, at 32-38. That is directly contrary to Smith & Wesson's constitutional rights and places federal litigation in a subservient position to state summary actions. The "quotidian"—as the Attorney General repeatedly called it—subpoena action was no substitute for a federal § 1983 case because the specialized summary action in the Chancery Division did not provide Smith & Wesson an adequate opportunity to have its constitutional objections fully and fairly litigated. It neither afforded Smith & Wesson the benefit of having its allegations accepted as true for purposes of evaluating its constitutional

objections, nor did it provide for discovery, thus preventing Smith & Wesson from developing its case.  These procedural and substantive weaknesses, which are inherent in summary actions, make such actions inappropriate for the application of preclusion, as all of the New Jersey cases cited above show.  The District Court's decision to the contrary was wrong.

### B.   Because the Different Proceedings Raised Distinct Claims, Claim Preclusion Cannot Apply.

Under the third element of the test for claim preclusion, New Jersey courts refuse to bar subsequent claims where the claims in the two actions are different. Claims are distinct where, as here, the two actions involve different: (1) acts complained of and demands for relief; (2) theories of recovery; (3) witnesses and documents required to establish the separate claims at trial; and (4) material facts. *Culver v. Ins. Co. of N. Am.*, 559 A.2d 400, 405 (N.J. 1989).

Here, the Attorney General's Office complained in its first motion to dismiss about Smith & Wesson's "efforts to pull [the District] Court into a quotidian subpoena dispute."  ECF No. 29-1, at 13.  Now, the Attorney General's Office fails to grapple with how only one claim, which simply requested documents, was at issue in the summary action.  That claim is not pending here.  *See United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983-85 (3d Cir. 1984).

The District Court's application of claim preclusion focused on the relationship of the arguments made rather than the vast difference in the substantive claims asserted and the requested remedies for those claims. The Chancery Division proceeding was a summary adjudication addressing the enforceability of the Subpoena. Regardless of the strength of Smith & Wesson's arguments, the relief available was that the Subpoena be quashed. It was exactly what the Attorney General said it was, a "quotidian subpoena dispute." JA363.

In contrast, Smith & Wesson's complaint alleges what amounts to a conspiracy between the Attorney General and private actors, not merely to serve a Subpoena but also to initiate an investigation to chill specific speech. These actions include hiring, on a contingency basis, a private law firm that is a close partner with the same gun control activists to which the Attorney General has announced it is turning over the power of its Office. These claims require an inquiry into the facts of what is, at its core, a challenge to a conspiracy to interfere with constitutional rights. The remedies called for are both damages and injunctive relief addressing the entirety of the illegitimate conduct targeting Smith & Wesson, conduct that goes far beyond what the Chancery Division could have ordered in a Subpoena dispute. As such, the superficial similarities of the two proceedings simply do not support the District Court's finding that claim preclusion applies.

**1.    The Acts Complained of and Demands for Relief Are Different.**

In the summary action, the Attorney General's Office sole claim was that Smith & Wesson had not produced documents in response to the Subpoena. JA126-27. Likewise, the demand for relief was singular: the production of documents (setting aside the draconian sanctions that were effectively withdrawn). JA128. In direct contrast, the acts complained of and the demand for relief in the federal action are, by any objective measure, wholly distinct. Smith & Wesson brings § 1983 claims under the First, Second, Fourth, Fifth, and Fourteenth Amendments. JA69-82. The Attorney General's Office has, among other things, targeted Smith & Wesson because of its viewpoints, retaliated against it for engaging in speech and for filing this action, and trampled on the Second Amendment.

What's more, Smith & Wesson seeks an injunction against the Attorney General's Office's unconstitutional targeting of Smith & Wesson, a remedy the Chancery Division was unable to provide. *See* N.J.S.A. § 56:8-6; N.J.R. 1:9-6(a)-(b). The District Court failed to address the fact that the Chancery Division could not order the relief requested by Smith & Wesson in the federal suit. No claim preclusion exists where, as here, a litigant could not obtain in the first action the relief sought in the second action. *See Bondi v. Citigroup, Inc.*, 32 A.3d 1158, 1185 (N.J. App. Div. 2011). An example of this is where the first court lacked jurisdiction

over the claim asserted in the second action. *See id.* New Jersey courts have reasoned that "if the plaintiff could not have asserted the two claims in a single forum, it would be unfair to force the plaintiff to sacrifice the claims that could not be so asserted in order to bring a single action in one forum." *Id.* (internal quotation marks and brackets omitted). This exception applies here for two reasons:

First, one aspect of the Attorney General's Office's theory under the CFA rises and falls with the New Jersey Hazardous Product Regulation, N.J.A.C. § 13:45A-4.1(b). Since the Chancery Division does not have jurisdiction to hear claims challenging agency regulations, that court could not grant the relief that a federal court could. *See Pascucci v. Vagott*, 362 A.2d 566, 574 (N.J. 1976); *Prado v. State*, 895 A.2d 1154, 1159 (N.J. 2006). Second, the relief sought in federal court, enjoining the Office's investigation, was not available in the summary action. Indeed, the summary action was, by statute, strictly limited to the issue of subpoena compulsion. *See* N.J.S.A. § 56:8-6; N.J.R. 1:9-6(a)-(b); *O'Brien v. Baldwin*, 65 A.2d 65, 66 (N.J. App. Div. 1949). Because the Chancery Division could not enjoin the Office's unlawful campaign against Smith & Wesson, claim preclusion cannot be found.

### 2. The Two Proceedings Concern Different Theories of Recovery.

In the summary action, the Attorney General's Office predicated the requested remedy only on a failure to produce documents. In this lawsuit, by contrast, Smith & Wesson's claims are based on wholly separate facts showing a wide-ranging conspiracy to silence the company's speech and infringe upon its constitutional rights only because it manufactures firearms and expresses pro-Second Amendment viewpoints. *See* JA69-82. Judge Matey described the harm of chilled speech and politically motivated investigations that Smith & Wesson is challenging:

> Future firearms instructors, fearing the arrival of subpoenas, might decide it is not worth advertising their services for "safety" training. Maybe range operators, sporting clubs, or hunting lodges, recalling some dusty pamphlet mentioning their attention to "safety" will weigh waiting for investigators against early retirement. And almost certainly, every shop-owner stocking firearms for "self-defense" or personal "safety" can begin planning for periodic advertising inspections from the Attorney General. Perhaps publishers will be punished too, with outdoor magazines thinking twice before speaking about the content of a product. One might suspect that is the whole point.

*Smith & Wesson Brands, Inc.*, 27 F.4th at 896-97 (Matey, J., concurring) (footnotes omitted). That is a far cry from a subpoena-enforcement action.

