No. 23-1223

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

———————————————————

SMITH & WESSON BRANDS, INC.; SMITH & WESSON SALES COMPANY; and SMITH & WESSON, INC.,

*Plaintiffs-Appellants,*

v.

ATTORNEY GENERAL OF THE STATE OF NEW JERSEY; NEW JERSEY DIVISION OF CONSUMER AFFAIRS

*Defendants-Appellees*

———————————————————

Appeal from the United States District Court for the District of New Jersey; No. 20-cv-19047

————————————————

## DEFENDANTS-APPELLEES' BRIEF

————————————————

MATTHEW J.  PLATKIN
*Attorney General of New Jersey*
JEREMY M. FEIGENBAUM
*Solicitor General*
ANGELA CAI
*Deputy Solicitor General*
STEPHANIE COHEN
*Assistant Attorney General*

TIM SHEEHAN
MONICA FINKE
NATHANIEL LEVY
JUSTINE LONGA
*Deputy Attorneys General*

New Jersey Attorney General's Office
25 Market Street, PO Box 080
Trenton, New Jersey 08625
*Attorneys for Defendants-Appellees*

# **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

COUNTERSTATEMENT OF JURISDICTION ......................................................4

COUNTERSTATEMENT OF ISSUE PRESENTED..............................................4

RELATED CASES AND PROCEEDINGS.............................................................4

COUNTERSTATEMENT OF THE CASE..............................................................4

    A.  The Subpoena And Consequent Parallel Litigation. ....................................4

    B.  The June 30, 2021 State-Court Order............................................................8

    C.  The Federal Suit And Decision Below.........................................................10

    D.  The Appellate Division's Subsequent Opinion...........................................12

SUMMARY OF ARGUMENT ..............................................................................14

COUNTERSTATEMENT OF STANDARD OF REVIEW ...................................19

ARGUMENT ..........................................................................................................19

I.    THE DISTRICT COURT CORRECTLY DISMISSED THIS ACTION ON CLAIM-PRECLUSION GROUNDS.........................................................19

    A.  The District Court Correctly Found That These Identical Actions Arise From The Same Transaction Or Occurrence.......................................................20

    B.  The District Court Correctly Rejected Appellant's Argument That Preclusion Can Never Apply To A Summary Proceeding. ........................26

    C.  The District Court Correctly Rejected Appellant's Reliance On *England*.33

    D.  The District Court Correctly Rejected Appellant's Argument That *Bruen* Overcomes Preclusion On The Second Amendment Claim.......................37

II.  NOTHING IN THE APPELLATE DIVISION'S OPINION CHANGES THIS RESULT. ...................................................................................40

A.  The Appellate Division's Rejection Of Appellant's Constitutional Challenges Was "On The Merits." .............................................40

B.  Even If Appellant's View Of The Appellate Division's Decision Is Correct, Preclusion Still Attaches. ...........................................45

CONCLUSION .....................................................................................51

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Adelphia Gateway, LLC v. Pa. Envtl. Hearing Bd.*,
  62 F.4th 819 (3d Cir. 2023) ...................................................................1

*Allen v. McCurry*,
  449 U.S. 90 (1980) .................................................................... 25, 34

*Atwater v. Chester*,
  730 F.3d 58 (1st Cir. 2013) ..................................................................34

*B.F. v. Division of Youth & Family Services*,
  686 A.2d 1249 (N.J. Super. Ct. App. Div. 1997) ......................... 27, 30

*Bank Leumi USA v. Kloss*,
  No. 18-3220, 2019 WL 9526852 (3d Cir. Aug. 12, 2019) ..................50

*Bank Leumi USA, v. Kloss*,
  233 A.3d 536 (N.J. 2020) ............................................................ 27, 50

*Barzin v. Selective Serv. Loc. Bd. No. 14*,
  446 F.2d 1382 (3d Cir. 1971) ...............................................................37

*Bolsta v. Bremer*,
  3 N.W.2d 430 (Minn. 1942) ..................................................................47

*Bondi v. Citigroup*,
  32 A.3d 1158 (N.J. Super. Ct. App. Div. 2011) ...................................47

*Bostanci v. N.J. City Univ.*,
  476 F. App'x 499 (3d Cir. 2012) ..........................................................31

*Bradley v. Pittsburgh Bd. of Educ.*,
  913 F.2d 1064 (3d Cir. 1990) ...............................................................35

*Cafferata v. Peyser*,
  597 A.2d 1101 (N.J. Super. Ct. App. Div. 1991) ......................... 27, 30

iii

*Cent. State Bank v. Hudik-Ross Co.*,
 396 A.2d 347 (N.J. Super. Ct. App. Div. 1978) ...................................................32

*City of Gary v. Smith & Wesson Corp.*,
 126 N.E.3d 813 (Ind. Ct. App. 2019) ..................................................14

*Cogdell by Cogdell v. Hosp. Ctr. at Orange*,
 560 A.2d 1169 (N.J. 1989) ...................................................26

*Conitz v. Alaska State Comm'n for Human Rights*,
 325 P.3d 501 (Alaska 2014) ...................................................48

*Coors Brewing Co. v. Mendez-Torres*,
 562 F.3d 3 (1st Cir. 2009)...................................................37

*Cox v. Sears Roebuck & Co.*,
 647 A.2d 454 (N.J. 1994) ...................................................5

*Culver v. Ins. Co. of N. Am.*,
 559 A.2d 400 (N.J. 1989) ...................................................20

*Davison v. Rose*,
 19 F.4th 626 (4th Cir. 2021) ...................................................34

*DiTrolio v. Antiles*,
 662 A.2d 494 (N.J. 1995) ...................................................26

*Elkadrawy v. Vanguard Grp., Inc.*,
 584 F.3d 169 (3d Cir. 2009) ...................................................19

*England v. Louisiana State Board of Medical Examiners*,
 375 U.S. 411 (1964)........................................................ *passim*

*Essex Cnty. Corr. Officers PBA Local No. 382 v. Cnty. of Essex*,
 106 A.3d 1238 (N.J. Super. Ct. App. Div. 2014) ...................................................32

*Exxon Mobil Corp. v. Healey*,
 28 F.4th 383 (2d Cir. 2022) ........................................................ *passim*

iv

*Exxon Mobil Corp. v. Schneiderman*,
  316 F. Supp. 3d 679 (S.D.N.Y. 2018) .....................................................31

*Facebook, Inc. v. State*,
  273 A.3d 958 (N.J. Super. Ct. App. Div. 2022) ...................................44

*First Union Nat. Bank v. Penn Salem Marina, Inc.*,
  921 A.2d 417 (N.J. 2007) ........................................................................25

*Franco v. Davis*,
  271 A.2d 735 (N.J. Super. Ct. Law Div. 1970) ...................................37

*Gale v. City & Cnty. of Denver*,
  923 F.3d 1254 (10th Cir. 2019) .............................................................50

*Garrett v. Murphy*,
  17 F.4th 419 (3d Cir. 2021) ...................................................................48

*Grabowsky v. Township of Montclair*,
  115 A.3d 815 (N.J. 2015) ........................................................................28

*Harrington v. Vandalia-Butler Bd. of Ed.*,
  649 F.2d 434 (6th Cir. 1981) .................................................................38

*Herrera v. Wyoming*,
  139 S. Ct. 1686 (2019) ............................................................................38

*In re Est. of Yung-Ching Wang*,
  No. A-3035-09, 2011 WL 2981478 (N.J. Super. Ct. App. Div. July 25, 2011)...32

*In re Hubert*,
  129 A. 698 (N.J. Ch. 1925) .....................................................................49

*In re Mullarkey*,
  536 F.3d 215 (3d Cir. 2008) ...................................................................26

*Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982) .................................................................................50

*Johnson v. Spencer*,
    950 F.3d 680 (10th Cir. 2020) ...............................................................37

*Kremer v. Chem. Const. Corp.*,
    456 U.S. 461 (1982) .................................................................... 30, 32

*Levchuk v. Jovich*,
    855 A.2d 635 (N.J. Super. Ct. Law. Div. 2004) ........................... 28, 30

*Levine v. Seidel*,
    319 A.2d 747 (N.J. Super. Ct. App. Div. 1974) ..................................28

*McNeil v. Legis. Apportionment Comm'n*,
    828 A.2d 840 (N.J. 2003) ....................................................................19

*Migra v. Warren City Sch. Dist. Bd. of Educ.*,
    465 U.S. 75 (1984) ...............................................................................19

*NAACP v. Alabama*,
    357 U.S. 449 (1958) ...................................................................... *passim*

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
    142 S. Ct. 2111 (2022) ................................................................. *passim*

*Ohio ex rel Boggs v. City of Cleveland*,
    655 F.3d 516 (6th Cir. 2011) ...............................................................49

*Olivieri v. Y.M.F. Carpet, Inc.*,
    897 A.2d 1003 (N.J. 2006) ..................................................................38

*Orlando Residence, Ltd. v. GP Credit Co., LLC*,
    553 F.3d 550 (7th Cir. 2009) ...............................................................50

*OSS Nokalva v. European Space Agency*,
    617 F.3d 756 (3d Cir. 2010) ................................................................25

*Parkford Owners for Better Cmty. v. Windeshausen*,
    296 Cal. Rptr. 3d 825 (Cal. App. 2022)...............................................47

*Platkin v. Smith & Wesson Sales Co., Inc.*,
  289 A.3d 481 (N.J. Super. Ct. App. Div. 2023) ........................................... *passim*

*Railroad Comm'n v. Pullman Co.*,
  312 U.S. 496 (1941) ................................................................................ 33, 34

*R & J Holding Co. v. Redevelopment Auth. of Cty. of Montgomery*,
  670 F.3d 420 (3d Cir. 2011) ............................................................... 35

*Rearick v. Wiedemer*,
  No. 11-624, 2012 WL 3231096 (M.D. Pa. Aug. 6, 2012) ................................... 39

*Russell v. Russell*,
  129 F. 434 (C.C.D.N.J. 1904) ............................................................... 45

*Russell v. Russell*,
  134 F. 840 (3d Cir. 1905) ..................................................................... 45

*Russell v. Russell*,
  47 A. 37 (N.J. Ch. 1900) ...................................................................... 45

*Russell v. Russell*,
  49 A. 1081 (N.J. Ct. E & A 1901) .................................................... 45, 46

*Samara v. Matar*,
  419 P.3d 924 (Cal. 2018) ...................................................................... 47

*San Remo Hotel, L.P. v. City & County of San Francisco*,
  545 U.S. 323 (2005) ........................................................................ 34, 35, 36