### 3.    The Evidence Required in Each Proceeding Is Different.

In the summary action, the Attorney General's Office showed (and it was undisputed) that Smith & Wesson had not produced documents in response to the Subpoena. The Chancery Division held the Office to the very low burden of showing that the Subpoena was "clear," merely referring to the Subpoena itself to support that conclusion. JA288. By contrast, Smith & Wesson will demonstrate in the District Court that the Attorney General's Office is engaged in a biased, politically motivated investigation that violates the U.S. Constitution and is untethered from the CFA and that the Hazardous Products Regulation unconstitutionally compels speech, among other things. Unlike the Attorney General's Office's low evidentiary burden in the summary action, the evidence needed to prove Smith & Wesson's federal claims will include testimony from all manner of witnesses as well as documents that are different from those produced in response to the Subpoena.

### 4.    The Material Facts Are Entirely Different.

After the Chancery Division determined that it need only assess whether the Subpoena was "clear," Smith & Wesson's non-compliance with the Subpoena was the only material fact required to prove the Attorney General's claim in the summary action. JA287-88. That fact is wholly distinct from the material facts pled in Smith & Wesson's federal complaint, including the Office's bad-faith investigation and retaliatory campaign against Smith & Wesson.

**C.    Under *Bruen*, the Second Amendment Analysis Changed After the Chancery Division's Order.**

The District Court rejected, without much analysis, Smith & Wesson's argument regarding the Supreme Court's newest Second Amendment opinion, *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).  JA15-16.  Even assuming, *arguendo*, that preclusion could apply here (which it cannot), application of preclusion principles is not appropriate when there has been an intervening change in the applicable legal context that requires a new determination on the merits. *Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1010 (N.J. 2006).  That is because applying preclusion doctrines "in changed circumstances may not advance the equitable administration of the law."  *Herrera v. Wyoming*, 139 S. Ct. 1686, 1697 (2019) (internal quotation marks omitted).

The *Bruen* decision represents an intervening change in the law and requires a determination on the merits as to Smith & Wesson's constitutional claims. Specifically, *Bruen* did away with the means-end scrutiny test for assessing alleged burdens on constitutional rights and articulated the correct standard for Second Amendment constitutional challenges.  *Bruen*, 142 S. Ct. at 2127.  It is the Attorney General's burden to establish that the restrictions on Smith & Wesson's Second Amendment rights stemming from the Subpoena are part of the "historical tradition that delimits the outer bounds of the right to keep and bear arms."  *Id.*

The District Court's decision to the contrary rested on the erroneous view, bereft of any support, that because the CFA is not specifically a regulation of firearms, it falls outside of *Bruen*'s reach.  *See* JA15-16.  But that finding is contrary to *Bruen*, which speaks in sweeping terms about burdens on Second Amendment rights.  *Bruen*, 142 S. Ct. at 2127.  For example, the burden of the New Jersey Hazardous Product Regulation, which is not rooted in this nation's history, *see* N.J.A.C. § 13:45A-4.1(b) (enacted in 1995 and amended in 2007), is the type of burden envisioned by the Court in *Bruen* as requiring judicial review.  *See id.*  At issue here is a regulation that infringes upon First Amendment rights by compelling speech and that the Attorney General's Office has been selectively using against firearm companies, thereby violating the Second Amendment.  JA249.

### D.    The District Court Erred by Relying on the Entire Controversy Doctrine, an Argument the Attorney General's Office Did Not Even Press.

The District Court also found that Smith & Wesson's federal case was barred by the entire controversy doctrine.  JA16-17.  However, the Attorney General's Office did not move to dismiss on the basis of that doctrine (presumably because it is not applicable here for the reasons described below).  Indeed, in its reply brief, the Office accused Smith & Wesson of improperly relying on cases that analyzed the doctrine.  Doc. No. 69, at 10-13.

The entire controversy doctrine prohibits claim splitting. *See Olds v. Donnelly*, 696 A.2d 633, 637 (N.J. 1997). "The purpose of the doctrine is not to bar meritorious claims." *Id.* at 645. New Jersey's Supreme Court has "always emphasized that preclusion is a remedy of last resort." *Id.* As an initial matter, New Jersey courts have reversed where trial courts enter judgment for the defendant *sua sponte* on the ground of the entire controversy doctrine. *B.F.*, 686 A.2d at 1255. Since the Attorney General's Office failed to raise the entire controversy doctrine, the District Court should not have found in its favor on that affirmative defense. *See id.* New Jersey courts would not find preclusion under these circumstances, and this Court should accordingly reverse.

As to the merits, the entire controversy doctrine is codified in New Jersey Rule 4:30A. That rule expressly *excludes* counterclaims in summary actions from its scope:

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, *except as otherwise provided by* R. 4:64-5 (foreclosure actions) and *R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions)*.

N.J.R. 4:30A (emphases added).[3]  Specifically, the entire controversy doctrine does not apply "to the extent" leave is required to file counterclaims in summary actions under Rule 4:67-4(a).  *See* N.J.R. 4:30A.  New Jersey courts have explained that this is "exclusionary language."  *Levchuk*, 855 A.2d at 641; *see also* 23 N.J. Prac., Landlord & Tenant Law § 19.11 n.46 (5th ed.) (explaining that the last clause of the entire controversy doctrine is exclusionary language); 1 N.J. Pleading & Practice Forms § 2:98 (same).

Here, Smith & Wesson would have needed to seek leave to file a counterclaim in the summary action, rendering this procedural posture a situation that is expressly carved out of the entire controversy doctrine.  N.J.R. 4:67-4.  The District Court ignored the plain language of the New Jersey statute, citing commentary to a different rule that literally reads the word "except" out of the entire controversy doctrine.  JA16-17.  That commentary flies in the face of the rule's plain language and the New Jersey precedent described above in *B.F.* and *Cafferata*.  Adopting a plain-language interpretation of the New Jersey rules, it is clear that the District Court required that Smith & Wesson engage in procedural maneuvers that the rules do not require.  That holding was in error and contrary to New Jersey law.

---

[3] As with claim preclusion, the entire controversy doctrine "is equitable in nature" and is "predicated upon judicial fairness."  *Kozyra v. Allen*, 973 F.2d 1110, 1111 (3d Cir. 1992).

**III.    The District Court's Order Should Be Reversed Because Smith & Wesson Reserved Its Right to Proceed in Federal Court.**

The Court committed reversible error when it rejected the law of this Circuit regarding what is known as the *England* doctrine and instead imported non-controlling law from the First Circuit.  JA14-15.