*Selective Ins. Co. of Am. v. Capoferri*,
  No. A-1591-08, 2010 WL 1028313 (N.J. Super. Ct. App. Div. Mar. 19, 2010) . 37

*Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*,
  27 F.4th 886 (3d Cir. 2022) ......................................................... 4, 10

*State v. Zadroga*,
  275 A.3d 1 (N.J. Super. Ct. App. Div. 2022) ...................................... 44

*Stephan v. Rocky Mountain Chocolate Factory, Inc.*,
   129 F.3d 414 (7th Cir. 1997) ..................................................................50

*Sweezy v. New Hampshire*,
   354 U.S. 234 (1957) .................................................................... 13, 41

*Town of Secaucus v. Hackensack Meadowlands Dev. Comm'n*,
   631 A.2d 959 (N.J. Super. Ct. App. Div. 1993) ...................................49

*Travelers Indem. Co. v. Bailey*,
   557 U.S. 137 (2009) ..................................................................................50

*Velasquez v. Franz*,
   589 A.2d 143 (N.J. 1991) ...........................................................................3

*Wadeer v. N.J. Mfrs. Ins. Co.*,
   110 A.3d 19 (N.J. 2015) ...........................................................................20

*Younger v. Harris*,
   401 U.S. 37 (1971).............................................................................4, 10

*Zimmer v. N.J. Div. of Child Prot. & Permanency*,
   No. 15-2524, 2016 WL 234844 (D.N.J. Jan 20, 2016) .......................39

**Statutes**

28 U.S.C. § 1291 ...........................................................................................4

28 U.S.C. § 1331 ...........................................................................................4

28 U.S.C. § 1738.............................................................................................1

Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-3, -4 ...................................5

**Rules**

N.J. Court Rule 4:67-5 .................................................................................32

**Treatises**

Restatement (Second) of Judgments (1982) § 20 ...................... 19, 48, 49

Restatement (Second) of Judgments (1982) § 23 ..................................23

Restatement (Second) of Judgments (1982) § 27 .............................................. 47, 48

Restatement (Second) of Judgments (1982) § 29 ...................................................26

Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4415 (3d ed.) ..............................37

# **INTRODUCTION**

Preclusion serves important values in our federalist system. Because federal claims can be heard in state and federal court alike, duplicative litigation sometimes proceeds in both. Preclusion ensures that when either suit reaches a final judgment, the claims and issues resolved in that first judgment are not relitigated in the second forum. In other words, "[w]hen a party has its day in state court and loses, it is not permitted a do-over in federal court." *Adelphia Gateway, LLC v. Pa. Envtl. Hearing Bd.*, 62 F.4th 819, 828 (3d Cir. 2023). Or in the words of 28 U.S.C. § 1738, federal courts must give the state court's already-final judgment "full faith and credit." And there are good reasons for this rule, as this Court has explained: "Were it otherwise, state court decisions would lack finality, litigation expenses would balloon, and lower federal courts would sit as quasi-courts of appeals over state courts." *Adelphia*, 62 F.4th at 828. Inconsistent judgments and judicial waste would be legion.

This is a classic case of claim preclusion. In 2020, the State issued Smith & Wesson a subpoena to investigate whether the company had violated the New Jersey Consumer Fraud Act (CFA), and when Smith & Wesson refused to answer, the New Jersey Attorney General moved to compel its compliance in state court. Rather than turn over documents, Smith & Wesson challenged the Subpoena in two fora at once: it challenged the Subpoena in federal court, and then filed a Cross-Motion to Quash the Subpoena in the State's state-court enforcement action. Smith & Wesson could

hardly have been clearer about the duplicative nature of the two actions: the company characterized its state-court Cross-Motion as a "*carbon-copy* dispute of the federal court lawsuit," JA188 (emphasis added), and it appended and expressly incorporated its federal pleading into its state-court Cross-Motion, JA190 n.17. In both fora, Smith & Wesson urged the same Subpoena be invalidated; relied on the same constitutional provisions; pressed the same constitutional theories; and even cited the same cases, relying both times on *NAACP v. Alabama*, 357 U.S. 449 (1958), to contend that the Subpoena itself violated the company's federal constitutional rights.

But Smith & Wesson lost those arguments in state court. The state trial court took briefing and heard oral argument on the State's subpoena-enforcement action and Smith & Wesson's Cross-Motion to Quash and then issued an opinion rejecting the Cross-Motion—finding Smith & Wesson's arguments wanting. Smith & Wesson sought a stay pending appeal from the New Jersey Appellate Division and from the New Jersey Supreme Court, both of which rejected those applications. And Smith & Wesson appealed to the New Jersey Appellate Division, which ultimately affirmed the state trial court's decision. Rather than seek further review from the New Jersey Supreme Court, however, Smith & Wesson now comes to *this* Court—claiming this Court has the power to reconsider the same claims litigated in state court.

The district court correctly rejected Smith & Wesson's invitation. The district court correctly applied blackletter New Jersey claim-preclusion principles and held

2

that because Smith & Wesson "raised all of the same constitutional arguments" and sought "essentially the exact same relief" in the state-court proceeding, the company could not relitigate these claims in federal court. JA14. The district court correctly rejected the company's baseless argument that it lacked a full and fair opportunity to litigate its challenges through its own Cross-Motion to Quash in the state forum. The district court correctly rejected Smith & Wesson's argument that it somehow "reserved" an inviolable right to litigate these claims in federal court even while it simultaneously litigated them in state court. And it correctly rejected Smith & Wesson's contention that *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), warrants relitigation of its Second Amendment claims.

Nor does the Appellate Division's ruling, which postdates the federal district court's opinion, change the result. That court rejected the primary theory underlying the company's constitutional challenges: that *NAACP* supports these constitutional objections against the Subpoena. And while Smith & Wesson obviously disagrees with the New Jersey Appellate Division's opinion, it did not seek review in the New Jersey Supreme Court. But neither "[s]ubsequent ... suits" nor "collateral attacks" in this forum can "displace the proper resort to ... appellate practice" in the state court. *Velasquez v. Franz*, 589 A.2d 143, 150 (N.J. 1991). This appeal boils down to Smith & Wesson's disagreement with multiple state court rulings, but the company cannot use the federal courts to get another bite at the apple. This Court should affirm.

## COUNTERSTATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291.

## COUNTERSTATEMENT OF ISSUE PRESENTED

Whether Smith & Wesson can relitigate the constitutional claims and issues that the New Jersey state courts already heard and rejected.

## RELATED CASES AND PROCEEDINGS

There is a related action in state court. The State's action to enforce the same CFA Subpoena, *Platkin v. Smith & Wesson Sales Co., Inc.*, proceeded to final judgment in the New Jersey Superior Court, Chancery Division, *see* JA274, which was affirmed by the New Jersey Superior Court, Appellate Division, 289 A.3d 481 (N.J. Super. Ct. App. Div. 2023).

There are no other related cases in federal court. This Court previously heard an appeal regarding *Younger* abstention in this case, *Smith & Wesson Brands, Inc. v. Attorney General of New Jersey*, 27 F.4th 886 (3d Cir. 2022).

## COUNTERSTATEMENT OF THE CASE

### A.    The Subpoena And Consequent Parallel Litigation.

The parties have been litigating the same array of constitutional challenges to a subpoena in state and federal fora since 2021. On October 13, 2020, the New Jersey Division of Consumer Affairs (Division) served a subpoena on Appellant pursuant

to the Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-3, -4, which confers "broad[]" investigative and enforcement powers on the State's Attorney General. *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 460 (N.J. 1994).

Like previous subpoenas issued to other industries, *see* JA286, this Subpoena requested documents that would allow the State to investigate whether this company had violated the CFA by making any misstatements and/or knowing omissions to its consumers about the safety, benefits, effectiveness, and legality of its products. The Subpoena requested, *inter alia*, advertisements available to New Jersey consumers that relate to the safety benefits of the company's products; documents evaluating the veracity of claims the company made in advertisements and marketing available to New Jersey consumers; and documents demonstrating efforts by the company to determine whether its advertising practices comport with state law. *See* JA95-97.

Rather than comply, duplicative litigation ensued. Initially, Smith & Wesson requested and received a thirty-day extension to respond. JA98. But on the day the extension expired, the company refused to produce any documents, *id.*, and instead rushed to federal court with a lawsuit the very next day seeking injunctive relief that would allow the company not to comply. *See generally* Dkt. 20-19047 (D.N.J), ECF 1. Shortly thereafter, on February 12, 2021, the Attorney General and the Division filed a subpoena-enforcement action in the New Jersey Superior Court, Chancery

5

Division—which the CFA tasks with enforcing such subpoenas—seeking an order compelling production and for other relief under the CFA. JA122-28.

Smith & Wesson then pressed forward to fight the Subpoena in both fora. On March 10, 2021, Smith & Wesson filed the operative Amended Complaint in this federal lawsuit, alleging that the Subpoena violates a panoply of constitutional rights under the First Amendment (Counts I-VI), Second Amendment (Counts VII-VIII), Equal Protection Clause (Count IX), Due Process Clause (Count X), and the Fourth Amendment (Count XI), among others. JA33, 72-81. The company asked the federal court to enjoin enforcement of the Subpoena and the investigation. JA81-82.

The next day, Smith & Wesson filed in state court a combined Opposition to the State's Order to Show Cause and a Cross-Motion to Dismiss, Stay, or Quash the Subpoena. JA156. Smith & Wesson specifically characterized its Cross-Motion as a "carbon-copy dispute of the federal court lawsuit." JA188. It appended and expressly incorporated its federal-court Amended Complaint by reference. JA190 n.17. And the company sought the same relief in the Cross-Motion as in its federal pleading requests—an order quashing or barring enforcement of the Subpoena. JA198. The Cross-Motion even asked that the state-court action be dismissed or stayed in favor of the federal suit specifically because the company's objections were identical to the federal constitutional claims in its parallel federal suit. JA176-89.

6

Indeed, in its Cross-Motion, Smith & Wesson argued that the Subpoena was unenforceable because it violates the company's federal rights, including under the First, Second, and Fourth Amendments, Equal Protection Clause, Due Process Clause, and dormant Commerce Clause. JA189-98. In briefing, Smith & Wesson stressed that these "threshold issues regarding the constitutionality of the Subpoena in the first instance must be resolved before any decision to enforce it may be made." JA166. And relying on *NAACP*, 357 U.S. 449, Smith & Wesson argued that all "constitutional objections … must be adjudicated before production may be compelled." JA205, JA209.