The *England* Doctrine protects a litigant's access to federal court where, as here, procedural maneuvering has the potential to divest that party of the right to litigate in a federal forum.  Under the doctrine, a litigant may refuse to submit constitutional claims to a state court, choosing instead to have them adjudicated in federal court.  *See England v. La. State Bd. of Med. Examiners*, 375 U.S. 411, 421-22 (1964).  An *England* reservation renders claim preclusion inapplicable. *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 35 F.3d 813, 822 (3d Cir. 1994).  "[A] litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims" does not have to "accept . . . a state court's determination of those claims." *England*, 375 U.S. at 415, 422.  Instead, a litigant may reserve its right to return to federal court. *Id.* at 416-17, 421-22.

The *England* doctrine is especially appropriate in cases when fact finding is sought on constitutional issues: it "is the typical, not the rare, case in which constitutional claims turn upon the resolution of contested factual issues." *Id.* at 416-17.  Where, as here, constitutional claims require investigation, discovery, and

fact-finding, it is only fair that litigants be able to have that process occur in federal court with its attendant procedural and substantive safeguards.  Whether a litigant can appeal from the state's high court to the U.S. Supreme Court is not relevant; litigants cannot be "unwillingly deprived of [such primary factual] determination[s]." *Id.* at 417.

The District Court committed error by ignoring circuit precedent and selectively quoting from Supreme Court cases.  Specifically, it rejected Smith & Wesson's *England* reservation by relying on a First Circuit opinion that found that such a reservation of rights applies only to *Pullman* abstention cases, and not *Younger* abstention as was the case here.  JA14-15 (citing *Atwater v. Chester*, 730 F.3d 58, 63 (1st Cir. 2013)).  Setting up a requirement that *Pullman* abstention must be present, the District Court erred by following the law of another circuit when this Court has recognized that the doctrine can apply outside the *Pullman* context. *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1072 (3d Cir. 1990).  *Bradley* is most consistent with *England*, which explained that "[w]hen a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction[; the] right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." (internal quotation marks omitted).  *See England*, 375 U.S. at 415.  No formulaic demand is required to invoke the doctrine

and neither the Attorney General's Office nor the District Court pointed to any such requirement.

Here, Smith & Wesson's actions make clear that it was reserving its rights to litigate in federal court. It sought to stay the state-court proceedings on multiple occasions so that it could vindicate its rights in federal court. Smith & Wesson also repeatedly argued to both the federal and state courts that its claims must be heard in federal court. For example, in its first brief filed in the Chancery Division, Smith & Wesson asked that court to "abstain from adjudicating this action," especially while its constitutional claims were being considered in federal court, since it "amount[ed] to a carbon-copy dispute of the federal court lawsuit." ECF No. 66-2, at 197. Although the Attorney General's Office claimed that language helped his preclusion argument, ECF 66-1, at 10, the opposite is true: it was the Attorney General that filed a complaint seeking narrow relief after Smith & Wesson selected its federal forum. The District Court's reasoning and analysis on the *England* doctrine are contrary to the precedent of this Court and the U.S. Supreme Court.

## CONCLUSION

For the reasons set forth above, the decision of the District Court to dismiss should be reversed.

Dated:  April 24, 2023

Respectfully submitted,

*/s/ Courtney G. Saleski*
Courtney G. Saleski
**DLA PIPER LLP (US)**
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
Tel: (215) 656-2431
courtney.saleski@dlapiper.com

Joseph A. Turzi
Edward S. Scheideman
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Tel: (202) 799-4000
joe.turzi@dlapiper.com
edward.scheideman@dlapiper.com

Christopher M. Strongosky
**DLA PIPER LLP (US)**
51 John F. Kennedy
Parkway, Suite 120
Short Hills, NJ 07078
Tel: (973) 520-2550
christopher.strongosky@dlapiper.com

*Attorneys for Plaintiffs-Appellants*
*Smith & Wesson Brands, Inc.*
*Smith & Wesson Sales Company*
*Smith & Wesson Inc.*

## **CERTIFICATION OF COMPLIANCE**

I, Courtney G. Saleski, certify:

***Bar Membership.***   Edward Scheideman, Christopher M. Strongosky, and I are members in good standing of the Bar of this Court.

***Word Count.***   This brief complies with Federal Rule of Appellate Procedure 32(a)(7) and contains 10,041 words, as counted by Microsoft Office word-processing software.

***Typeface.***   This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

***Electronic Filing.***   I prepared the electronic version of this brief in portable document format; it is identical to the paper version of the brief filed with the Court. I ran a virus scan on the electronic version of this brief using Cisco Threat Grid software, which has no version number, and no virus was detected.

*/s/ Courtney G. Saleski*
Courtney G. Saleski

April 24, 2023

## **JOINT APPENDIX**
## **TABLE OF CONTENTS**

**JA Page**

## **VOLUME I**

Notice of Appeal, Dkt. 80 (Jan. 25, 2023)..............................................JA1

Order Dismissing Complaint, Dkt. 79 (Dec. 27, 2023).......................................JA2

Opinion, Dkt. 78 (Dec. 27, 2023) ........................................................JA3

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SMITH & WESSON BRANDS, INC., SMITH & WESSON SALES COMPANY, and SMITH & WESSON INC., | CIVIL ACTION |
| **Plaintiffs,** | CASE NO. 2:20-CV-19047-EP-ESK |
| v. | |
| GURBIR S. GREWAL, *in his official capacity as Attorney General of the State of New Jersey* and NEW JERSEY DIVISION OF CONSUMER AFFAIRS, | |
| **Defendants.** | |

<u>NOTICE OF APPEAL</u>

Plaintiffs Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, and Smith &

Wesson Inc. hereby appeal to the United States Court of Appeals for the Third Circuit from the

district court's December 27, 2022 order dismissing the complaint. *See* Dkt. Nos. 78 (opinion),

79 (order).

Respectfully submitted,

Dated:  January 25, 2023

*/s/ Courtney G. Saleski*
Courtney G. Saleski
**DLA PIPER LLP (US)**
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
Tel:  215-656-2431
courtney.saleski@dlapiper.com

**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SMITH & WESSON BRANDS, INC., SMITH & WESSON SALES COMPANY, and SMITH & WESSON INC.,<br><br>      Plaintiffs,<br><br>v.<br><br>GURBIR S. GREWAL, in his official capacity as Attorney General of the State of New Jersey, and NEW JERSEY DIVISION OF CONSUMER AFFAIRS,<br><br>      Defendants. | No. 20cv19047 (EP) (ESK)<br><br>**ORDER** |

**PADIN, District Judge.**

For the reasons expressed in the accompanying Opinion, and for good cause shown,

**IT IS** on this 27th day of December, 2022,

**ORDERED**, that Plaintiffs Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, and Smith & Wesson Inc.'s motion to file a sur-reply (at D.E. 71) is **GRANTED**; and it is further

**ORDERED** that Defendants Gurbir S. Grewal and New Jersey Division of Consumer Affairs' motion to dismiss Plaintiffs' amended complaint pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure (at D.E. 66) is **GRANTED**; and it is further

**ORDERED**, that Plaintiffs' amended complaint is **DISMISSED** with prejudice.

/s/ Evelyn Padin
Evelyn Padin, U.S.D.J.