For its part, the State explained that compelling document production alone does not burden the company's constitutional rights, noting that *NAACP* nowhere says that mere issuance of a subpoena can violate constitutional rights when (as here) no associational or privacy interests are asserted. *See* SA31-32; JA232-34; *infra* at 13-14. The State further argued that Smith & Wesson's constitutional challenges lack merit because the company's claims were "premature" and better directed to "a potential future enforcement action," SA27, SA31, not at an investigative subpoena that "seeks only documents" in the ongoing investigation, SA31. The State also explained why the challenges fail on their own terms. SA33-47.

### B.    The June 30, 2021 State-Court Order.

The state action proceeded to judgment first. On June 30, 2021, following oral argument, the Superior Court issued a final decision denying the Cross-Motion and ordering the company to comply with the Subpoena. JA274-88.

Primarily, the state court rejected Smith & Wesson's gateway theory that this investigative subpoena, standing alone, raised any serious constitutional concerns. JA283. The court agreed with the State that Smith & Wesson's reading of *NAACP* was "overly broad"—that is, while it agreed that *certain* subpoenas were subject to heightened scrutiny and required the State to "present a compelling subordinat[ing] State interest" under *NAACP*, *NAACP*'s rule was limited to investigative subpoenas that implicated the "right to freely associate and pursue private interests," and did not apply to subpoenas (like this one) that merely requested "information relating to representations" made in "public" advertisements. JA283-84. The court held that at this "early stage of the investigation," the Subpoena was valid, and it "reject[ed] the argument that the subpoena itself violates constitutional rights." JA287. As the court put it, "[t]his is merely an investigation," and "[t]he Attorney General and the Division have not made any determinations regarding CFA violations." *Id.*

Although that ruling was dispositive, the trial court offered further reasons for rejecting Smith & Wesson's constitutional claims. The court held that the Subpoena "neither bans speech nor does it 'directly regulate the content, time, place, or manner

of expression.'" *Id.* It concluded that the Subpoena did not inquire into protected "puffery/opinion" but instead focused upon "statements which have the capacity to mislead or which address product attributes and are measurable by research," a permissible inquiry that "is not arguably different from" previous state investigations into "products from other industries." JA286. Similarly, the trial court rejected the argument that the Subpoena was issued as a result of an improper motive, noting that its theory "is speculative and fails to demonstrate that the Attorney General lacks a valid basis to believe that Smith & Wesson may have committed fraud." JA288.

The June 30 Order directed the company to "respond fully" to the Subpoena within thirty days. JA274. Smith & Wesson unsuccessfully pursued an emergency stay of the document-production order, a request that was rejected at every level of the state judiciary, including by the New Jersey Appellate Division and New Jersey Supreme Court. JA289; SA53, SA56. In denying the stay, the Appellate Division found the trial court had acted within its discretion in concluding that the Subpoena "should not be quashed as unconstitutional," adding that "there is no indication the subpoena was oppressive or unreasonable." SA55.

Appellant then began producing documents, pursuant to a protective order. It also filed an appeal to the Appellate Division.

### C.    The Federal Suit And Decision Below.

The federal suit proceeded simultaneously. The State moved to dismiss the federal Amended Complaint, arguing abstention under *Younger v. Harris*, 401 U.S. 37 (1971), and failure to state a claim under Rule 12(b)(6). Just as Smith & Wesson included the same arguments in its federal-court Amended Complaint and state-court Cross-Motion, the State included the same merits arguments in its motion to dismiss that it had included in its opposition to the Cross-Motion. *Compare* ECF 29-1 at 21-40, *with* SA33-47. On August 2, 2021, Judge Neals dismissed the case on abstention grounds. ECF 46. In March 2022, this Court reversed that *Younger* ruling, but did not address the merits of the claims, or any issues relating to preclusion. *Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 27 F.4th 886 (3d Cir. 2022).[1]

On remand from this Court's *Younger* opinion, the parties filed supplemental briefing addressing the preclusive impact of the state court's June 30 final judgment. On December 27, 2022, Judge Padin—to whom the case was reassigned—granted the State's motion to dismiss, holding that New Jersey's claim-preclusion doctrine barred relitigation of the constitutional challenges to this Subpoena. JA21. The court found that all three elements of claim preclusion under New Jersey law were met.  It held that the state trial court's decision was valid, final, and on the merits (on which

---

[1] Before this Court, Appellant sought an emergency injunction pending appeal, but ultimately voluntarily withdrew its motion prior to oral argument. *See* Dkt. 21-2492 (3rd Cir.), Dkt. 10, 52.

there was no dispute). JA12. It held that the parties in the parallel proceedings were identical (again undisputed). And it held—over Smith & Wesson's objection—that the claims "arise out of the same transaction." JA12-14.

As to the third element, the district court rejected Smith & Wesson's argument that the claims in the state and federal fora were materially different. The court found that Smith & Wesson's argument "conveniently ignores" that it already "raised all of the same constitutional arguments" and sought "essentially the exact same relief" in both suits. JA13-14; *see id.* (noting Smith & Wesson "expressly incorporated-by-reference" its federal pleadings, and included "numerous citations to the [federal] public record," in the state-court Cross-Motion). Ultimately, because the state court had already rejected the "claims that the '[S]ubpoena itself violates constitutional rights,'" those issues could not be rehashed in federal court. JA14.

The district court rejected Smith & Wesson's three remaining efforts to escape preclusion. The district court found that the company had a full and fair opportunity to litigate its constitutional challenges in the state-court proceeding, where it "did in fact—present [its] threshold constitutional arguments, with numerous citations to the public record," and where the state court simply "disagreed" on the merits. JA14, JA16; *see* JA16-17 (adding that while Smith & Wesson criticizes the "summary" nature of the state-court proceeding, it never "availed itself of any of the[] available remedies" under New Jersey law to "convert the summary proceeding into a plenary

11

one 'for good cause shown.'" (quoting N.J. Ct. R. 4:67-5)). The district court also rejected the argument that *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964), allows parties to litigate federal constitutional claims in state court while "reserving" the right to repeat its claims in federal court—finding both that *England* applies only to certain unique abstention scenarios, and that Smith & Wesson did not make a proper reservation. JA14-15. And the district court rejected the contention that *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), warrants re-litigation of the Second Amendment claims, as *Bruen*'s holding regarding "an individual's Second Amendment right to armed self-defense" has no bearing on the challenged "CFA investigation." JA16.

### D.    The Appellate Division's Subsequent Opinion.

While the instant appeal was pending, on January 26, 2023, the New Jersey Appellate Division affirmed the state trial court's decision. JA574.

The state-court appeal featured a repeat of the arguments before the state trial court. Smith & Wesson's lead argument was that *NAACP* ensured "that courts *must* resolve all constitutional objections before enforcing a subpoena," JA437, disputing the trial court's observation that *NAACP*'s "holding was ... limited to freedom of association cases," JA434; *see* JA434-40; JA547-48 (same in reply). The company then argued that enforcement of the Subpoena would infringe various constitutional rights. The State, in turn, reiterated that *NAACP* is inapposite, JA511-15, and—as a

12

result—that Smith & Wesson's constitutional challenges to the Subpoena could not prevail in this early posture when "there has been no final determination that any CFA violation has occurred." JA502; *see also* JA495 (disputing the State "cannot proceed unless [it] can establish fraud at this early stage of this investigation").

The Appellate Division affirmed the trial court judgment. JA576. The panel agreed with the trial court that New Jersey's first-filed doctrine did not require a stay given that the federal litigation was filed to forestall a state-court enforcement action. JA585-88. The court next discussed general legal principles of strict necessity and judicial review. JA592-93. It then rejected Appellant's lead theory: that *NAACP* supported its challenges against the mere issuance of a Subpoena. JA593. Like the trial court, the Appellate Division concluded Appellant's reading of *NAACP* was overly broad, since this case did not implicate the associational interests inherent in that particular subpoena, and which were critical to *NAACP*'s reasoning. *See* JA594; JA596-97 (similarly rejecting reliance on *Sweezy v. New Hampshire*, 354 U.S. 234 (1957)). The Appellate Division thus rejected the federal constitutional challenges animating the Cross-Motion, as they were "premised upon" the incorrect "argument that the ... holding in *NAACP* permits them." JA598. In the alternative, the Appellate Division reasoned that "[e]ven if" *NAACP* means what Smith & Wesson claimed, its "federal constitutional claims" would still not be "ripe for adjudication" at "this preliminary stage." JA598-99. And finally, the court concluded the Subpoena was

valid and sufficiently limited in scope and was a heartland application of "clear ... investigatory power under the CFA." JA600-01.

Smith & Wesson did not seek review of the Appellate Division's decision by the New Jersey Supreme Court.[2]

## <u>SUMMARY OF ARGUMENT</u>

I. This Court should affirm the district court's judgment dismissing this action on claim-preclusion grounds. All three elements of New Jersey claim preclusion are satisfied here: the first judgment is valid, final, and on the merits; it involves identical parties; and it arises from the same transaction or occurrence.

a. The district court correctly rejected Appellant's argument that the state- and federal-court proceedings do not arise "out of the same transaction or occurrence." JA12. Appellant claims that the proceedings were fundamentally distinct by

---

[2] One final point bears noting in the procedural history, although it does not bear on the preclusion question, to correct the record. Smith & Wesson incorrectly asserts that at multiple arguments, the State's counsel could not identify any valid basis for the Subpoena. Br. 12-13. But the State *did* give examples of reasons supporting the investigation, while noting that specific investigative theories and deliberations are privileged and that it was not prejudging the ultimate outcome of the investigation, JA37. *See* SA23 (describing Appellant's "Bodyguard" advertisement "depict[ing] the concealed carry of a firearm" without disclosure of permitting requirements); JA255-257 (addressing advertisement of "Self-Defense trigger"); SA13, SA20 (discussing *City of Gary v. Smith & Wesson Corp.*, 126 N.E.3d 813, 830 (Ind. Ct. App. 2019), which involved another deceptive-advertising enforcement action implicating similar issues); JA231-32, JA507-08 (similar). And counsel in one oral argument also provided examples of Appellant claiming that a *specific feature* of its firearm (what it terms its "Self-Defense trigger") is "superior" for self-defense compared to other manufacturers'—a factual claim subject to CFA inquiry.

focusing only on the differences between the company's federal-court complaint and the Attorney General's state-court complaint. But Appellant misstates the complete record, since the company omits mention of its Cross-Motion in the state trial court. That Cross-Motion was, by Appellant's admission, a "carbon-copy" of this federal lawsuit. JA188. Indeed, Appellant's filings in support of its Cross-Motion and filings in support of the federal complaint press identical constitutional challenges premised on identical factual allegations, and seek identical relief—a court order quashing the Subpoena, the only investigative step that it alleged the State to have taken. Other courts have held that when a state trial court rejects the constitutional challenges to a consumer protection subpoena issued by a state attorney general, that decision has preclusive effect on a federal action that raises the same challenges. *See Exxon Mobil Corp. v. Healey*, 28 F.4th 383 (2d Cir. 2022). This Court should hold the same.

b. The district court correctly rejected Appellant's contention that it lacked a "full and fair opportunity" to litigate its challenges in the state-court proceeding. As an initial matter, Appellant errs in claiming that court judgments issued in summary actions can never have preclusive effect. No New Jersey case stands for such a bright line proposition, and the cases on which Appellant relies all involved extraordinary situations in which the particular parties *could not* bring their particular claims in the first action. That has no application here, where Smith & Wesson did press the same

challenges by Cross-Motion, introduced factual material (even including its federal pleading), briefed its constitutional theories, and presented oral argument.