JA2

<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SMITH & WESSON BRANDS, INC., SMITH & WESSON SALES COMPANY, and SMITH & WESSON INC., | |
| Plaintiffs, | No. 20cv19047 (EP) (ESK) |
| v. | **OPINION** |
| GURBIR S. GREWAL, in his official capacity as Attorney General of the State of New Jersey, and NEW JERSEY DIVISION OF CONSUMER AFFAIRS, | |
| Defendants. | |

**PADIN, District Judge.**

Presently before the Court is Defendants Gurbir S. Grewal and New Jersey Division of Consumer Affairs' (collectively, the "State's") motion to dismiss Plaintiffs Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, and Smith & Wesson Inc.'s (collectively, "S&W's") amended complaint. D.E. 66. The Court has reviewed the parties' submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b). For the reasons stated below, the State's motion is **GRANTED**.

**I.    BACKGROUND**

**A.  The Attorney General and the New Jersey Consumer Fraud Act**

The New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1, *et seq.*, states that "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment,

JA3

suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . [constitutes] an unlawful practice."  N.J.S.A. § 56:8-2.  The NJCFA provides the New Jersey Attorney General with broad investigative powers to explore whether companies are committing NJCFA-defined "unlawful practices."  *See* N.J.S.A. § 56:8-3 (detailing the circumstances under which the Attorney General may investigate, and the actions he may take in furtherance of that investigation).  The NJCFA also expressly empowers the Attorney General to issue subpoenas to aid in any such investigation.  *See* N.J.S.A. § 56:8-4.

### B. The State's October 13, 2020 Subpoena

On October 13, 2020, the New Jersey Division of Consumer Affairs and then-New Jersey Attorney General Gurbir S. Grewal served a subpoena *duces tecum* on S&W pursuant to the NJCFA (the "Subpoena").  D.E. 66-2 at PageID: 1885-98.   The Subpoena requests that S&W produce a multitude of documents, including, but not limited to: (1) all advertisements for S&W's merchandise that relate to home safety, concealed carry, personal protection, personal defense, personal safety, or home defense benefits of a firearm that were accessible in New Jersey; (2) all documents concerning any test, study, analysis, or evaluation considered or undertaken by S&W that relate to the claims made in those advertisements; and (3) all documents concerning: (i) whether S&W firearms can be legally carried and concealed while in New Jersey; (ii) whether the concealed carry of a firearm enhances one's lifestyle; (iii) whether it is safer to confront a perceived threat by drawing a firearm rather than seeking to move away; (iv) whether having a firearm makes a home safer; (v) whether S&W firearms are designed to be more safe, reliable, accurate, or effective than non-S&W-manufactured firearms for use in personal or home defense or other

activities; and (vi) whether novice, untrained consumers could successfully and effectively use an S&W firearm for personal or home defense. *Id.* at PageID: 1896.

The Subpoena originally had a November 13, 2020 return date, which was extended thirty days at S&W's request. *Id.* at PageID: 1900-03. On December 14, 2020, S&W produced no documents in response to the Subpoena; it instead responded in writing to the State, citing its various constitutional objections to the document demands within the Subpoena. *Id.* at PageID: 1905-28.

### C. S&W's December 15, 2020 Initiation of a Federal Civil Rights Lawsuit in District Court, and the State's Initiation of a Subpoena Enforcement Action in New Jersey Superior Court on February 12, 2021

On December 15, 2020 – the day after S&W's Subpoena response deadline passed – S&W filed a § 1983 civil rights complaint against the State in New Jersey District Court (the "District Court Action"). D.E. 1. S&W, by way of that pleading, avers that although the Subpoena purports to seek evidence of consumer fraud related to S&W's advertising, "in reality, it seeks to suppress and punish lawful speech regarding gun ownership in order to advance an anti-Second Amendment agenda that the Attorney General publicly committed to pursue." *Id.* ¶ 2. S&W avers that the Attorney General's Subpoena, and his associated initiation of an NJCFA-rooted investigation of S&W, "have violated [S&W's] First, Second, Fourth, Fifth, and Fourteenth Amendment rights." *Id.* ¶ 159. S&W's original federal pleading alleges separate causes of action for the State's purported violations of each of these Amendments. *See id.* at Counts I-III, V-VII. S&W's initial complaint also claims that the State's Subpoena and related investigation violates the Second and Fourteenth Amendment rights of "citizens" (Count IV), is preempted by the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. § 7901, *et seq.* (Count VIII), violates the Dormant

Commerce Clause (Count IX), represents an abuse of process (Count X), and asks the District Court to enjoin enforcement of the Subpoena (Count XI). *Id.*

On February 12, 2021, the State initiated a separate summary action in New Jersey Superior Court to enforce the Subpoena, *Grewal v. Smith & Wesson Sales Co., Inc.*, Case No. ESX-C-25-21 (the "Superior Court Action"). D.E. 66-2 at PageID: 1851-2004.

### D. S&W's March 10, 2021 Amendment of Its District Court Pleading and the State's April 26, 2021 Motion to Dismiss the Same

On March 10, 2021, S&W amended its pleading in the District Court Action to assert additional First Amendment-based § 1983 claims rooted in S&W's assertion that the State's initiation of the Superior Court Action was done in retaliation for S&W's commencement of the District Court Action. D.E. 17 at Counts I, II, and V. All of S&W's earlier-asserted claims in the District Court Action, detailed above, also remain in S&W's amended pleading, albeit at different count numbers. *See id.* at Counts III, IV, and VI-XIII.

On April 26, 2021, the State moved to dismiss S&W's amended complaint in the District Court Action. D.E. 29. The State, by way of that motion, requested, *inter alia*, that the District Court decline to exercise jurisdiction over the parties' federal lawsuit based on *Younger*[1] abstention. D.E. 29. On May 17, 2021, S&W filed its opposition to the State's April 26, 2021 motion to dismiss. D.E. 30. The State submitted its reply on June 7, 2021. D.E. 33. And S&W sur-replied on June 21, 2021. D.E. 34.