Nor can Appellant overcome preclusion by complaining about the discovery procedures. Even though the procedures may differ, the state court's resolution of competing motions to compel and to quash a subpoena bars relitigation of a Section 1983 challenge to that same subpoena. *See Exxon*, 28 F.4th at 401. Especially here, complaints about state-court discovery fall short. For one, the discovery procedures in these state court actions more than satisfy due process requirements. For another, although Appellant lost on the merits before it could obtain any discovery, that is no different than what happens if a federal district court grants a Rule 12(b)(6) motion, a decision that indisputably has preclusive effect. And finally, Appellant chose not to pursue well-worn procedures for converting the "summary" action into a plenary one and thus avail itself of greater opportunity for discovery.

c. *England v. Louisiana Board of Medical Examiners,* 375 U.S. 411 (1964), does not justify Appellant's efforts at relitigation. As the Supreme Court expressly held, *England* reservations only apply in the context of *Pullman* abstention, where a federal court abstains to allow the state court to resolve antecedent state-law issues. *England* thus solves a specific *Pullman* problem: that the state court which resolves such antecedent issues might also improperly resolve the federal claims, even though those were not covered by the abstention order. While *England* prevents preclusion

from attaching in that case, there was no such abstention here. Regardless, Appellant did not exercise an *England* reservation: it chose to put its own federal constitutional challenges before the state court via its Cross-Motion.

d. *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), likewise does not allow the company to overcome preclusion on the Second Amendment claim for two reasons. First, while New Jersey law recognizes a limited exception to issue preclusion for intervening legal changes, that exception does not apply to claim preclusion. Second, neither *Bruen*'s holding regarding the scope of the Second-Amendment right to armed self-defense nor its rejection of means-ends scrutiny have any bearing on the question here—whether document production in a consumer-protection investigation burdens constitutional rights at all.

II. The Appellate Division's subsequent affirmance confirms that preclusion prohibits this attempt at relitigation. First, contrary to Appellant's cramped portrayal of the opinion, the Appellate Division's judgment rejecting its Cross-Motion was on the merits. Second, even were Appellant correct, preclusion would still attach.

a. The Appellate Division's opinion and judgment make clear that its decision was "on the merits." Before that court, Smith & Wesson repeated its argument that *NAACP v. Alabama* demonstrates that merely asking questions via a subpoena can violate constitutional rights, and thus that all of the constitutional objections needed to be resolved before production could be compelled. Just like the state trial court,

the Appellate Division considered and rejected that view of *NAACP*. The panel held instead that *NAACP* supported only constitutional challenges to such a subpoena in the context of a freedom-of-association claim—that is, the Appellate Division found that "outside of freedom of association" claims, there was no basis to say that merely asking for fraud-related documents violated any federal constitutional rights. JA598. That the Appellate Division found it would reject the claims as unripe "even if" that panel was wrong about *NAACP* does not undermine the primary merits grounds upon which it relied. *Id.* And the panel affirmed the trial court without modification.

b. Even were Appellant's reading correct, preclusion would still attach for two additional reasons. *First*, under longstanding New Jersey law, a trial court's holdings as to alternative-but-independently-sufficient grounds retain claim-preclusive effect even if they are not expressly passed on in an appellate court's overall affirmance. Appellant's contrary argument that the appellate opinion wholly supersedes the trial-court judgment relies on inapposite California law and inapplicable issue-preclusion concepts. *Second*, even if the Appellate Division's grounds alone are relevant, and even if the Appellate Division's grounds turn on the claims' prematurity rather than failures on the merits, that holding still precludes relitigation at present. After all, a judgment that "rests on the prematurity of the action … does not bar another action by the plaintiff instituted *after* the claim has matured"—but it has preclusive effect if the facts remain unchanged, to avoid directly contradictory judgments regarding

prematurity itself. *See* Restatement (Second) of Judgments (1982) (Restatement) §

20 & Cmt. k (emphasis added). So even on its reading, Smith & Wesson is at most

free to challenge future state actions on constitutional grounds, but cannot justify

pursuing a "carbon-copy" suit in federal court against the same state conduct.

## COUNTERSTATEMENT OF STANDARD OF REVIEW

This Court reviews Rule 12(b)(6) dismissals de novo, including those based

on preclusion. *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 172 (3d Cir. 2009).

## ARGUMENT

## I.    THE DISTRICT COURT CORRECTLY DISMISSED THIS ACTION ON CLAIM-PRECLUSION GROUNDS.

The state court's prior rejection of Appellant's federal constitutional claims is

a final judgment that precludes relitigation of the same claims in this action. Federal

courts apply the underlying state law to evaluate the preclusive effect of a state-court

judgment.  *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

New Jersey recognizes a muscular claim-preclusion doctrine to ensure "the just and

expeditious determination in a *single action* of the ultimate merits of an entire

controversy between litigants." *McNeil v. Legis. Apportionment Comm'n*, 828 A.2d

840, 858 (N.J. 2003) (emphasis in original). New Jersey law thus establishes just

three elements for claim preclusion: (1) "the judgment in the prior action must be

valid, final, and on the merits"; (2) the parties in the actions "must be identical"; and

(3) "the claim in the later action must grow out of the same transaction or occurrence

as the claim in the earlier one." *Id.* at 859. Before the district court, Smith & Wesson presented four arguments that claim preclusion does not apply: these actions do not relate to the same transaction or occurrence; claim preclusion cannot attach to judgments in summary subpoena-enforcement actions; preclusion was trumped by Smith & Wesson's so-called *England* reservation; and *Bruen* overcomes preclusion for the Second Amendment claim. The district court rejected those four arguments, and for the reasons that follow, this Court should do the same.

### A. The District Court Correctly Found That These Identical Actions Arise From The Same Transaction Or Occurrence.

Appellant errs in contending (at 34-39) that the claims in these actions did not arise out of the "same transaction or occurrence." JA12. In assessing whether state and federal actions are "substantially similar or identical," *Culver v. Ins. Co. of N. Am.*, 559 A.2d 400, 405 (N.J. 1989), New Jersey courts will assess several factors, including "(1) whether the acts complained of and the demand for relief are the same"; "(2) whether the theory of recovery is the same"; "(3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first)"; and "(4) whether the material facts alleged are the same," *Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 28 (N.J. 2015). Because the federal- and state-court actions are essentially identical, every consideration favors preclusion.

The district court correctly found that the two actions are essentially identical. JA13. In its Cross-Motion filed in state trial court, Appellant agreed, characterizing the entire state-court "action" as "a carbon-copy dispute of the federal court lawsuit" that "involve[s] … substantially the same claims and legal issues." JA188-89. In Appellant's own words, "[b]oth [cases] involve the same claims: the enforceability of the Subpoena and the validity of Smith & Wesson's constitutional objections to that Subpoena." JA189; *see id.* (adding "the cases are identical"). It even explained: "[w]hile one case presents the issues in the context of an action for deprivation of rights and the other in the context of a motion to enforce," this "is a distinction without a difference" since the "legal issues are the same." *Id.*

A comparison of the filings confirms this. The Cross-Motion incorporated by reference the allegations of its federal pleading, *see* JA169, 190 n.17, 194-96, and sought the same relief: an order barring the Attorney General from enforcing the Subpoena. *Compare* JA82 ¶¶ 218-19 (federal Complaint seeking to enjoin enforcement of the Subpoena), *with* JA198 (Cross-Motion seeking to quash Subpoena and dismiss its enforcement). And the state-court proceedings involved all the same constitutional theories: First Amendment retaliation (Counts I and II), viewpoint discrimination (Count III), compelled speech (Count IV), prior restraint (Count V), and commercial speech (Count VI). *See* JA180 (retaliation), 190-92 (viewpoint discrimination), 165, 184 (compelled speech), 165, 171 (prior restraint),

192-94 (commercial speech). So too for the claims brought under the Second Amendment, *compare* JA44-45 ¶¶ 39-42, JA49-50 ¶¶ 62-64, JA77 ¶¶ 181-87, *with* JA194-95; Dormant Commerce Clause, *compare* JA81 ¶¶ 205-10, *with* JA198; and equal protection, due process, and Fourth Amendment challenges, *compare* JA78 ¶¶ 188-99, *with* JA195-97.

As the Second Circuit recently recognized, this is the familiar domain of claim preclusion. In *Exxon Mobil v. Healey*, 28 F.4th 383 (2d Cir. 2022), the Massachusetts Attorney General served on Exxon a civil investigative demand (CID) to investigate whether Exxon engaged in deceptive practices related to its marketing and sale of securities. *Id.* at 388-89. As here, Exxon responded by suing in federal court, alleging the CID violated its First Amendment, Fourth Amendment, and due process rights and seeking an order enjoining the CID and barring state officials from conducting the investigation. *Id.* At the same time, Exxon sought to quash the CID in state court. *Id.* at 389-90. After the state court granted the State's motion to enforce and denied Exxon's motion to quash, the Second Circuit held Exxon's federal claims barred by claim preclusion. *Id.* at 401. Its reasoning was on point: even if the cases arose in "distinct procedural forms"—one a Section 1983 suit, the other competing motions to enforce and quash—both "concern the same essential violations of legal rights." *Id.* at 399. They "identify the same relevant injury: the CID's alleged violation of various federal constitutional provisions and their state analogues." *Id.*; *see id.* at 400

22

(noting additional identical allegations of Attorney General's improper motive). And it did not "affect [the court's] analysis" that these cases "sought nominally different remedies," because their "gravamen … is indistinguishable," *id.* at 400, and Exxon "repeatedly asserted that adjudicating both actions would result in relief that was 'duplicative'" and "conceded that all of its claims … in both actions arose from the same operative facts," *id.* at 401. This case is on all fours with *Exxon*.