### E. S&W's March 11, 2021 Filing of Cross-Motion to Dismiss, Stay or Quash the Subpoena in the Superior Court Action

On March 11, 2021 – the day after it amended its pleading in the District Court Action – S&W filed a cross-motion to dismiss, stay, or otherwise quash the Subpoena in the Superior Court

---

[1] *Younger v. Harris*, 401 U.S. 37 (1971).

Action. D.E. 66-2 at PageID: 2006-07. S&W's brief in support of that cross-motion, *see id.* at PageID: 2009-52, expressly claims that "threshold issues regarding the constitutionality of the Subpoena in the first instance must be resolved before any decision to enforce it may be made." *Id.* at PageID: 2019. S&W appended a copy of both its original and amended federal pleadings to its cross-motion in the Superior Court Action. *See id.* at PageID: 2022; *id.* at PageID: 2025. S&W's state court brief also expressly cross-references the substantive assertions made in its federal pleadings. *See id.* at PageID: 2025 ("on its face, the Subpoena demonstrates what the Federal Complaint alleges – that it targets [S&W's] First Amendment opinions on topics of current public debate or Second Amendment issues."). Indeed, S&W notes that its [original] federal complaint "sets forth in extensive detail, supported by citations to the public record, precisely why the Subpoena and the requests contained therein are unconstitutional, and precisely why [S&W] was justified in objecting to the Subpoena." *Id.* at PageID: 2022. S&W, in so doing, advanced all of the same constitutional arguments against enforcement of the Subpoena in the Superior Court Action that it has advanced in the District Court Action.

### F. The Superior Court's Resolution of the State's Subpoena Enforcement Action

On May 27, 2021, New Jersey Superior Court Judge Jodi Lee Alper held oral argument on the State's application to enforce, and S&W's cross-motion to quash, the October 13, 2020 Subpoena. *Id.* at PageID: 2307-59.

On June 30, 2021, Judge Alper entered two orders in the Superior Court Action: (1) an order denying S&W's cross-motion to dismiss the state court complaint and quash the subpoena, *see id.* at PageID: 2054; and (2) an order requiring S&W to respond fully to the October 13, 2020 Subpoena within 30 days, *see id.* at PageID: 2153. Judge Alper also issued an accompanying 13-page statement of reasons. *Id.* at PageID: 2055-67. There, Judge Alper expressly found that

"special equities justif[ied] continuation of the [Superior Court Action,]" particularly because S&W's initiation of the District Court Action occurred *after* the State issued the Subpoena, but before the State "had the opportunity to initiate a subpoena enforcement action." *Id.* at PageID: 2062; *see also Wearly v. F.T.C.*, 616 F.2d 662, 665 (3d Cir. 1980) ("Resort to a court by recipients of investigative subpoenas before an action for enforcement has commenced is generally disfavored.") (cited by Judge Alper). Her Honor also found that the Subpoena was valid and enforceable. D.E. 66-2 at PageID: 2063-65. In addition, Judge Alper expressly rejected S&W's claims that the "[S]ubpoena itself violates constitutional rights." *Id.* at PageID: 2066.

On July 21, 2021, Judge Alper held a hearing on S&W's motion to stay enforcement of the Superior Court's June 30, 2021 Subpoena enforcement order pending S&W's appeal of that decision. *Id.* at PageID: 2170-92. During that hearing, Judge Alper: (1) confirmed that the deadline for S&W to respond to the Subpoena was August 2, 2021, *see id.* at PageID: 2191; and (2) denied S&W's stay application, *see id.* at PageID: 2186. Judge Alper issued a formal order denying S&W's request on the same day. *Id.* at PageID: 2168-69.

On July 26, 2021, S&W filed an emergent application with the Appellate Division to stay Judge Alper's order compelling S&W to respond to the Subpoena within 30 days of June 30th. *See id.* at PageID: 2198. On July 29, 2021, Judge Lisa A. Firko of the Appellate Division issued a three-page decision denying S&W's emergent application. *Id.* at PageID: 2198-2200. Judge Firko, in so doing, incorporated many of the same findings "set forth in the trial court's comprehensive written decision." *Id.* at PageID: 2200. S&W's subsequent application to the New Jersey Supreme Court for a stay pending appeal was denied on August 9, 2021. *Id.* at PageID: 2201.

### G.  S&W's Subsequent Request for Injunctive Relief in District Court

On July 30, 2021 – the day after the Appellate Division denied S&W's emergent stay application in state court – S&W filed an emergent application in this Court by which it sought to enjoin enforcement of Judge Alper's June 30, 2021 order directing S&W to comply with the Subpoena.  D.E. 41 at PageID: 1029-30.  The State submitted its opposition to the same on August 2, 2021.  D.E. 44.

On August 2, 2021, Judge Neals held a hearing that touched upon both S&W's July 30, 2021 emergent application and the State's April 26, 2021 motion to dismiss.  D.E. 48.  He ultimately found that the principles of *Younger* countenanced against exercising federal jurisdiction over the dispute between S&W and the State.  *Id.* at 33-34.  Judge Neals accordingly dismissed S&W's case and declined to grant S&W's request for injunctive relief.  *Id.*  In addition to his oral rulings on August 2, 2021, Judge Neals also entered a written opinion and order formally dismissing S&W's case.  D.E.s 46, 47.

### H.  S&W's Appeal of Judge Neals' August 2, 2021 Dismissal and the Third Circuit's Subsequent Remand to District Court

S&W appealed Judge Neals' August 2, 2021 dismissal ruling to the Third Circuit on August 9, 2021.  On March 10, 2022, the Third Circuit reversed, finding that this was not an "exceptional" case in which *Younger* abstention was appropriate.  *See Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey*, 27 F.4th 886, 896 (3d Cir. 2022).  The Third Circuit also, however, noted that "[f]ederal courts owe due respect to state courts."  *Id.*

### I.  The State's Renewed Motion to Dismiss

On May 27, 2022, the State filed a second, now-pending motion to dismiss S&W's amended complaint.  D.E. 66.  The State, by way of that motion, requests that the Court dismiss this matter based on principles of *res judicata*.  More specifically, the State avers that "preclusion

principles require this Court to stay or dismiss this duplicative litigation." D.E. 66-1 at 9. The State asserts that if the Court declines to dismiss and/or stay this matter based on preclusion, then dismissal is also appropriate for the reasons detailed by the State in its original April 26, 2021 motion to dismiss, which, in addition to the State's now-defunct *Younger* argument, presents a plethora of reasons why the claims in S&W's amended complaint fail to state a claim under Rule 12(b)(6). *See* D.E. 29-1.