Appellant's main response misses the point. In its opening brief, the company focuses entirely on comparing what the *State* requested in its state-court motion to compel with what the company sought in its Amended Complaint in federal court. *See, e.g.*, Br. 36 ("[T]he Attorney General's Office sole claim was that Smith & Wesson had not produced documents in response to the Subpoena"). Then, based on that comparison, it claims that the state and federal suits involved "wholly distinct" acts and relief and "different theories of recovery." Br. 36, 38-39. But that ignores Smith & Wesson's Cross-Motion, which introduced the "carbon-copy" theories and presented "the same claims: the enforceability of the Subpoena and the validity of Smith & Wesson's constitutional objections to that Subpoena." JA188-89. The introduction and resolution of that Cross-Motion thus has claim-preclusive effect, *see* Restatement § 23 ("Where the defendant interposes a claim as a counterclaim and a valid and final judgment is rendered against him on the counterclaim, the rules of bar are applicable to the judgment."), and Appellant cites no law to the contrary.

And Appellant's response to *Exxon* falls flat for the same reason: it complains that Exxon had filed a Motion to Quash, while it only filed a *Cross*-Motion to Quash, but both kinds of motions "invoke[] the jurisdiction of the state court" to decide constitutional challenges to a state subpoena, Br. 31, and the rejection of those challenges is preclusive. As Appellant itself pressed in the state-court proceedings, the posture is "a distinction without a difference." JA189.

Appellant's other arguments get it no further. First, the company argues that the relief sought in its federal suit—an order "enjoining the Office's investigation"— was unavailable in state court. Br. 37. But it offers no basis to distinguish quashing the Subpoena, on the one hand, and enjoining an "investigation" in the abstract, on the other. After all, the only investigative action challenged was the Subpoena, and there is no other action to enjoin if the Subpoena is quashed. *See* JA13 (confirming that the "federal pleading, at its core, requests that this Court enjoin the State from enforcing the Subpoena and declare that the Subpoena and the Attorney General's related CFA investigation violate S&W's constitutional rights"). In other words, just as in *Exxon*, the decision on the Cross-Motion remains preclusive of this suit despite the company's claim of superficially distinct remedies because the "gravamen ... is indistinguishable." 28 F.4th at 400. Second, Appellant's argument that the state trial court could not have rejected its challenge to the Hazardous Product Regulation because that court lacked jurisdiction, *see* Br. 37, ignores that Appellant did in fact

present this challenge to the state trial court, JA212-14; that the State never contested jurisdiction; and that the state trial court ultimately addressed the Regulation and rejected Smith & Wesson's arguments on the merits, *see* JA286-87. That decision precludes litigation on the exact same claims here.

In any event, Appellant's arguments on the transaction-or-occurrence test fail because Appellant ignores that issue preclusion likewise attaches here. The State has consistently argued both forms of preclusion, and while the district court correctly dismissed the suit on the more "demanding" claim-preclusion grounds, *First Union Nat. Bank v. Penn Salem Marina, Inc.*, 921 A.2d 417, 423 (N.J. 2007) , this Court may affirm on "any ground apparent from the record," *OSS Nokalva v. European Space Agency*, 617 F.3d 756, 761 (3d Cir. 2010). And issue preclusion, in contrast to claim preclusion, applies even if the issues arise in "a different cause of action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Thus, all of Appellant's arguments— which boil down to the notion that a federal Section 1983 suit is sufficiently procedurally different from a state-court Cross-Motion, even if the substantive issues that were decided in state court are exactly the same—are irrelevant as to issue preclusion. *See First Union*, 921 A.2d at 424. Appellant's failure to address issue preclusion at all is striking, because it likewise disposes of its challenges.

**B.     The District Court Correctly Rejected Appellant's Argument That Preclusion Can Never Apply To A Summary Proceeding.**

Appellant erroneously claims that New Jersey law never affords preclusion to judgments issued in summary actions on the alleged basis that such actions do not provide a "full and fair opportunity" to litigate claims. Br. 27-34. Its argument fails for two reasons: Appellant misapprehends New Jersey's law, and the proceeding in this case did provide a full and fair opportunity to Smith & Wesson.

1. As an initial matter, the district court correctly rejected Appellant's blanket statement that New Jersey courts never afford claim preclusion to judgments issued in summary actions. Rather, New Jersey courts simply ask in each case whether the parties had a "full and fair" opportunity to litigate the claims. Restatement § 29 & Cmt. b ("A party who has had a full and fair opportunity to litigate an issue has been accorded the elements of due process.").

Most notably, the cases on which Appellant relies (at 26-27) all involve New Jersey's "entire controversy doctrine" rather than the standard claim preclusion rules at issue here. That difference matters. The entire controversy doctrine bars "virtually all causes [and] claims ... relating to a controversy" that *could* have been brought in an earlier action, *Cogdell by Cogdell v. Hosp. Ctr. at Orange*, 560 A.2d 1169, 1173 (N.J. 1989), so long as they stem from "interrelated facts," *DiTrolio v. Antiles*, 662 A.2d 494, 504 (N.J. 1995), even if the claims were never brought. "Under the entire controversy doctrine, a party cannot withhold part of a controversy for later litigation

26

even when the withheld component is a separate and independently cognizable cause of action." *In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008). The doctrine is thus "more preclusive" than traditional claim preclusion. *Bank Leumi USA, v. Kloss*, 233 A.3d 536, 540 (N.J. 2020). In that context—where the underlying claim was never actually brought or adjudicated in the first proceeding—it makes sense to carefully scrutinize whether the procedures available in the first action made it impossible to raise those claims. But where, like here, the litigation involves ordinary preclusion of claims *already adjudicated*, that question is obviously inapposite. After all, there is no dispute that the procedures allowed the claims to be brought in the first action, because they actually were brought.

Appellant's entire-controversy cases are illustrative, as each involved litigants who genuinely had no ability to raise and press their claims in the first proceeding— unlike Appellant who *did* press the claims it wishes to relitigate now. *Cafferata v. Peyser*, 597 A.2d 1101 (N.J. Super. Ct. App. Div. 1991), involved a prior "informal expedited mediation" handled by a judge's "secretary" to settle a "routine collection matter" on an unpaid medical bill from a pro se patient. *Id.* at 1102-04. That mediation did not bar the patient's later medical malpractice suit because the patient had had no opportunity to litigate a completely separate malpractice claim in the collections mediation. *Id.* at 1103. Similarly, in *B.F. v. Division of Youth & Family Services*, 686 A.2d 1249 (N.J. Super. Ct. App. Div. 1997), parents whose parental

rights were terminated by the Division of Youth and Family Services (DYFS) sued *other entities* (non-parties to the termination action) in a subsequent suit. *Id.* at 1252. The Appellate Division declined to apply the entire controversy doctrine to bar the later suit because there was no "procedural mechanism" for bringing the non-DYFS defendants into the termination action. *Id.* at 1254-55. And in *Levchuk v. Jovich*, 855 A.2d 635 (N.J. Super. Ct. Law. Div. 2004), an executor was not barred from bringing a claim for "return of … funds to the estate" against a defendant who disputed the will in the prior probate proceeding, since his "standing" to bring the reimbursement claim did not mature until the conclusion of that probate proceeding, when the will was probated. *Id.* at 637, 639, 641. These cases did not turn on the first proceeding's nature as a "summary action," but rather on the actual impossibility of pursuing the challenged claim against the relevant parties in the prior adjudication.

Appellant's other cases are even less relevant, as neither are preclusion cases. *Grabowsky v. Township of Montclair*, 115 A.3d 815 (N.J. 2015), represents a single proceeding over a zoning dispute, where the Supreme Court held that a summary action is not authorized by the Rules where it is not requested by either party. *Id.* at 822. *Levine v. Seidel*, 319 A.2d 747 (N.J. Super. Ct. App. Div. 1974), for its part, was a summary dispossession action that was dismissed for lack of jurisdiction. *Id.* at 749. While the Appellate Division said in dicta that a merits decision there would not have been "[r]es judicata in a subsequent action between the landlord and tenant

even over the same subject matter," *id.*, that says nothing about what the rule is in this materially-distinct scenario. And indeed, Appellant points to nothing in the past fifty years adopting or applying that dicta to similar circumstances. Appellant thus offers no support for its unique rule that, as a categorical matter, New Jersey courts afford no preclusive effect to claims actually resolved in summary actions.

2. Instead, the proper analysis makes clear that Smith & Wesson undoubtedly had a "full and fair opportunity" to press its constitutional challenges. Appellant focuses entirely upon the "Attorney General's 7-page Verified Complaint [that] contained a single claim for document production," Br. 30, still overlooking that it pressed its own federal constitutional challenges in its Cross-Motion and that these challenges were adjudicated. *See supra* at 6-14. Indeed, Appellant filed extensive briefs (even incorporating its federal Amended Complaint by reference) and pressed its case in oral argument before the trial court, in post-judgment emergent briefing at every level of the state judiciary, and then on appeal.

*Exxon* is again instructive. There, too, the company argued that a prior state-court subpoena proceeding denied it a "full and fair opportunity to litigate its federal claims" because the subpoena proceeding was "limited in nature." *Exxon*, 28 F.4th at 401. But the Second Circuit rightly rejected that claim, noting that the core issue was whether Exxon was able to litigate its federal claims in the prior action. *Id.* Since Exxon—like Appellant—actually raised and litigated its federal claims in the state-

court proceeding, *id.* at 399, "any differences in Exxon's ability to assert objections in the CID proceeding are therefore irrelevant." *Id.* at 401. Although Appellant tries to distinguish *Exxon* on the basis that Exxon filed a Motion to Quash rather than (as here) a *Cross*-Motion to Quash, that is of no moment because it has no bearing on the procedures used to resolve the challenge. Rather, what matters is that in *Exxon* and here, the company affirmatively introduced its federal claims into the state-court proceeding and sought "the same relief" based on "the same operative facts" in both actions. *Id.* at 400-01 (the fact that company the was in a "defensive" posture in the prior proceeding was immaterial). Even if Appellant "remained steadfast" in stating its preference for federal court, Br. 31, its own Cross-Motion urged the state court to resolve its federal challenges as the basis for quashing the Subpoena, and thus the rejection of that "carbon copy" motion is preclusive. *See* JA165, 189-98.