On June 13, 2022, S&W filed its opposition to the State's renewed motion to dismiss. D.E. 67. S&W avers that because of the expedited and summary nature of the Superior Court Action, it did not receive a full and fair opportunity to litigate the constitutional claims that are the subject of its amended federal complaint. D.E. 67 at 8-10. It avers, for example, that "[f]ulsome discovery was not possible in the specialized summary action," but it is available in the District Court Action. D.E. 67 at 10. S&W, in short, claims that "[t]he procedural and substantive weaknesses, which are inherent in summary actions, make such actions inappropriate for the application of preclusion." D.E. 67 at 11. On June 21, 2022, the State replied. D.E. 67. On July 1, 2022, S&W filed a sur-reply.[2] D.E. 71-1. On July 18, 2022, the State responded to S&W's sur-reply. D.E. 73.

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Under Rule 12(b)(6), relief may not be granted when a suit is barred on *res judicata* grounds. *Dunleavy v. Gannon*, No. 2:11-CV-0361 DMC MF, 2011 WL 5321004, at *2 (D.N.J. Nov. 1, 2011). When a prior case has been

---

[2] S&W, at the time of that filing, also formally moved for permission to file the same. *See* D.E. 71. That motion is granted.

adjudicated in state court, federal courts must give "full faith and credit" to the state court's judgment. 28 U.S.C. § 1738; *see also Balthazar v. Atl. City Med. Ctr.*, 279 F. Supp. 2d 574, 584 (D.N.J. 2003). And *res judicata*[3] bars re-litigation of an issue that has already been determined on the merits by a court of competent jurisdiction. *Balthazar*, 279 F. Supp. 2d at 585. In order for *res judicata* to apply, there must be: (1) a valid, final judgment on the merits in the prior action; (2) the actions must involve the same parties; and (3) the second claim must arise out of the same transaction as did the claim in the first action. *United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 173 (3d Cir. 2009); *see also EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990).

## III.   ANALYSIS

The State avers that the Court should "dismiss this federal action because preclusion principles bar [S&W] from proceeding with duplicative claims in this Court." D.E. 66-1 at 9. More specifically, it argues that the New Jersey Superior Court's "June 30, 2021 order rejecting [S&W's] constitutional arguments is a final judgment that precludes relitigation of the same claims and issues in this case." *Id.* For the reasons that follow, the Court agrees.

### A.   Relevant *Res Judicata* Considerations

Federal courts are required to "give preclusive effect to state-court judgments whenever the courts of the [s]tate from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980). New Jersey recognizes the doctrine of *res judicata*, also known as claim preclusion. *Wadeer v. N.J. Mfrs. Ins. Co.*, 220 N.J. 591, 606 (2015); *see also McNeil v. Legis. Apportionment Comm'n*, 177 N.J. 364, 395 (2003) ("The concept that a party is required to bring

---

[3] There is often confusion as to the precise definitions of *res judicata* and collateral estoppel. To clarify, the term *res judicata*, when used narrowly, refers to claim preclusion; the term collateral estoppel, on the other hand, customarily refers to issue preclusion. *United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 173-74 (3d Cir. 2009).

all possible claims in one proceeding is embodied in the closely linked concepts of *res judicata* and the entire controversy doctrine."); *Long v. Lewis*, 318 N.J. Super. 449, 459 (App. Div. 1999) ("The claim preclusion aspect of the entire controversy doctrine is essentially *res judicata* by another name.").  Under both federal law and New Jersey law, "claim preclusion requires that (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." *McNeil*, 177 N.J. at 395 (citation omitted).  "Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined." *Id.* (citation omitted).  Further, "where the same cause of action is pursued in different courts, the first judgment rendered is *res judicata* of the matter, irrespective of the order in which the cases were commenced, and becomes a bar in the second suit."  *Heulitt v. W. Michigan Plumbing & Heating, Inc.*, 638 A.2d 153, 154 (N.J. Super. Ct. App. Div. 1994) (citing, *inter alia*, Restatement (Second) of Judgments § 14 (1982)).

Here, the Court finds – and the parties appear to agree – that Judge Alper's June 30, 2021 order compelling S&W to respond to the Subpoena represents a prior final judgment on the merits in a suit involving the same parties, and thus, that the first two *res judicata* elements are satisfied. Where the parties' positions differ sharply is whether the third element is satisfied, *i.e.*, whether the claims in the District Court Action arise out of the same transaction as the claims that are the subject of the Superior Court Action.

For purposes of determining what constitutes a "cause of action" for purposes of satisfying the third *res judicata* element, a court looks to "the essential similarity of the underlying events giving rise to the various legal claims."  *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d

Cir. 2010).  "[T]he focus is on 'whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same.'"  *Shah v. United States*, 540 F. App'x 91, 94 (3d Cir. 2013) (quoting *Lurizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)); *accord Culver v. Ins. Co. of North America*, 115 N.J. 451, 461-62 (1989) ("To decide if two causes of action are the same, the court must consider: (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the *material* facts alleged are the same.") (internal citations omitted) (emphasis in original).  "A mere difference in the theory of recovery is not dispositive." *Lurizol Corp.*, 929 F.2d at 963.

### B.  S&W's Claims Opposing *Res Judicata* Are Contradicted By the Record

Here, S&W avers that the third element of *res judicata* is not satisfied because the claims raised in S&W's federal civil rights complaint are sufficiently distinct from the claims at issue before the Superior Court.  S&W specifically asserts that (1) "the acts complained of and demands for relief [sought in the Superior Court Action and the District Court Action] are different;" (2) "the two proceedings concern different theories of recovery;" (3) "the evidence required in each proceeding is different;" and (4) "the material facts are entirely different." D.E. 67 at 15-16.  S&W, in making these assertions conveniently ignores that its amended federal pleading, at its core, requests that this Court enjoin the State from enforcing the Subpoena and declare that the Subpoena and the Attorney General's related CFA investigation violate S&W's constitutional rights, *see*

11

D.E. 17 at ¶¶ 218-23, which is essentially the exact same relief it sought in the Superior Court Action when it cross-moved to quash the Subpoena.

S&W likewise ignores that it already raised all of the same constitutional arguments in Superior Court that it is now attempting to have this Court adjudicate. Indeed, S&W appended and expressly incorporated-by-reference both of its federal pleadings to its state court motion. It also explicitly advised the Superior Court that its federal complaint "sets forth in extensive detail, supported by citations to the public record, precisely why the Subpoena and the requests contained therein are unconstitutional, and precisely why [S&W] was justified in objecting to the Subpoena." D.E. 66-2 at PageID: 2022.