Appellant's final argument that it lacked a "full and fair opportunity" to press its challenge because it did not receive discovery fares no better. Far from cases like *Cafferata*, *B.F.*, and *Levchuk*—in which the *claims* could not be pressed against the relevant parties in state court—Smith & Wesson's argument boils down to whether differences in the *discovery procedures* bar preclusion. But so long as the state-court proceeding comports with due process, the presence of distinct discovery procedures in no way bars preclusion. *See, e.g.*, *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 481 (1982) (noting "state proceedings need do no more than satisfy the minimum

procedural requirements of" the Due Process Clause); *Exxon*, 28 F.4th at 401 (noting

such differences are immaterial). Due process does not impose a "single model of

procedural fairness, let alone a particular form of procedure," *Kremer*, 456 U.S. at

485, and Appellant has never disputed that the state-court proceeding satisfied the

Due Process requirements of "notice and an opportunity to be heard," *Bostanci v.

N.J. City Univ.*, 476 F. App'x 499, 502 (3d Cir. 2012).

More fundamentally, Appellant's premise that a first judgment can only have

preclusive effect if the losing party was first able to take discovery makes little sense.

In federal and state court alike, litigants are not automatically entitled to discovery

if the court finds their claims defective as a matter of law. Here, the state court held

that "[t]he *theory* of improper motive set forth by Smith & Wesson is speculative

and fails to demonstrate that the Attorney General lacks a valid basis to believe that

Smith & Wesson may have committed fraud" as a matter of law. JA288 (emphasis

added). In other words, the challenges Smith & Wesson pressed—based on a range

of public pleadings—were insufficiently plausible to support relief.[3] But that Smith

---

[3] Appellant obviously disagrees deeply that its federal constitutional challenges were insufficient. *See* Br. 30-31 (attacking state court's "consideration" of its challenges; and complaining the court analogized to *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679 (S.D.N.Y. 2018), to find its allegations implausible). But that it feels it "did not have its allegations taken as true," Br. 32, or that the court's judgments were mistaken, are precisely the sorts of arguments it could have made had it pressed its case to the New Jersey Supreme Court. They do not, however, show the company lacked a "full and fair opportunity" to press its challenges in state court and so they provide no basis for collateral litigation in federal court.

& Wesson lost does not mean the procedures were defective. Indeed, this is precisely what happens when a federal court grants a Rule 12(b)(6) motion. Just as a decision granting a Rule 12(b)(6) motion to dismiss as a matter of law indisputably warrants preclusive effect despite the lack of discovery, so too the judgment here.

In any event, Appellant's no-preclusion-without-discovery argument runs into another independent problem: it did have the opportunity to pursue discovery under New Jersey law. Not only did the company incorporate its federal filings and submit its own evidence beyond the initial subpoena-enforcement pleadings via its Cross-Motion, *see* JA173-76, but Smith & Wesson also could have moved under N.J. Court Rule 4:67-5 to convert the summary action into a "plenary action" to seek additional opportunities for factual development and for a trial. *See* JA16 (noting that Smith & Wesson "ignores the express provisions within the New Jersey Court Rule governing summary proceedings that … enable the Superior Court to convert the summary proceeding into a plenary one for good cause shown"); *In re Est. of Yung-Ching Wang*, No. A-3035-09, 2011 WL 2981478, at *6 (N.J. Super. Ct. App. Div. July 25, 2011) ("A summary action may be converted to a plenary action on motion."); *Cent. State Bank v. Hudik-Ross Co.*, 396 A.2d 347, 351 (N.J. Super. Ct. App. Div. 1978); *see also Essex Cnty. Corr. Officers PBA Local No. 382 v. Cnty. of Essex*, 106 A.3d 1238, 1252 (N.J. Super. Ct. App. Div. 2014) (noting discovery is available in plenary actions). Appellant offers no explanation for failing to pursue this opportunity, but

its decision not "to avail [it]self of the full procedures provided by state law does not constitute a sign of their inadequacy." *Kremer*, 456 U.S. at 485; JA17 (Appellant's choice to forego that opportunity is not "a basis for it to assert that it did not receive a full and fair opportunity to litigate its constitutional claims in state court").[4]

### C.   The District Court Correctly Rejected Appellant's Reliance On *England*.

Appellant's argument that it "reserved" its ability to have its claims heard in federal court (at 44-46) is inconsistent with the law and the facts.

As to the law, Appellant misunderstands *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964). *England* addresses a specific problem not relevant here. Specifically, in *Railroad Commission v. Pullman Company*, 312 U.S. 496 (1941), the Supreme Court identified a category of federal constitutional cases that could be obviated by antecedent state-law issues, and thus directed federal

---

[4] Appellant's critiques of this portion of the district court's decision are misplaced. First, the court did not hold that Appellant had to "forfeit[] its right … to present its constitutional claims to a federal court." Br. 31. All it held was that Appellant cannot escape the normal consequences of claim preclusion by complaining about the lack of discovery in a summary action when Appellant could have converted that action into a plenary one and pursued discovery. JA16-17. Second, the district court never said Appellant had to "demand[] a full-fledged jury trial" or "fil[e] counterclaims." Br. 32. Rather, the district court cited a panoply of procedures available to parties—and recognized, as the State has always argued, that the ability to convert a summary action to a plenary one undermines Appellant's full-and-fair-opportunity argument. JA16-17. Finally, the district court did not find that this case was barred by the entire controversy doctrine, but instead by claim preclusion. *Compare* Br. 41, *with* JA11 ("agree[ing]" the state court order "is a final judgment that precludes relitigation of the same claims and issues in this case").

courts to abstain to provide the state courts a chance to resolve those state issues first. *Id.* at 501. *England* resolved a *Pullman*-specific problem: that after abstaining to permit a state court to resolve antecedent *state*-law issues, the state court would not also resolve the *federal* issues in ways that preclude the federal court from later doing so.

Appellant ignores the Supreme Court and circuit rulings that limited *England* to this context. *San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323 (2005), held explicitly that *England*'s own reasoning "makes clear [its] holding was limited to" *Pullman* abstention—that is, such a reservation is only effective "when a federal court abstains from deciding a federal constitutional issue to enable the state courts to address an antecedent state-law issue." *Id.* at 339. In that context, and that context alone, a "plaintiff may reserve his right to return to federal court for the disposition of his federal claims." *Id.*; *see also Davison v. Rose*, 19 F.4th 626, 634 (4th Cir. 2021) ("[A]n *England* reservation only applies after a federal court abstains under *Pullman*."); *Atwater v. Chester*, 730 F.3d 58, 63 (1st Cir. 2013) ("The right to reserve claims arises only when the district court abstains under *Pullman*."); JA14-15 (rejecting Appellant's claim for same reasons).

Indeed, it makes no sense for *England* to apply to a case like this one, which turns not on any antecedent state-law issues, but on whether Appellant is entitled to two fora—state and federal—in which to present these same federal challenges. *See*

JA15. After all, when a party presents a federal constitutional challenge to the state court, even by way of Cross-Motion, state courts are entirely capable of handling the challenge. *See Allen*, 449 U.S. at 105 (repeating "this Court's emphatic reaffirmation ... of the constitutional obligation of the state courts to uphold federal law, and its expression of confidence in their ability to do so"). When they do so—and in sharp contrast to when they do so improperly in the context of a *Pullman*-abstention order—their judgment is entitled to preclusive effect. Allowing litigants to present a constitutional challenge in a Cross-Motion and yet "reserve" a right to subsequently litigate the same issue in federal court would swallow the general rules of preclusion and finality in a federalist system. That is not the law.

Appellant's reliance on one pre-*San Remo* case is not to the contrary. See Br. 45 (citing *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064 (3d Cir. 1990), for the proposition that England reservations "can apply outside the *Pullman* context"). But to the extent *Bradley* suggests *England* applies beyond the *Pullman* context, it is inconsistent with *San Remo*, the controlling precedent. *See R & J Holding Co. v. Redevelopment Auth. of Cty. of Montgomery*, 670 F.3d 420, 429 n.6 (3d Cir. 2011) (assuming without deciding that *Bradley*'s analysis "is no longer good law"). And *Bradley*'s actual holding does not help Appellant. The Court explicitly said it was not "deciding the general parameters of an *England* reservation," but only deciding the precise scenario "made [t]here": the plaintiff "explicitly reserv[ed]" his federal

claim in the state-court action; both the defendant and the state court "acquiesce[d] in the reservation"; and the federal proceeding was stayed pending resolution of the state action. 913 F.2d at 1072. None of those features—which puts the *Bradley* facts far closer to a *Pullman*-abstention situation—are present here.

In any event, as to the facts, Appellant made no actual *England* reservation in this particular case. Where, as here, "a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then … he has elected to forgo his right to return to the District Court." *England*, 375 U.S. at 419. And there is "no reason why a party, after unreservedly litigating his federal claims in the state courts although not required to do so, should be allowed to ignore the adverse state decision and start all over again in the District Court." *Id.*; *see San Remo*, 545 U.S. at 340-41 (reservation ineffective if plaintiff voluntarily "chose to advance" federal claims in state court). Though Appellant did prefer to have its claims heard in federal court, it also insisted the state court could not act on the Subpoena without considering the federal constitutional challenges it presented in its Cross-Motion to Quash. By pursuing its federal claims in state court, Appellant "'effectively asked the state court to resolve the same federal issues they [now assert they] asked it to reserve. *England* does not support the exercise of any such right.'" JA15 (quoting *San Remo*, 545 U.S. at 341).

### D.    The District Court Correctly Rejected Appellant's Argument That *Bruen* Overcomes Preclusion On The Second Amendment Claim.

Appellant makes one final argument as to its Second Amendment claim alone: that the Supreme Court's decision in *Bruen* undoes the preclusive effect of the state court decision. The district court correctly rejected that claim for two independently sufficient reasons: there is no exception to claim preclusion for intervening changes, and *Bruen* has no impact on the basis for the state-court decision.