S&W further disregards that it explicitly argued to the Superior Court that "threshold issues regarding the constitutionality of the Subpoena in the first instance must be resolved before any decision to enforce it may be made." D.E. 66-2 at PageID: 2019. And that Judge Alper expressly rejected S&W's claims that the "[S]ubpoena itself violates constitutional rights." D.E. 66-2 at PageID: 2066. S&W, in other words, had the opportunity to – and did in fact – present the threshold constitutional arguments, with numerous citations to the public record, in the Superior Court Action; that Judge Alper disagreed that S&W's "threshold" constitutional arguments prevented the State from enforcing the Subpoena does not change this fact.

S&W's assertion that it has reserved its right to litigate its constitutional claims in federal court pursuant to *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964), *see* D.E. 67 at 20-22, also fails when accounting for the foregoing considerations. In *England*, the Supreme Court "held that when a federal court abstains from deciding a federal constitutional issue to enable the state courts to address an antecedent state-law issue [pursuant to *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941) and its progeny], the plaintiff may reserve his right

12

to return to federal court for the disposition of his federal claims." *San Remo Hotel, L.P. v. City & Cnty. of San Francisco, Cal.*, 545 U.S. 323, 339 (2005) (citing *England*, 375 U.S. at 419). In *England*, "the antecedent state issue requiring abstention was *distinct* from the reserved federal issue." *Id.* (citing *England*, 375 U.S. at 418-19). "'Typical' *England* cases generally involve federal constitutional challenges to a state statute that can be avoided if a state court construes the statute in a particular manner." *Id.* "[T]he purpose of [such] abstention is not to afford state courts an opportunity to adjudicate an issue that is functionally identical to the federal question. To the contrary, the purpose of *Pullman* abstention in such cases is to avoid resolving the federal question by encouraging a state-law determination that may moot the federal controversy." *Id.* The Supreme Court has also "made it perfectly clear that the effective reservation of a federal claim [under *England* is] dependent on the condition that plaintiffs take no action to broaden the scope of the state court's review beyond decision of the antecedent state-law issue." *Id.* at 340.

Here, this Court never concluded that federal claims asserted by S&W in its federal pleadings could be mooted by resolution of a distinct state-law issue. *See Atwater v. Chester*, 730 F.3d 58, 63 (1st Cir. 2013) ("The right to reserve claims [under *England*] arises only when the district court abstains under *Pullman*."). Moreover, the record is abundantly clear that even if the Court had effectively abstained under *Pullman*, S&W, in raising the above-referenced constitutional arguments in New Jersey Superior Court, broadened the scope of the state court's court review to consider those claims. And by "includ[ing these] claims, [S&W] effectively asked the state court to resolve the same federal issues they [now assert they] asked it to reserve. *England* does not support the exercise of any such right." *Id.* at 340.

The Court is also unpersuaded by the principal argument advanced in S&W's sur-reply that the Supreme Court's June 23, 2022 decision in, *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,

142 S.Ct. 2111 (2022), materially changes the nature of its constitutional claims or otherwise injects new life into them. *See* D.E. 71-1. In *Bruen*, the Court ruled that "an individual's right to carry a handgun for self-defense outside the home" is a constitutional right under the Second Amendment. 142 S.Ct. at 2112. *Bruen* further found that New York State's requirement that applicants who sought unrestricted licenses to carry a concealed pistol on their person "demonstrate[] a special need for self-defense" violated the Constitution. *Id. Bruen*, in short, governs the analysis for laws that burden an individual's Second Amendment right to armed self-defense; it does not speak to the primary issue in this case, *i.e.*, whether S&W's constitutional rights have been abridged by the State's issuance of the Subpoena and its related CFA investigation. The State's CFA investigation is not, as S&W characterizes it, a *Bruen*-related "firearm regulation." D.E. 71-1 at 4. The *Bruen* decision accordingly does not, as S&W argues, represent "an intervening change in the applicable law that [forecloses application of preclusion principles] and requires a new determination on the merits." *Id.* at 5.

The Court is likewise hard-pressed to give any credence to S&W's claim that it did not receive a full and fair opportunity to litigate its constitutional claims in the Superior Court Action because of the expedited and summary nature of that proceeding. *See* D.E. 67 at 8-11 ("The procedural and substantive weaknesses, which are inherent in summary actions, make such actions inappropriate for the application of preclusion.").

To begin with, such a claim ignores the express provisions within the New Jersey Court Rule governing summary proceedings that: (1) allow for a *defendant* to demand a trial by jury, *see* N.J. Ct. R. 4:67-4(b); and (2) enable the Superior Court to convert the summary proceeding into a plenary one "for good cause shown," *see* N.J. Ct. R. 4:67-5. S&W likewise fails to acknowledge that New Jersey's "entire controversy doctrine, codified by R. 4:30A requires defendant to seek

leave to file a counterclaim or cross-claim in the summary action in order to preserve it, despite the likely severance of such a claim." *See* Pressler & Verniero, Rules Governing the Courts of the State of New Jersey (2023), N.J. Ct. R. 4:46-4 at Comment 1. Importantly, S&W does not appear to have availed itself of any of these available remedies during the summary proceeding in Superior Court. S&W's apparent failure to do so should not now be a basis for it to assert that it did not receive a full and fair opportunity to litigate its constitutional claims in state court. Furthermore, it is unclear to this Court how allowing additional "[f]ulsome discovery" in the District Court Action, *see* D.E. 67 at 10, would so fundamentally alter the strength of S&W's underlying constitutional claims, which, by S&W's own admission, are already well-supported by extensive citations to the public record.

### C. The Second Circuit's *Exxon Mobil* Decision

The State, in support of its claim that the third element of *res judicata* has been satisfied, relies heavily on the Second Circuit's decision in the factually-analogous *Exxon Mobil Corporation v. Healey*, 28 F.4th 383 (2d Cir. 2022). *See* D.E. 66-1 at 14-19. The Court finds that *Exxon Mobil* persuasively demonstrates why dismissal of S&W's amended complaint under the doctrine of *res judicata* is appropriate. There, the Massachusetts Attorney General, in 2016, commenced an investigation into whether Exxon committed consumer or securities fraud by misrepresenting its knowledge of climate change. *Id.* at 388. In April 2016, the Massachusetts Attorney General served a Civil Investigative Demand ("CID") on Exxon to investigate potential violations of Section 2 of Massachusetts General Laws chapter 93A, which prohibits unfair or deceptive acts or practices in trade or commerce. *Id.* at 388-89. "The CID focused on the marketing and sale of fossil fuel products to Massachusetts consumers, and on the marketing and sale of Exxon securities to investors." *Id.* at 389.