First, while New Jersey law recognizes an exception to issue preclusion for intervening legal changes, no exception exists for claim preclusion. A significant body of caselaw explains this distinction. *See* Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4415 (3d ed.) (noting that a "[c]hange in the controlling principles of law ordinarily does not warrant denial of claim preclusion"); *Coors Brewing Co. v. Mendez-Torres*, 562 F.3d 3, 11 (1st Cir. 2009) (noting an exception is recognized for issue preclusion only); *Johnson v. Spencer*, 950 F.3d 680, 696 (10th Cir. 2020) (same). Third Circuit and New Jersey precedents confirm claim preclusion applies even when "a contrary judicial decision on the legal issues involved intervene[d] between the first and second suits"—meaning that a change in controlling Supreme Court precedent does not "furnish[] a basis" for an exception to claim preclusion. *Barzin v. Selective Serv. Loc. Bd. No. 14*, 446 F.2d 1382, 1382-83 (3d Cir. 1971); *see also Franco v. Davis*, 271 A.2d 735, 737 (N.J. Super. Ct. Law Div. 1970) ("A judgment … that a statute is constitutional, is Res judicata as between the parties,

even though in another action the statute is declared unconstitutional." (quoting 50 C.J.S. Judgments § 704 n.56)); *Selective Ins. Co. of Am. v. Capoferri*, No. A-1591-08, 2010 WL 1028313, at \*4 (N.J. Super. Ct. App. Div. Mar. 19, 2010) (same).

That makes sense: that an intervening change in governing law is no exception to claim preclusion is "a necessary by-product of the general rule that judgments are final," a rule that "establish[es] certainty in legal relations," "ensures the finality of judicial decisions," and "encourages reliance on those decisions." *Harrington v. Vandalia-Butler Bd. of Ed.*, 649 F.2d 434, 438 (6th Cir. 1981). And while Appellant argues an exception for intervening changes applies to all preclusion doctrines, the only cases it cites discussed issue preclusion, which the district court did not rely on. Br. 40 (citing *Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1010 (N.J. 2006); *Herrera v. Wyoming*, 139 S. Ct. 1686, 1697 (2019)). But the resolution of the claims between identical parties involving the identical occurrence remains in repose.

In any event, even if intervening decisions could overcome claim preclusion, *Bruen* did not change the law on which the state court based its decision. In *Bruen*, the Supreme Court held that where a statute burdens the Second Amendment, courts must engage in a historically-guided inquiry rather than apply a means-end scrutiny test. 142 S. Ct. at 2125-26. And *Bruen* laid out why certain state public carry laws, which restrict individuals' ability to carry firearms in public for self-defense, could not satisfy that inquiry. *Id.* at 2156. But the Court reaffirmed that courts reviewing

Second Amendment challenges still must conduct a threshold analysis of whether the challenged law burdens the Second Amendment right in the first place, and it did not announce any sweeping changes to that distinct question. *Id.* at 2126 (explaining that courts must first assess whether "the Second Amendment's plain text covers an individual's conduct"; if it does not, "the analysis can stop there").

Appellant's emphasis that *Bruen* "did away with the means-end scrutiny test," Br. 40, is puzzling because the state court did not rely at all on means-end scrutiny. Instead, it resolved the Second Amendment issue on the threshold inquiry, which is no different now than before *Bruen*, and found that the mere issuance of a subpoena for documents pursuant to a consumer fraud statute does not infringe any Second Amendment rights. *See* JA287. No individual's right to possess or use firearms is implicated by a subpoena to a gun manufacturer that merely asks the manufacturer for information regarding its representations to consumers and that does not order them to change their behaviors at all. *See, e.g.*, *Zimmer v. N.J. Div. of Child Prot. & Permanency*, No. 15-2524, 2016 WL 234844, at *12 (D.N.J. Jan 20, 2016) (child protective services inquiry into "Plaintiff's gun ownership and gun safety practices, or inspecting Plaintiff's firearms and gun safe, did not burden Plaintiff's rights"); *Rearick v. Wiedemer*, No. 11-624, 2012 WL 3231096, at *3 (M.D. Pa. Aug. 6, 2012). *Bruen* changed no part of that analysis and thus *Bruen* would not overcome claim preclusion even if there were an exception for intervening decisions.

## II.    NOTHING IN THE APPELLATE DIVISION'S OPINION CHANGES THIS RESULT.

Before this Court, Smith & Wesson contends (at 21-26) that even if the state trial court judgment was preclusive, the state proceedings lost their preclusive effect after the Appellate Division affirmed. But Smith & Wesson's fundamental premise is wrong: the Appellate Division's decision was "on the merits," a fact the company avoids only with a selective reading of its opinion. And even if Appellant's premise were correct, preclusion would still attach in this case.

### A.    The Appellate Division's Rejection Of Appellant's Constitutional Challenges Was "On The Merits."

The Appellate Division affirmed the trial court decision in its entirety, fully agreeing with the decision to deny Appellant's Cross-Motion and to grant the State's motion to enforce the Subpoena. JA574. That across-the-board affirmance confirms that Appellant's federal claims are precluded.

The Appellate Division's opinion and judgment both make clear its decision was "on the merits." Before the Appellate Division, the crux of Smith & Wesson's argument was that *NAACP v. Alabama* demonstrated that merely asking questions via a subpoena can violate constitutional rights, and thus that all of the constitutional objections needed to be resolved before production could be compelled. *See* JA574 (Appellate Division opinion); JA434-39 (Appellant's Appellate Division brief). Like the state trial court, the Appellate Division squarely disagreed, holding that *NAACP*

did not "open[] the door" to constitutional challenges to an investigative subpoena "outside of freedom of association" claims—that is, outside the narrow confines of freedom of association, there was no warrant to claim that merely asking for fraud-related documents violated constitutional rights. JA598. To reach that conclusion, the court analyzed the holdings of *NAACP* and its progeny, noting those were limited to cases where the private disclosures sought by the issuance of a subpoena severely burdened associational rights (unlike this case). *See* JA593-597 (discussing *NAACP* and *Sweezy*). Thus, the panel was ultimately "not persuaded" by the invitation to read *NAACP* to "protect[] not only freedom of association, but also [the] government trespass of 'fundamental freedoms' and 'indispensable liberties'" asserted in the Cross-Motion. *Id.* (citation omitted).

The Appellate Division took pains to make the upshot of this holding clear—that Appellant had no viable constitutional objections against an *enforcement action* "before production of the sought-after documents can be compelled." JA597. In other words, Appellant's federal constitutional challenges to the Subpoena collapsed because the company's "theories [we]re premised on the argument that the United States Supreme Court's holding in *NAACP* permits them." JA598 (First, Second, Fourth, and Fourteenth Amendment claims). And because those challenges were not "permit[ted]" as to the Subpoena, the court had no reason to entertain Appellant's other arguments—for example, whether it could assert Second Amendment rights

on behalf of its customers, JA597 n.6—which could only be relevant *if* the Subpoena actually implicates Second Amendment rights at all. Because the Appellate Division found that it did not, that was the end of the road for these claims.

That Appellant assiduously omits any reference to this discussion is telling. But its assertion that the Appellate Division "declined to address the merits of Smith & Wesson's constitutional arguments," Br. 21, cannot be squared with this portion of the Appellate Division's opinion. Indeed, the panel's holding as to *NAACP*—and its implications for these constitutional challenges—*is* a merits rejection of Smith & Wesson's claims. The Appellate Division even acknowledged Smith & Wesson's argument that the trial court "erred by not addressing each constitutional argument on its merits," JA597; "disagree[d]" with that criticism, JA598; and reiterated that Appellant's constitutional claims all failed because they were "premised upon" an erroneous reading of *NAACP*—one that the panel "already rejected," *id.*; *see also id.* (*NAACP* did not "open the door to"[5] any successful constitutional challenges against subpoenas when the party did not present a similar "freedom of association" claim). That more than suffices to preclude relitigation of the same claims.

---

[5] Smith & Wesson obliquely suggests that this means the panel "declined to consider Smith & Wesson's constitutional arguments on the merits." Br. 22. But the point of the panel's *NAACP* discussion was that the *Subpoena* alone does not violate those constitutional rights, and because no further steps had been taken, there was no other viable constitutional challenge to consider.

Appellant's opening brief focuses entirely on a different portion of the panel opinion, but ignores that this discussion was an *alternative* explanation. *See* Br. 22-23. After concluding that *NAACP*—Smith & Wesson's lead case—did not support its argument that a mere subpoena for records violated the company's constitutional rights, the Appellate Division stated that "*[e]ven if*" *NAACP* had opened the door to such claims, the panel still would "find these federal constitutional claims not ripe for … consideration." JA598 (emphasis added). Appellant's opening brief fails to mention the "even if" language, but that language is critical: it demonstrates that the Appellate Division viewed its *NAACP* holding and its ripeness discussion as separate and independently sufficient. Said another way, even if there could be successful constitutional claims against subpoenas, Appellant had not done enough in this case to show they were yet anything more than hypothetical. *See, e.g.*, JA288 (explaining that Smith & Wesson's constitutional concerns could fail to materialize if "review of the subpoenaed documents" identifies "no basis" for enforcement). Conversely, if an enforcement action was actually launched in a manner that violated Appellant's constitutional rights, it could challenge *that* action—meaning it was not "absolutely necessary" to resolve that hypothetical now. JA592; *see also* JA592-93 (discussing constitutional avoidance principles). While this conclusion itself still has preclusive effect, *see infra* at 45-50, the key point here is that this discussion was only offered as an alternative to the panel's primary merits holding regarding *NAACP*.

The Appellate Division's judgment is consistent with its merits determination. The Appellate Division simply "Affirmed" the decision of the trial court entirely—without modification or qualification. *See* JA601.[6] Nor did the Appellate Division dismiss any claim "without prejudice," *but see* Br. 23-25 (discussing the preclusive effect of dismissals without prejudice): it upheld in full the rejection of the Cross-Motion and the grant of the motion to compel. *See, e.g.*, *Exxon*, 28 F.4th at 402 (rejecting similar argument that state court did not resolve challenges to state CID on the merits when it found those challenges to be premature attacks on the investigation, and emphasizing the state court "in no way limited or conditioned [its] decision to uphold the CID"). The Appellate Division left the door open to future challenges brought against an *enforcement action*, but categorically rejected the idea that mere questions in the Subpoena could themselves violate rights other than those established by *NAACP*. Smith & Wesson cannot repeat the same claims in the hope of a different result before the federal court.

---

[6] That clarity is instructive, because the Appellate Division often expressly modifies a judgment or specifies particular grounds for affirmance. *See, e.g.*, *State v. Zadroga*, 275 A.3d 1, 15 (N.J. Super. Ct. App. Div. 2022) (providing "trial court's decision is hereby modified to include," and confirming in the judgment line that the decision is "Affirmed, as modified"); *Facebook, Inc. v. State*, 273 A.3d 958, 978 (N.J. Super. Ct. App. Div. 2022) (same). It did not do so here.