15

On June 15, 2016, Exxon filed a federal civil rights complaint against the Attorney General of Massachusetts seeking declaratory and injunctive relief.  *Id.*  "Among other things, Exxon sought to enjoin the CID, alleging that the Massachusetts investigation was pretextual and violated the dormant Commerce Clause and Exxon's rights under the First Amendment, its right to be free of unreasonable searches under the Fourth Amendment, and its due process rights under the Fourteenth Amendment."  *Id.*  On November 10, 2016, Exxon amended its federal complaint to allege that the investigation was biased and conducted with improper political motives, and pointed to public comments made by the Massachusetts AG which purportedly supported this claim.  *Id.*

On June 16, 2016, one day after Exxon filed its original complaint against the Massachusetts Attorney General in federal court, Exxon separately petitioned a Massachusetts Superior Court to set aside the CID.  *Id.*  In that petition, Exxon contended, among other things, that the CID violated state constitutional protections for free speech and freedom from unreasonable searches, and that the CID was arbitrary and capricious.  *Id.* at 389-90. Acknowledging that its petition raised issues that potentially overlapped with those in its federal suit, Exxon requested that the Massachusetts Superior Court grant a stay pending the outcome of the federal litigation.  *Id.* at 390.  The Massachusetts Attorney General cross-moved to compel Exxon to comply with the CID.  *Id.*

On January 11, 2017, the Massachusetts Superior Court denied Exxon's petition to set aside the CID and granted the Massachusetts Attorney General's motion to compel.  *Id.*  The Superior Court rejected Exxon's assertion that the Attorney General's actions constituted political bias or viewpoint discrimination rising to the level of arbitrary and capricious conduct, determining instead that the Attorney General had "assayed sufficient grounds – her concerns about Exxon's possible misrepresentations to Massachusetts consumers – upon which to issue the CID" and thus

acted in good faith. *Id.* The state court also expressly declined to consider Exxon's free speech claim at that time, reasoning that the Attorney General was still investigating whether Exxon's statements or omissions in communications to consumers were misleading or deceptive, and that misleading or deceptive speech would not be "entitled to any free speech protection." *Id.*

On March 29, 2018, the federal trial court issued an order dismissing Exxon's amended federal complaint with prejudice, finding "that Exxon's claims against the Massachusetts Attorney General were barred by *res judicata* – also known as claim preclusion – since Exxon could have raised those claims in the Massachusetts proceeding." *Id.*

The Second Circuit agreed that Exxon's federal claims against the Massachusetts Attorney General were precluded by *res judicata*. *Id.* at 398. In so doing, it expressly rejected Exxon's argument that *res judicata* did not apply because the claims asserted in the federal action were not raised in or decided by the Massachusetts state court. *Id.* The Second Circuit found that Exxon's state court petition and federal complaint both concerned the same essential violations of legal rights and both identified the same relevant injury: the CID's alleged violation of various federal constitutional provisions and their state analogues. *Id.* at 399. The fact that the actions arose in different procedural circumstances – via an action to stop CID enforcement in the state case versus an affirmative § 1983 claim in federal court – did not alter that conclusion. *Id.* at 400. The federal appeals court also made a point to note that "Exxon itself implied that the two actions involved overlapping claims – not merely overlapping arguments – in its state court filings." *Id.* at 400.

The Second Circuit also held that it was immaterial that the two actions sought nominally different remedies: So long as the same relief was available in the Massachusetts proceeding, the fact that Exxon opted to seek different forms of relief in the two actions was irrelevant to the issue of claim preclusion. *Id.* The federal appeals court also expressly rejected Exxon's claims that the

two proceedings were sufficiently distinct for purposes of *res judicata* because: (1) the state proceedings pertained to the enforcement of a specific CID, while the federal action sought an injunction of the Massachusetts Attorney General's investigation; and (2) certain declaratory and injunctive relief available for its affirmative § 1983 claims would not have been available in the "limited" CID proceeding. *Id.* In so doing, the court made a point to note that "the specific relief that Exxon now claims was available only in federal court – namely, an injunction prohibiting pretextual investigations and ending the Massachusetts Attorney General's investigation – was equally available in state court." *Id.* The Second Circuit also rejected Exxon's contention that *res judicata* did not apply because the Massachusetts CID proceeding was limited in nature and thus failed to provide Exxon with a full and fair opportunity to litigate its federal claims. *Id.* at 401.

Here, as in *Exxon Mobil*, S&W's state court petition and its federal complaint both concern the same essential violations of legal rights. Both identify the same relevant injury: the Subpoena and related investigation's alleged violation of various federal constitutional provisions. The fact that the District Court Action and the Superior Court arose in different procedural circumstances – via a cross-motion to quash the Subpoena in a state court summary proceeding versus affirmative § 1983 claims in federal court – does not alter that reality. In that respect, it is immaterial – as it was in *Exxon* – that S&W may have sought nominally different remedies in the two actions: Because the same relief was available to S&W in the New Jersey proceeding, the fact that S&W may have opted to seek different forms of relief in the two actions is irrelevant to the issue of claim preclusion. The Court likewise finds that the limited nature of the summary action in Superior Court did not deprive S&W of a full and fair opportunity to litigate its federal claims.

### D. *Res Judicata* Bars Litigation of the Present Action

For the reasons detailed above, the Court finds, with respect to the third element of *res judicata*: (1) that the acts S&W complained of in the District Court Action and the Superior Court Action, *i.e.*, that the New Jersey Attorney General's Subpoena and its associated CFA investigation represents an unconstitutional infringement of S&W's rights, and its demands for relief, *i.e.*, that enforcement of the Subpoena be halted, are the same; (2) that S&W's theory of recovery in both actions is the same; (3) that the evidence necessary for S&W to prove its claims in both matters is substantially the same; and (4) that the *material* facts alleged in support of S&W's claims in both actions are the same. As noted, the first two elements of *res judicata* have also been satisfied as: (1) Judge Alper's June 30, 2021 order compelling S&W to respond to the Subpoena represents a prior final judgment on the merits; (2) in a suit involving the same parties. The Court accordingly concludes that S&W's claims in the District Court Action are barred by *res judicata*. Again, "[f]ederal courts owe due respect to state courts." *Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey*, 27 F.4th 886, 896 (3d Cir. 2022). The Court will accordingly dismiss S&W's amended complaint with prejudice.

## IV. CONCLUSION

For the reasons above, the State's motion to dismiss is **GRANTED**. S&W's amended complaint is accordingly dismissed with prejudice.

Dated: December 27, 2022

/s/ Evelyn Padin
Evelyn Padin, U.S.D.J.

## <u>CERTIFICATE OF SERVICE</u>

I, Courtney G. Saleski, hereby certify that on April 24, 2023, I caused Appellants' Opening Brief and accompanying Joint Appendix to be served on all counsel of record listed on the CM/ECF Service List.

*/s/ Courtney G. Saleski*
Courtney G. Saleski

April 24, 2023