## B.     Even If Appellant's View Of The Appellate Division's Decision Is Correct, Preclusion Still Attaches.

Although Appellant errs in claiming that the Appellate Division's decision is not "on the merits," the decision would be preclusive regardless. First, the state trial court decision retains preclusive effect. Second, an appellate court holding that these claims are premature itself at least has preclusive effect until the facts change.

1. While the Appellate Division's opinion is best read as an across-the-board affirmance, even if it were viewed as affirming only some of the trial court's grounds for decision, the remaining grounds still have claim-preclusive effect.

Over a century ago, in a case involving the preclusive effect of a New Jersey state-court judgment, this Court recognized that a New Jersey trial court's holdings as to alternative-but-independently-sufficient grounds retain claim-preclusive effect even when they are not expressly passed on in an appellate court's affirmance. *See Russell v. Russell*, 134 F. 840 (3d Cir. 1905). In *Russell*, the prior New Jersey state-court decision dismissed a complaint seeking the modification or invalidation of an antenuptial agreement, holding both that there were no grounds to modify the agreement and no grounds to invalidate it as being induced by fraud. *See Russell v. Russell*, 129 F. 434, 437 (C.C.D.N.J. 1904) (discussing *Russell v. Russell*, 47 A. 37 (N.J. Ch. 1900), *aff'd*, 49 A. 1081 (N.J. Ct. E & A 1901)). The appellate court affirmed on the first ground only and found it "unnecessary to consider" the issue of

fraud. *Russell*, 49 A. at 1081. In short, the state trial court found no grounds for fraud, but the appellate court declined to reach that issue entirely.

In a second action in federal court, the plaintiff then sought to relitigate that fraud question. Although the federal district judge agreed that res judicata could not apply because (just as Smith & Wesson argues here) only grounds "directly disposed of" in the state appellate court's opinion are res judicata, *Russell*, 129 F. at 438, this Court reversed. This Court expressly rejected the proposition that, if the prior state-court judgment is appealed, only "the views expressed by the [state appellate] court" determine the res judicata effect. *Russell*, 134 F. at 841. Instead, because the New Jersey appellate court *affirmed* the judgment, the state trial court's decision "had not ceased to exist, but had been expressly continued in force" as "a subsisting judgment of a court of competent jurisdiction." *Id.* And because the lower court's holding on fraud was a decision "on the merits" "rendered in a proceeding between the same parties," an affirmance of that judgment *preserved* its preclusive effect. *Id.* On Smith & Wesson's view of this case, *Russell* is on all fours: the state trial court's rejection of its challenges, including that the Subpoena did not violate its constitutional rights and was not issued for an improper motive, were "expressly continued in force" by the Appellate Division's decision to "affirm" and therefore retain preclusive force. And the State had not found any intervening decision of New Jersey's highest court or this Court contravening this longstanding precedent.

Appellant fails to justify its contrary rule. Appellant argues (at 21) that the state trial court's grounds lose preclusive force after affirmance on a subset of those grounds, without acknowledging *Russell* or citing any New Jersey case on point. Instead, Appellant cites a *California* case to argue that "a ground reached by the trial court … but not embraced by the appellate court's decision" has no preclusive force. Br. 25 (quoting *Parkford Owners for Better Cmty. v. Windeshausen*, 296 Cal. Rptr. 3d 825, 834 (Cal. App. 2022)). But States diverge on this issue, *see, e.g.*, *Bolsta v. Bremer*, 3 N.W.2d 430, 431 (Minn. 1942) (same view as *Russell*), and there is no reason to believe New Jersey follows California law. Instead, California and New Jersey diverge in an important way on this question. In California, a trial court ruling on appeal "has no preclusive effect until the appellate process is complete," *Samara v. Matar*, 419 P.3d 924, 931 (Cal. 2018), and so it makes more sense that preclusion would be dictated by the appellate court's grounds alone. In New Jersey, by contrast, the fact a state-court decision is on appeal is *irrelevant* to its finality for preclusion. *See Bondi v. Citigroup*, 32 A.3d 1158, 1187 (N.J. Super. Ct. App. Div. 2011) ("New Jersey courts hold that a judgment is final even pending an appeal."). It would be far more surprising to find that a previously preclusive judgment *lost* preclusive effect after the judgment was affirmed, even if some grounds were not considered.

Although Appellant may highlight on reply that the rule is different for issue preclusion, that is of no moment. New Jersey courts generally rely on Restatement

§ 27 as to issue preclusion, and comment o states that when an appellate court affirms on only *some* grounds, only those grounds have issue-preclusive effect.[7] But there is no such rule for claim preclusion. For good reason: issue preclusion turns on which issues were "actually … determined" and "essential" to a result, Restatement § 27, while claim preclusion asks instead whether a *judgment* bars relitigation of precisely the same claims between precisely the same parties, *see, e.g.*, *Conitz v. Alaska State Comm'n for Human Rights*, 325 P.3d 501, 509 (Alaska 2014) (drawing this same distinction in holding prior appellate decision was res judicata). That is precisely what Smith & Wesson seeks to do here.

2. At the very least, *even if* Smith & Wesson is correct that only the Appellate Division's judgment can have preclusive effect, and *even if* the company is correct that the Appellate Division solely held it "premature" to consider these constitutional challenges, Br. 22-23, that prematurity holding is still preclusive until the State takes further action. As Restatement § 20 puts it, a judgment for a defendant that "rests on the prematurity of the action … does not bar another action by the plaintiff instituted after the claim has matured." *See also id.* cmt. k (explaining that a "prematur[ity]" determination means "that subsequent events may give rise to a new claim that is not barred by a prior judgment"); *Garrett v. Murphy*, 17 F.4th 419, 429 (3d Cir. 2021) (discussing Restatement § 20 & cmt. k).

---

[7] The State is not aware of any New Jersey case specifically adopting comment o.

Assuming Smith & Wesson's view of the Appellate Division's opinion, that describes this case perfectly. The State was the defendant to the Cross-Motion. The Appellate Division held that the federal constitutional challenges were premature when all that the State has done is issue a Subpoena and move to compel compliance. And nothing has happened since that decision that would impact these challenges. Just the opposite: Smith & Wesson filed the federal-court Amended Complaint and state-court Cross-Motion one day apart, *see supra* at 5-6, and challenged "carbon-copy" actions by the state officials, JA188. Competing holdings as to whether these identical challenges are premature is the very conflict preclusion avoids.

The cases on which Appellant itself relies (at 23) encapsulate this distinction. *Ohio ex rel Boggs v. City of Cleveland*, 655 F.3d 516 (6th Cir. 2011), addressed only whether resolution of a "2002 Action" in state court would carry preclusive effect in a "2008 Action" as to claims arising from facts *that did not exist in 2002*. *Id.* at 523 (noting that prior claims "were not ripe" in the original action). *Boggs* did not involve parallel proceedings with identical challenges to identical actions—the procedural posture here. So too for *In re Hubert*, 129 A. 698 (N.J. Ch. 1925), where new facts had developed that led to new causes of action where the "question now presented" in the second action "was not then ripe for decision" on the facts in the first action. *Id.* at 698. This all reflects a blackletter point of New Jersey law: where "subsequent events materially alter the facts underlying a judgment, a party is not precluded from

pursuing fresh litigation." *Town of Secaucus v. Hackensack Meadowlands Dev. Comm'n*, 631 A.2d 959, 966 (N.J. Super. Ct. App. Div. 1993). When circumstances change, a state-court prematurity holding may no longer have preclusive effect. Until that happens, however, the state court's decision remains preclusive.

Issue preclusion produces the same result. After all, the doctrine forecloses "[e]ven subject-matter jurisdiction" from being relitigated, "attacked collaterally," *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009), or "reopen[ed]," *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982); *see also, e.g.*, *id.* ("It has long been the rule that [preclusion] principles ... apply to jurisdictional determinations—both subject matter and personal"); *Orlando Residence, Ltd. v. GP Credit Co., LLC*, 553 F.3d 550, 556 (7th Cir. 2009) (Posner, J.) (noting that in this context, the "actually litigated" issue-preclusion element is "relax[ed] .... because an attempt to invalidate a judgment is far more problematic than an attempt merely to relitigate an[y] [other] issue"). Such a conclusion serves the "practical necessity" at stake—the "need for finality." *Travelers Indem. Co.*, 557 U.S. at 154. Until the State takes other steps, the issue of whether Smith & Wesson's claims are premature is—on Appellant's own reading—settled. Smith & Wesson's contrary view thus fails to afford the state court judgment full faith and credit.[8]

---

[8] To the degree this Court believes New Jersey law has not settled any of the claim- or issue-preclusion questions at issue here, this Court should certify them to the New

## **CONCLUSION**

This Court should affirm the dismissal of the Amended Complaint.

<div style="margin-left:40%">

Respectfully submitted,

MATTHEW J. PLATKIN
Attorney General of New Jersey

</div>

By:    /s/ Nathaniel Levy
       Nathaniel Levy
       Deputy Attorney General

Dated: June 23, 2023

---

Jersey Supreme Court, just as in *Bank Leumi USA v. Kloss*, No. 18-3220, 2019 WL 9526852 (3d Cir. Aug. 12, 2019). Federal courts often certify state-law preclusion to address "uncertain[]" state law, *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 129 F.3d 414, 418 (7th Cir. 1997), and to "further[] ... comity and federalism," *Gale v. City & Cnty. of Denver*, 923 F.3d 1254, 1258 (10th Cir. 2019).

## <u>CERTIFICATION OF BAR MEMBERSHIP</u>

I certify that I am a member in good standing of the bar of the United States

Court of Appeals for the Third Circuit.

By:    /s/ Nathaniel Levy
Nathaniel Levy
Deputy Attorney General

DATED: June 23, 2023

## <u>CERTIFICATION OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C)(i) and L.A.R. 31.1(c), I certify that:

1.    This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) because the brief contains 12,731 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using the Microsoft Word word-processing system in Times New Roman that is at least 14 points.

3.    The text of the brief filed with the Court by electronic filing is identical to the text of the paper copies.

4.    This brief complies with L.A.R. 31.1(c) in that prior to being electronically mailed to the Court today, it was scanned by the following virus detection software and found to be free from computer viruses:

Company: McAfee, Inc.

Product: McAfee Endpoint Security Platform & Threat Prevention, version 10.7 (10.7.0.2687–10.7.0.2787).

Dated:  June 23, 2023                    /s/   Nathaniel Levy
                                         Nathaniel Levy
                                         Deputy Attorney General

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on June 23, 2023, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system. Counsel of record for all parties are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/   Nathaniel Levy
Nathaniel Levy
Deputy Attorney General