**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

**No. 23-1223**

**SMITH & WESSON BRANDS, INC.; SMITH & WESSON SALES
COMPANY; and SMITH & WESSON INC.,**

*Plaintiffs-Appellants*,

v.

**ATTORNEY GENERAL OF THE STATE OF NEW JERSEY; NEW
JERSEY DIVISION OF CONSUMER AFFAIRS,**

*Defendants-Appellees.*

**APPELLANTS' REPLY BRIEF**

**On Appeal from the United States District Court for the
District of New Jersey, No. 20-CV-19047**

<table>
<tr>
<td>Courtney G. Saleski<br>**DLA PIPER LLP (US)**<br>One Liberty Place<br>1650 Market Street<br>Suite 5000<br>Philadelphia, PA 19103<br>(215) 656-2431</td>
<td>Joseph A. Turzi<br>Edward S. Scheideman<br>**DLA PIPER LLP (US)**<br>500 Eighth Street, NW<br>Washington, DC 20004<br>(202) 799-4000</td>
<td>Christopher M. Strongosky<br>**DLA PIPER LLP (US)**<br>51 John F. Kennedy<br>Parkway, Suite 120<br>Short Hills, NJ 07078<br>(973) 520-2550</td>
</tr>
</table>

*Attorneys for Plaintiffs-Appellants Smith & Wesson Brands, Inc.,
Smith & Wesson Sales Company, and Smith & Wesson Inc.*

July 14, 2023

# **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................2

I.    The New Jersey Appellate Division's Subsequent Opinion Removes the Basis for the District Court's Holding on Claim Preclusion. ............................2

    A.    The Appellate Division Did Not Address Smith & Wesson's Constitutional Objections to the Subpoena on the Merits. ..........................2

    B.    The Appellate Division's Opinion Removes Any Preclusive Effect of the Trial Court's Earlier Judgment. .............................................7

II.   Alternatively, the District Court Order Should Be Reversed Because the District Court Erred in Concluding that Smith & Wesson's Claims Are Barred by New Jersey's Preclusion Doctrines. .................................................16

    A.    Claim Preclusion Does Not Apply Because the Chancery Division's Procedures Prevented a Full and Fair Opportunity to Litigate. .................16

    B.    Because the Different Proceedings Raised Distinct Claims, Preclusion Cannot Apply. ...........................................................................21

    C.    Under *Bruen*, the Second Amendment Analysis Changed After the Chancery Division's Order. ........................................................25

    D.    The District Court Erred by Relying on the Entire Controversy Doctrine, an Argument the Attorney General's Office Did Not Even Press. ....................................................................................26

III.  The District Court's Order Should Be Reversed Because Smith & Wesson Reserved Its Right to Proceed in Federal Court. ...............................................27

CONCLUSION ..................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*B.F. v. Div. of Youth & Family Servs.*,
   686 A.2d 1249 (N.J. App. Div. 1997) .......................................19, 20

*Bradley v. Pittsburgh Bd. of Educ.*,
   913 F.2d 1064 (3d Cir. 1990) ...............................................28

*Cafferata v. Peyser*,
   597 A.2d 1101 (N.J. App. Div. 1991) ............................16, 17, 18, 20

*City of Plainfield v. Public Service Electric & Gas Co.*,
   412 A.2d 759 (N.J. 1980) ....................................................26

*E.I. DuPont de Nemours & Co. v. United States*,
   508 F.3d 126 (3d Cir. 2007) ..................................................9

*Earl v. NVR, Inc.*,
   990 F.3d 310 (3d Cir. 2021) ..................................................9

*England v. La. State Bd. of Med. Examiners*,
   375 U.S. 411 (1964)........................................................27, 28

*Exxon Mobil Corp. v. Healey*,
   28 F.4th 383 (2d Cir. 2022) ...............................................22, 23

*Grabowsky v. Twp. of Montclair*,
   115 A.3d 815 (N.J. 2015) ....................................................16

*Greenleaf v. Garlock, Inc.*,
   174 F.3d 352 (3d Cir. 1999) ..................................................7

*Hicks v. Quaker Oats Co.*,
   662 F.2d 1158 (5th Cir. 1981) ...............................................10

*Int'l Refugee Org. v. Rep. S.S. Corp.*,
   189 F.2d 858 (4th Cir. 1951) ................................................10

*Jackson v. DeSoto Par. Sch. Bd.*,
   585 F.2d 726 (5th Cir. 1978) ................................................26

*Martin v. Henley*,
   452 F.2d 295 (9th Cir. 1971) .................................................................10

*Mitchum v. Foster*,
   407 U.S. 225 (1972)...............................................................................15

*Moran Towing & Transp. Co. v. Navigazione Libera Triestina, S.A.*,
   92 F.2d 37 (2d Cir. 1937) ......................................................................11

*Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co.*,
   662 A.2d 536 (N.J. 1995) ...........................................................2, 4, 12

*NAACP v. Alabama*,
   357 U.S. 449 (1958)..................................................3, 4, 5, 12, 13

*Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*,
   94 F.3d 747 (2d Cir. 1996) ....................................................................10

*Olivieri v. Y.M.F. Carpet, Inc.*,
   897 A.2d 1003 (N.J. 2006) ....................................................................25

*Pace v. Kuchinsky*,
   789 A.2d 162 (N.J. App. Div. 2002) .....................................................25

*Papera v. Pa. Quarried Bluestone Co.*,
   948 F.3d 607 (3d Cir. 2020) ..............................................................6, 7

*Plains All Am. Pipeline L.P. v. Cook*,
   866 F.3d 534 (3d Cir. 2017) ...........................................................5, 24

*Pogue v. Principal Life Ins. Co.*,
   979 F.3d 534 (6th Cir. 2020) ................................................................10

*Russell v. Russell*,
   134 F. 840 (3d Cir. 1905) ........................................7, 8, 9, 10, 11, 12

*Samara v. Matar*,
   419 P.3d 924 (Cal. 2018) ................................................................6, 9, 11

*San Remo Hotel, L.P. v. City & Cnty. of S.F., Cal.*,
   545 U.S. 323 (2005).......................................................................27, 28

*Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*,
   27 F.4th 886 (3d Cir. 2022) ......................................................................1, 2, 23

*Stebbins v. Keystone Insurance Co.*,
   481 F.2d 501 (D.C. Cir. 1973) ...........................................................................10

*Walker v. Choudhary*,
   40 A.3d 63 (N.J. App. Div. 2012) ........................................................................4

*Watkins v. Resorts Int'l Hotel & Casino*,
   591 A.2d 592 (N.J. 1991) ........................................................................4, 12, 13

*Woodward-Clyde Consultants v. Chemical & Pollution Sciences*,
   523 A.2d 131 (N.J. 1987) .....................................................................................6

## Rules

N.J.R. 4:30A ...........................................................................................................26

N.J.R. 4:67-4(b) ....................................................................................................20

## Other Authorities

*Effect of Opinion Upon Affirmance of Judgment*,
   51 COLUM. L. REV. 784 (1951) .............................................................................5

Francis C. Amendola, *et al.*, 50 C.J.S. Judgments § 966 ........................................26

*Restatement (First) of Judgments* § 49, cmt. c ........................................................9

Wright & Miller, *Federal Practice and Procedure* § 4415 ....................................26

Wright & Miller, *Federal Practice and Procedure* § 4421 ....................................10

Wright & Miller, *Federal Practice and Procedure* § 4432 ....................................11

# INTRODUCTION

No court has adjudicated the merits of Smith & Wesson's federal constitutional claims—the very claims that Judge Paul B. Matey said "present novel questions at the crossroads between the guarantees in the First and Second Amendments." *Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 27 F.4th 886, 896 (3d Cir. 2022) (Matey, J., concurring). That insight has taken on even greater significance after the Supreme Court's decision in *N.Y. State Rifle & Pistol Association, Inc. v. Bruen*, in which the Court admonished that the Second Amendment is not a second-class right. 142 S. Ct. 2111, 2156 (2022). Now, the Attorney General stretches principles of preclusion beyond any recognizable limit, attempting to prevent any oversight of constitutional invasions by State actors.

Regardless of what political target an attorney general may decide to pursue (whether a firearm manufacturer, an abortion provider, or a then-disfavored protestor), affirming the judgment here would allow the executive's power to issue an administrative subpoena to supersede the right to petition in federal court. The Attorney General's troubling position—that it is effectively immune from a pending federal civil-rights suit once it wins a state-court motion in a summary action—is contrary to New Jersey law, unfair, and would neuter federal courts' ability to provide redress for constitutional violations. These very constitutional protections were enshrined to impose checks on governmental power and "giv[e] the people

predictable protections for securing the 'Blessings of Liberty.'" *Smith & Wesson Brands*, 27 F.4th at 896 (Matey, J., concurring).  This Court should reverse.

## **ARGUMENT**

### I.    **The New Jersey Appellate Division's Subsequent Opinion Removes the Basis for the District Court's Holding on Claim Preclusion.**

The Attorney General clearly recognizes that its fundamental problem in this appeal is that, after the District Court dismissed this action on claim-preclusion grounds, the Appellate Division affirmed while *refusing to address Smith & Wesson's constitutional objections on the merits*, thereby eliminating any possible preclusive effect of the summary action.  Opening Br. 21-26.  The Attorney General attempts to avoid this necessary result by rewriting the Appellate Division's decision and arguing that the *Chancery Division's* now-defunct ruling remains preclusive. Resp. Br. 40-50.  Both arguments lack merit.

### A.    **The Appellate Division Did Not Address Smith & Wesson's Constitutional Objections to the Subpoena on the Merits.**

Claim preclusion requires "an adjudication on the merits of the claim." *Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co.*, 662 A.2d 536, 542 (N.J. 1995). Because the Appellate Division refused to adjudicate any objection "on the merits," claim preclusion does not apply, and this Court should reverse.  *Id.*

The Attorney General misreads the Appellate Division's opinion, urging that the court adjudicated the merits when affirming.  Resp. Br. 40-44.  That argument

cannot be squared with the court's clear statement that Smith & Wesson's constitutional objections were "not ripe for [its] consideration," as previously explained. JA598; Opening Br. 21-26. Nor can it be reconciled with the court's primary holding that the Chancery Division should not have considered the merits of those objections before enforcing the Subpoena. JA593-598. The court reached that conclusion through what it called the "lens" of "the doctrine of strict necessity"—which requires "courts to avoid, where at all possible, confrontation with constitutional issues," JA592-93—and after rejecting Smith & Wesson's argument that *NAACP v. Alabama*, 357 U.S. 449 (1958) "requires resolution of all constitutional objections before production may be compelled," JA547 (brief); JA593-97 (opinion). Having ruled that *NAACP* neither "permits" nor "open[s] the door" to the objections, the court concluded Smith & Wesson had no right to have its constitutional objections adjudicated at the subpoena-enforcement stage— precisely the opposite of a merits ruling.[1] JA593-598,

The Attorney General seeks to stand the opinion on its head, arguing the Appellate Division's conclusion that *NAACP* does *not* "permit" Smith & Wesson's

---

[1] Despite acknowledging Smith & Wesson objected based on violations of *five* distinct constitutional provisions, the court did not mention the requirements for proving *any* violation. *See* JA597-98; *see also* JA599 (stating there would be "no hardship to the parties by declining to address defendant's constitutional arguments now"); JA597 n.6 (refusing to consider Second Amendment objections).

constitutional objections is somehow a merits ruling on those objections. Resp. Br. 42. That makes no sense, conflicts with what the Appellate Division said, and is inconsistent with New Jersey law, which does not treat resolution of such threshold issues as merits adjudications for claim-preclusion purposes. *Mortgagelinq*, 662 A.2d at 542 (dismissal on "threshold issue that eschews evaluation of the merits" is not preclusive); *Watkins v. Resorts Int'l Hotel & Casino*, 591 A.2d 592, 600-602 (N.J. 1991) (dismissal not "on the merits" when based on inability "to proceed to determine the substantive merits of the claim"); *Walker v. Choudhary*, 40 A.3d 63, 75 (N.J. App. Div. 2012) (no preclusion applies to statute-of-limitations dismissal because the issue "bears no relationship to the actual merits of the case"). New Jersey law is thus clear that the Appellate Division's refusal to address the constitutional objections is not a merits adjudication for preclusion purposes.[2]

Meanwhile, the Attorney General wrongly contends that the "point of the panel's *NAACP* discussion was that the Subpoena alone does not violate those constitutional rights." Resp. Br. 42 n.5. That is not what the Court said. And the

---

[2] In the District Court, the Attorney General tellingly did not argue (as it argues here) that the Chancery Division's narrow reading of *NAACP* constituted a merits adjudication. Rather, the Attorney General argued that the ruling was "on the merits" because the court "conclude[d] they were defective as a matter of law" and "expressly determined that the Subpoena and its enforcement are not unconstitutional." ECF 66-1. Nothing like that appears in the Appellate Division's now-controlling opinion.

argument is illogical and makes little sense given the Appellate Division's central invocation of the "doctrine of strict necessity"—which the Attorney General ignores—and its conclusion that *NAACP* neither "permits" nor "open[s] the door" to the objections.  JA597-598.  The Attorney General's argument would mean the Appellate Division held that *all* constitutional objections—except freedom of association challenges—to *all* subpoenas are *per se* adjudicated as meritless as a matter of law.  That startling extrapolation of the court's discussion of *NAACP* is impossible to square with the court's admonition to avoid constitutional rulings unless "absolutely necessary to resolve a controversy between parties."  JA592.

The Appellate Division's "affirmance" makes no difference.  *See* Resp. Br. 44.  The word "affirm" does not mean affirmed "on the merits" or endorsed every aspect of the lower court's reasoning.  *Effect of Opinion Upon Affirmance of Judgment*, 51 COLUM. L. REV. 784, 785-86 (1951) (explaining that, in the preclusion context, often "the words 'dismissed' or 'judgment affirmed' alone" do not "indicate whether the action was dismissed as premature or on its merits").  The court affirmed because it ultimately agreed the Subpoena was enforceable—not because it agreed Smith & Wesson's "premature constitutional objections" lacked merit.  That is precisely why courts have *rejected* the Attorney General's contention that a judgment remains preclusive after it "is affirmed solely on grounds that would not

trigger claim preclusion." *Samara v. Matar*, 419 P.3d 924, 929-30 (Cal. 2018) (citing cases); *see* Section I.B.

Nor was there any occasion for the Appellate Division to "dismiss any claim 'without prejudice.'" Resp. Br. 44. Smith & Wesson asserted constitutional *objections* to a Subpoena—not affirmative "*claims*"—so the appellate court had no need to state explicitly that it was affirming "without prejudice" (unconventional parlance from an appellate court). *See* Section II.A. Functionally, the court rejected Smith & Wesson's constitutional arguments *without prejudice* to assert them again, stating that Smith & Wesson had "preserved" its "premature constitutional objections. JA598-601. That statement would make no sense if the court had rejected those objections on the merits. This reading of the opinion accords with well-settled law that prematurity dismissals should be "without prejudice" and that without-prejudice dismissals "should not have preclusive effects." Opening Br. 23-24 (quoting *Merritts v. Richards*, 62 F.4th 764, 772 n.4 (3d Cir. 2023) and citing cases); *Woodward-Clyde Consultants v. Chemical & Pollution Sciences*, 523 A.2d 131, 135 (N.J. 1987) ("A dismissal without prejudice is not an adjudication on the merits and does not bar reinstitution of the same claim in a later action.").

Finally, even if the Appellate Division's opinion were ambiguous, this Court "construe[s] ambiguities against claim preclusion." *Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 611 (3d Cir. 2020). That is because the party "asserting

claim preclusion"—here, the Attorney General—bears the burden of "proving that a dismissal was with prejudice and so can preclude claims." *Id.* This rule undercuts the Attorney General's strained reading of the Appellate Division's opinion.

> **B.    The Appellate Division's Opinion Removes Any Preclusive Effect of the Trial Court's Earlier Judgment.**

The Attorney General counterintuitively argues that even if "the Appellate Division's decision is not 'on the merits,'" this Court should still affirm because: (i) "the state trial court decision retains preclusive effect" despite the subsequent appellate opinion, and (ii) "an appellate court holding that these claims are premature itself at least has preclusive effect until the facts change." Resp. Br. 45-50. Those arguments lack merit.

1.    The Attorney General's argument that the Chancery Division's decision is preclusive is based entirely on a 118-year-old decision from this Court, which has been disapproved by the only two cases that have cited it in the past forty years. *Russell v. Russell*, 134 F. 840 (3d Cir. 1905).[3]

*First*, *Russell* is not controlling because it does not apply New Jersey law. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999). The appeal in *Russell* arose from a New Jersey dispute, but this Court did not mention New Jersey law on

---

[3] The *Russell* opinion is so terse that the Attorney General must rely on repeated citations to the trial court's underlying ruling, rather than this Court's opinion. Resp. Br. 45-46.

preclusion, much less apply it.   The only authorities cited in *Russell* are from the Supreme Courts of the United States, Tennessee, and Pennsylvania, suggesting the Court was applying federal common law.  134 F. at 841.  No New Jersey court has ever adopted *Russell* as an accurate statement of New Jersey law.  Nor does the Attorney General cite any New Jersey case holding that the preclusive effect of an affirmed judgment should be determined by the trial court's opinion, without regard for the basis of the affirmance.

*Second*, *Russell* is not controlling because it is does not accurately reflect New Jersey law.  In *Russell v. Board of Adjustment of Borough of Tenafly*, the New Jersey Supreme Court approvingly cited authorities that rejected the *Russell* rule as the "height of unreason."  155 A.2d 83, 89 (N.J. 1959) (citing, among other authorities, *Moran Towing & Transp. Co. v. Navigazione Libera Triestina, S.A.*, 92 F.2d 37, 40-41 (2d Cir. 1937) (Hand, J.)).   In doing so, the court endorsed a contrary rule of preclusion that affords an appellate affirmance preclusive effect only with respect to the specific grounds for affirmance:

> Quite often a court will have two independent reasons for the result it reaches in a case, each one sufficient by itself to sustain the judgment; in this situation, it is said that the court has made alternative holdings. It has been held that, since each of the alternatives is sufficient by itself to sustain the judgment, each becomes a basis for collateral estoppel. *If the case is so decided in the trial court, then appealed, and if the appellate court affirms on the basis of one ground only, leaving the other unconsidered, the latter ground will no longer be a basis for collateral estoppel.*

*Id.* (emphasis added; citations omitted).[4]

It is not only New Jersey that has rejected *Russell* as outdated and superseded by intervening authority. *E.I. DuPont de Nemours & Co. v. United States*, 508 F.3d 126, 132 (3d Cir. 2007) ("[P]recedents may be reevaluated when there has been intervening authority."). The Supreme Court of California recently explained that there has been an erosion of what "was once broad support for the view that the preclusive effect of an affirmed judgment should be determined without regard for the basis of the affirmance." *Samara*, 419 P.3d at 930 (citing *Russell* and other pre-1940s cases). But in 1942, the *Restatement (First) of Judgments* diverged from that view and conveyed the now-settled rule "that '[w]here the trial court bases the judgment for the defendant upon two alternative grounds, one on the merits and the other not on the merits, and an appellate court affirms the judgment solely on the ground which is not on the merits, the judgment does not bar a subsequent action by the plaintiff based upon the same cause of action.'" *Id.* (quoting *Restatement (First) of Judgments* § 49, cmt. c). In the aftermath, there was a widespread shift away from the rule announced in *Russell*, which explains why the Attorney General does not

---

[4] Even if *Russell* applied New Jersey law *and* were correctly decided in 1905, this Court is not bound by prior panel decisions where "there is persuasive evidence that [state law] has undergone a change." *Earl v. NVR, Inc.*, 990 F.3d 310, 314 (3d Cir. 2021). *Borough of Tenafly* reflects New Jersey law and puts to bed the Attorney General's attempt to resurrect *Russell*.

cite any case post-dating 1942 on this issue. *See id.* at 925, 930-32 (overruling past precedent and holding that the claim-preclusive "effect of the judgment should be evaluated as though the trial court had not relied on the unreviewed ground").

In addition to New Jersey, the overwhelming majority of federal and state courts have rejected the *Russell* rule. *See id.* at 929-30 (citing cases). For instance, the Second Circuit has reaffirmed that "[i]t is a *well-established principle of federal law* that if an appellate court considers only one of a lower court's alternative bases for its holding, affirming the judgment without reaching the alternative bases, only the basis that is actually considered can have any preclusive effect in subsequent litigation." *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 754 (2d Cir. 1996) (citing cases); *Pogue v. Principal Life Ins. Co.*, 979 F.3d 534, 536 (6th Cir. 2020) (similar); *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1168 & n.6 (5th Cir. 1981) (similar); *Stebbins v. Keystone Insurance Co.*, 481 F.2d 501, 507 n.13 (D.C. Cir. 1973) (similar); *Martin v. Henley*, 452 F.2d 295, 300 (9th Cir. 1971) (similar); *Int'l Refugee Org. v. Rep. S.S. Corp.*, 189 F.2d 858, 862 (4th Cir. 1951) (similar); Wright & Miller, *Federal Practice and Procedure* § 4421 ("[O]nce an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision.").

Armed only with outdated law, the Attorney General attempts to dismiss these authorities because many (but not all) of them address issue preclusion, not claim

preclusion.   That is a distinction without a difference.   *Samara* was a claim-preclusion case, and the court correctly rejected that same argument: "Although most of these authorities concern issue rather than claim preclusion, their refusal to afford preclusive significance to a trial court determination that evades appellate review is informative."   419 P.3d at 930; *see Moran Towing*, 92 F.2d at 40-41 (finding no claim-preclusive effect from alternative holding not reviewed on appeal).   Applying a contrary rule in the issue- or claim-preclusion context would lead to an anomalous result whereby courts apply preclusion principles based solely on the fact of affirmance, without regard to the *reason for the affirmance.*   That is non-sensical and conflicts with the principle that "[t]he nature of the ultimate final judgment in a case ordinarily is controlled by the actual appellate disposition."   Wright & Miller, *Federal Practice and Procedure* § 4432.

*Finally*, even if *Russell* were controlling and valid (and it is not), it is plainly distinguishable and inapplicable.   The issues decided by the trial court in *Russell*— whether an agreement should be modified or invalidated on grounds of fraud—both directly related to the merits of the underlying claims.   And there was no inherent inconsistency between the trial court's two alternative rulings upholding the validity of a contract and the appellate court's subsequent affirmance on only one of those two grounds.   By contrast, the merits of Smith & Wesson's constitutional objections are distinct from the threshold, non-merits gating question of whether those

objections could or should be addressed on the merits under *NAACP* and the doctrine of strict necessity.  The Appellate Division's non-merits reasons for affirmance— *i.e.*, ripeness and the conclusion that *NAACP* does not "permit" the objections—are inherently inconsistent with the Chancery Division's rejection of those objections on the merits.  JA593-601.  Thus, even if this Court views *Russell* as binding precedent (which it should not), it should nonetheless conclude that it is readily distinguishable.

2. The Attorney General next argues that even if "the Appellate Division's decision is not 'on the merits,'" this Court should still affirm because "an appellate court holding that these claims are premature itself at least has preclusive effect until the facts change." Resp. Br. 45, 48-50.  Once again, the Attorney General is wrong.

The Attorney General misstates New Jersey law and tellingly does not cite any New Jersey authority supporting this assertion.  That is unsurprising since the New Jersey Supreme Court has repeatedly declined to afford preclusive effect to orders addressing a "threshold issue that eschews evaluation of the merits," as is the case here.  *Mortgagelinq*, 62 A.2d at 542; *Watkins*, 591 A.2d at 600.  That is why the Attorney General's argument rests entirely on a provision of the *Restatement* (Resp. Br. 48) that is not binding authority and has not been adopted by New Jersey courts in similar circumstances.

The Attorney General's argument is based on the mistaken premise that Smith & Wesson believes the Appellate Division "solely held it 'premature' to consider these constitutional challenges." Resp. Br. 48. That is not what Smith & Wesson said. As explained, before describing Smith & Wesson's objections as unripe, the Appellate Division "ruled that the Chancery Division had no need to consider the merits of those claims before enforcing the Subpoena." Opening Br. 22. The court's alternative ripeness/prematurity rationale does not undermine the court's statement that Smith & Wesson had no right to an on-the-merits resolution of its objections under *NAACP*.

The dispositive issue is whether there was an "adjudication" of those objections "on the merits." *Watkins*, 591 A.2d at 600. The Attorney General does not—and cannot—argue that the Appellate Division's conclusion that those objections were "premature" is an adjudication "on the merits" for preclusion purposes. So it has not shown that preclusion should apply. That is especially so because the Attorney General—which bears the burden of proving preclusion— never argued below that the § 1983 claims should be dismissed as "premature," and the District Court never reached that conclusion either. This Court should accordingly decline to address this argument, which the Attorney General failed to preserve despite the opportunity to raise it at any time after the Chancery Division issued its judgment.

Moreover, even though the Attorney General is wrong that the Appellate Division's ruling has "preclusive effect until the facts change," Resp. Br. 45, the facts have changed materially in the years since the Subpoena was issued and the Chancery Division ordered Smith & Wesson to comply with it.   Indeed, the Appellate Division's conclusion that the constitutional objections were premature was based on the fact that the Subpoena had not been enforced, *see* JA601, but that is no longer the case.   The New Jersey courts have enforced the Subpoena under penalty of contempt, Smith & Wesson has gone to great lengths to comply with it, and Smith & Wesson's constitutional rights have been violated in the process.   For that reason, the Appellate Division's treatment of the objections as "premature" in the subpoena-enforcement context does not have any preclusive effect on Smith & Wesson's constitutional tort claims now that the unconstitutional Subpoena has been enforced.

The Attorney General also fails to distinguish between constitutional objections asserted in response to a subpoena and § 1983 claims seeking to vindicate past constitutional violations.  The Appellate Division said only that trial courts need not address constitutional objections to a subpoena before enforcing the subpoena in a summary proceeding.  It did not say—and had no authority to say—that a subpoena recipient lacks the ability to seek redress under federal law for constitutional torts committed by state actors in connection with an unlawful subpoena and

14

investigation; the District Court did not say so either when it dismissed this action with prejudice. There is simply no basis in law for the Attorney General's newfound argument that the federal courts must treat this § 1983 action as "premature" merely because the Appellate Division reached that conclusion to avoid addressing *objections* to the Subpoena.

Adopting the Attorney General's contrary view would undermine the vital role of federal courts as the guardians of constitutional rights and would undercut the ability of civil-rights litigants to vindicate their rights through § 1983. Through § 1983, Congress directed federal courts to interpose themselves between the people and the State where, like here, it is necessary "to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972). Absent this Court's intervention, the Attorney General's politically motivated investigation and Subpoena will be immunized from judicial and constitutional scrutiny. As explained, taken together, the effect of the Appellate Division's opinion and the District Court's order would be "that Smith & Wesson's claims cannot be heard in state court because they are purportedly 'premature,' but cannot be pursued in federal court because they have been dismissed with prejudice." Opening Br. 25. The Attorney General's silence in response to this argument is deafening.

This Court should reverse because the Appellate Division's now-controlling opinion did not adjudicate any constitutional objection on the merits and thus removed any possible preclusive effect of the Chancery Division's judgment.

## II.    Alternatively, the District Court Order Should Be Reversed Because the District Court Erred in Concluding that Smith & Wesson's Claims Are Barred by New Jersey's Preclusion Doctrines.

Smith & Wesson's opening brief explained the many legal and equitable reasons why the District Court erred by dismissing with prejudice.  In response, the Attorney General litigates maximalist arguments that Smith & Wesson did not make, claims the law is on its side without citation multiple times, and ignores dispositive arguments.

### A.    Claim Preclusion Does Not Apply Because the Chancery Division's Procedures Prevented a Full and Fair Opportunity to Litigate.

New Jersey's courts have recognized that summary actions are not well suited to preclusion because they are unique, expedited proceedings where litigants are not given a full panoply of rights.  *See Cafferata v. Peyser*, 597 A.2d 1101, 1104 (N.J. App. Div. 1991).   Such proceedings are frequently resolved without favorable inferences at summary judgment, *Grabowsky v. Twp. of Montclair*, 115 A.3d 815, 822 (N.J. 2015), and, as here, without discovery or trial.

The Attorney General says that the District Court's opinion is supported by "blackletter New Jersey claim-preclusion principles."  Resp. Br. 2.  But it does not cite a single case that supports its assertion.  No law is the opposite of blackletter

law.  In New Jersey, expedited "proceedings were never intended to have preclusionary consequences beyond their own scope." *Cafferata*, 597 A.2d at 1104. Summary actions were designed to be summary—fast and inexpensive—they were not designed to be full litigation with the usual potential for later preclusion. *See id.*

The Attorney General asserts, without citation, that New Jersey courts more carefully scrutinize the procedures in the first case when applying the entire controversy doctrine.  Resp. Br. 27.  That is not correct as a matter of simple logic because the entire controversy doctrine is the most "preclusive" doctrine, so any scrutiny applied in the entire-controversy context would also apply in the claim-preclusion context.  The court in *Cafferata* explained that "[i]f *res judicata* and collateral estoppel principles, which are predicated upon actual issue litigation, are inapplicable in [the] circumstances, then, *a fortiori*, the entire controversy doctrine, predicated on litigation which could have, but did not take place, is inapplicable." 597 A.2d at 1104.  New Jersey opinions rejecting the *broader* entire controversy doctrine thus logically encompass the *narrower* doctrines of claim and issue preclusion.

The Attorney General devotes two or fewer sentences to the cases Smith & Wesson cited.  It contends that *Cafferata* is distinguishable because it involved a

settlement in front of a law clerk.[5]  Resp. Br. 27.  That argument myopically focuses on one part of the case history while ignoring the remainder of the court's reasoning, which focused on the expedited nature of the first case.  *See* 597 A.2d at 1104.  The first action related to the medical bill for the same treatment that formed the basis of the second malpractice suit.  *Id.* at 1102.  Under the District Court's view, claim preclusion would have applied to the second suit in *Cafferata* because it arose from the same medical treatment, requiring the defendant-turned-plaintiff to counterclaim for medical malpractice in the first suit or be forever barred from bringing that claim.  The Appellate Division rejected that conclusion because the first suit was summary and expedited.  *Id.* at 1104.  Contrary to the Attorney General's assertions, the Appellate Division analogized to the doctrines of claim and issue preclusion in its reasoning, explaining that each doctrine requires a full and fair opportunity to litigate, which the expedited proceeding did not provide.  *Id.*  If anything, the defendant-turned-plaintiff in *Cafferata* received more process than Smith & Wesson because depositions occurred in the expedited medical-bill action, *id.* at 1103, but not here.

---

[5] The Attorney General says a secretary handled the mediation, but it was a law clerk. *Cafferata*, 597 A.2d at 1105.  By implying the mediation was held in front of someone without legal training, the Attorney General overstates its informality.

The Attorney General's attempt to distinguish *B.F.* is selective and unpersuasive. *See B.F. v. Div. of Youth & Family Servs.*, 686 A.2d 1249 (N.J. App. Div. 1997). The primary reason the court in *B.F.* declined to apply preclusion was the summary "nature" of the first proceeding. *Id.* at 1253. That reasoning is fully applicable here: an expedited parental-rights action does not preclude subsequent constitutional claims any more than an expedited subpoena-enforcement action precludes already-filed constitutional claims. *See id.* at 1253-54. To hold otherwise would permit the Attorney General to trample any party's rights, so long as the Office successfully moves to enforce a subpoena in state court. The unclear mechanism for joining additional parties in summary proceedings was an "additional" (not primary) "reason" for the court's holding that preclusion does not apply to a summary action, and it only applied to a subset of the defendants. *Id.* at 1254; *see* Resp. Br. 28.

The Attorney General ignores *Alexander v. Gardner-Denver Co.* where the Supreme Court explained that arbitration's nature as an "efficient, inexpensive, and expeditious means for dispute resolution" makes it "a less appropriate forum for final resolution of Title VII issues than the federal courts." 415 U.S. 36, 58 (1974). That is the same reason New Jersey courts refuse to afford preclusive effect to foreclosure disputes and estate proceedings. Opening Br. 28 (citing cases).

The Attorney General is wrong that New Jersey courts refuse to apply preclusion only when it was impossible to assert a claim in the first proceeding. Resp. Br. 27-28. If that were the case, the opinions in *Cafferata* and *B.F.* would have been very short and reached the opposite conclusion. Neither opinion states that it was impossible for the defendant-turned-plaintiff to have counterclaimed. New Jersey courts have an interest in keeping their specialized proceedings expedited and efficient, rather than forcing every litigant into interpleader and motions practice to add claims.

The Attorney General does no better defending the District Court's assertion that Smith & Wesson should have moved to convert the summary action into a plenary action. JA16-17. Conversion to a plenary action is permitted only with a showing of good cause where the defendant is entitled to a jury trial. *See* N.J.R. 4:67-4(b). The Attorney General cannot—and does not—say that any defendant it hails into court for subpoena non-compliance can convert that action into a jury trial. And, in any event, the court in *B.F.* explicitly rejected the same faulty reasoning, explaining that, "[r]equiring motion practice for the purpose of avoiding the preclusive effect of the entire controversy doctrine would obviously cause unwarranted delay in these cases so sensitive to the effects of delay." 686 A.2d at 1254. The Attorney General has no response to that reasoning. Smith & Wesson is entitled to press its claims in its chosen forum, federal court.

**B.    Because the Different Proceedings Raised Distinct Claims, Preclusion Cannot Apply.**

1.    The Attorney General described the summary action as a "quotidian subpoena dispute," JA363, involving a singular request to enforce the document Subpoena, based on a single claim alleging violation of the Consumer Fraud Act for failure to produce documents. JA126-27. Smith & Wesson's federal-court case, on the other hand, lodged fourteen counts to protect and seek redress for the invasion of the company's fundamental rights. JA72-82. The Attorney General's sole claim has been resolved, but Smith & Wesson's federal-court claims remain unresolved to this day. New Jersey courts do not apply preclusion under these circumstances.

Smith & Wesson detailed how the relevant factors all weigh against preclusion. Opening Br. 36-39. The Attorney General glosses over those factors and all the substantive differences between the two proceedings that Smith & Wesson identified.[6] Its response boils down to Smith & Wesson's cross-motion to dismiss, stay, or quash the Subpoena. Resp. Br. 23. However, defendants will typically contend that the plaintiff's requested relief should be denied and that the summary action should be dismissed. No New Jersey case has held that a

---

[6] Smith & Wesson did not argue that New Jersey law never affords preclusive effect to a summary action. Resp. Br. 15, 26. That is a strawman. This case is not about whether New Jersey would ever apply preclusion after a summary action—it is about how preclusion is not appropriate in the circumstances presented here.

defendant's simple assertion that it should win the summary action is sufficient for claim preclusion.

Here, the principal arguments in Smith & Wesson's cross-motion sought a stay of the summary action (so the federal court could resolve the constitutional issues) or dismissal of the one-count complaint. JA157. Smith & Wesson asked the Chancery Division not to reach the merits because the company wanted to litigate in federal court. *See, e.g.*, JA189 ("Smith & Wesson's claims were entirely federal, making federal court the obvious and appropriate forum[.]"). To avoid waiver, Smith & Wesson incorporated by reference its constitutional arguments in the alterative. *Id.* Although the Attorney General harps on one reference to the summary action being a "carbon copy lawsuit," Resp. Br. 23, that statement was made in the context of seeking a stay of the summary action, JA188. Smith & Wesson was not saying that the claims and procedures were identical.

The Attorney General relies on *Exxon Mobil Corp. v. Healey*, 28 F.4th 383 (2d Cir. 2022). That case was not adjudicated under New Jersey law, and Exxon was the plaintiff in both proceedings, affirmatively invoking the state court's jurisdiction. *Id.* at 401. By contrast, Smith & Wesson consistently sought to litigate its constitutional claims in federal court and did not affirmatively file suit in state court. *See* JA166. The Attorney General does not grapple with these key procedural distinctions or respond to Smith & Wesson's argument that the District Court erred

by relying on *Exxon* at the motion-to-dismiss stage.  Opening Br. 31.  The District Court turned the motion-to-dismiss standard on its head by finding that Smith & Wesson's federal complaint contained so many citations to the public record that the company did not need discovery.  JA17 ("[I]t is unclear to this Court how allowing additional '[f]ulsome discovery' in the District Court Action, *see* D.E. 67 at 10, would so fundamentally alter the strength of S&W's underlying constitutional claims, which, by S&W's own admission, are already well-supported by extensive citations to the public record.").  Rather than recognizing that well-pled facts mean a case should proceed to discovery, the District Court used Smith & Wesson's well-pled allegations to justify dismissal.  The Attorney General fails to defend that backward reasoning.

New Jersey's preclusion analysis is significantly more nuanced than the District Court's analysis.  Here, the acts complained of, demands for relief, and theories of recovery are different in the two proceedings.  The federal case requires discovery on the Attorney General's concerted effort to silence speech with which it disagrees, including its use of outside counsel on a contingency basis.  *See Smith & Wesson Brands, Inc.*, 27 F.4th at 896-97 (Matey, J., concurring).  Smith & Wesson seeks an end to the Attorney General's biased investigation and a finding that the Hazardous Products Regulation is unconstitutional, relief that the Chancery Division could not grant.  Opening Br. 37 (collecting cases).

23

Likewise, the material facts and evidence required in each proceeding are different.  This case will involve testimony and documents to prove the Attorney General's bias.  The summary action required only proof that Smith & Wesson had not produced documents; there was no discovery taken and no witnesses presented.  To argue that the summary action was full and fair, the Attorney General urges that the summary action was like a Rule 12 motion.  Resp. Br. 32.  Not so.  The more accurate analogy would be if a federal *defendant* moved to dismiss and the court entered judgment in the *plaintiff's* favor, not just on the motion but resolving the entire case.

A detailed review of the two complaints, the potential evidence in the respective cases, and the varied requests for relief demonstrate that claim preclusion is not appropriate here.

2.    The response brief includes a cursory paragraph about issue preclusion—an issue the District Court did not address.  Resp. Br. 25.  This Court likewise should not reach issue preclusion because, "[g]enerally, in the absence of exceptional circumstances, [this Court] decline[s] to consider an issue not passed upon below." *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 545 (3d Cir. 2017) (internal quotation marks omitted).  The Attorney General does not identify any exceptional circumstances, and none exist.  *See id.*

In any event, issue preclusion does not apply here for the same reasons claim preclusion does not apply. *First*, New Jersey courts do not apply issue preclusion when there was not a full and fair opportunity to litigate. *Pace v. Kuchinsky*, 789 A.2d 162, 171 (N.J. App. Div. 2002). The same structural problems with summary actions that are described in above (and in the opening brief) apply with equal force to issue preclusion. *Second*, issue preclusion does not apply because *Bruen* changed the Second Amendment analysis, strengthening Smith & Wesson's objection to the Subpoena, *see* Section II.C below. *Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1010 (N.J. 2006).[7]

### C.   Under *Bruen*, the Second Amendment Analysis Changed After the Chancery Division's Order.

The Attorney General now has the burden to establish that the restrictions on Smith & Wesson's Second Amendment rights stemming from the Subpoena are part of the "historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S. Ct. at 2127. Government action targeting First Amendment speech espousing that firearms are useful for safety and self-defense cannot be justified as targeting potential fraud. *See id.* The very concept that firearms are

---

[7] Moreover, the Attorney General fails to point to any case-dispositive issue that was litigated in the summary action.

useful for safety and self-defense is constitutionally enshrined in, and at the very core of, the Second Amendment.

The Attorney General argues a change in the law is "no exception" to claim preclusion. Resp. Br. 37. However, in *City of Plainfield v. Public Service Electric & Gas Co.*, 412 A.2d 759, 766 (N.J. 1980), the New Jersey Supreme Court explained that a change in the law can be an exception to *res judicata*. *Id.* Although *City of Plainfield* was resolved on issue preclusion grounds, the Court embraced opinions that dealt with both doctrines. *See id.* (citing, *e.g.*, *Jackson v. DeSoto Par. Sch. Bd.*, 585 F.2d 726, 729 (5th Cir. 1978)); *see also* Francis C. Amendola, *et al.*, 50 C.J.S. Judgments § 966. The Attorney General selectively quotes Wright and Miller, but it states that the "easiest illustrations" of when a change in law is an exception to claim preclusion "are [the] development of constitutional principles in cases that challenge continuing conduct of broad public importance." Wright & Miller, *Federal Practice and Procedure* § 4415.

The Attorney General cannot sidestep *Bruen*.

**D.    The District Court Erred by Relying on the Entire Controversy Doctrine, an Argument the Attorney General's Office Did Not Even Press.**

The District Court's reliance upon the entire controversy doctrine is inconsistent with New Jersey law because the doctrine's plain language *excludes* all counterclaims in summary actions. *See* N.J.R. 4:30A. The Attorney General

provides no persuasive defense of the District Court, incorrectly contending in a voluminous footnote that the court's findings related to claim preclusion alone. Resp. Br. 33 n.4.  The District Court's reasoning was wrong.

## III.  The District Court's Order Should Be Reversed Because Smith & Wesson Reserved Its Right to Proceed in Federal Court.

Smith & Wesson reserved its constitutional claims for federal court.  *See England v. La. State Bd. of Med. Examiners*, 375 U.S. 411, 421-22 (1964); JA189.

The Attorney General contends that "*England*'s own reasoning 'makes clear [its] holding was limited to' *Pullman* abstention."  Resp. Br. 34 (quoting *San Remo Hotel, L.P. v. City & Cnty. of S.F., Cal.*, 545 U.S. 323, 339 (2005)).  Rather than saying "*Pullman* abstention," however, the Court said the opposite by distinguishing the petitioners' case as "fundamentally distinct" and never limited *England* in the way the Attorney General suggests.  *San Remo Hotel*, 545 U.S. at 339.  The Supreme Court's actual reasoning was that the takings case before it was different than the typical *England* case where federal constitutional rights are at stake "that can be avoided if a state court construes the statute in a particular manner."  *San Remo Hotel*, 545 U.S. at 339.  Neither *San Remo Hotel* nor *England* limits the doctrine to *Pullman* cases.  *See id.*; *England*, 375 U.S. at 415.

The Attorney General does not say why this case would fall outside the *England* doctrine's parameters.  It addresses the Court's recognition in *Bradley v.*

*Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1072 (3d Cir. 1990), that *England* reservations apply beyond *Pullman* by saying the Court has assumed for the sake of argument that *San Remo Hotel* abrogated *Bradley*.  Resp. Br. 35.  But, as explained above, that assumption was incorrect.  The logical and equitable reasons that supported the *England* Court's decision are present here.  As the federal-court plaintiff, Smith & Wesson should be permitted to pursue its never-resolved claims on the merits.

## CONCLUSION

The District Court's judgment should be reversed.

Dated:  July 14, 2023

Respectfully submitted,

*/s/ Courtney G. Saleski*
Courtney G. Saleski
**DLA PIPER LLP (US)**
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
Tel: (215) 656-2431
courtney.saleski@dlapiper.com

Joseph A. Turzi
Edward S. Scheideman
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Tel: (202) 799-4000
joe.turzi@dlapiper.com
edward.scheideman@dlapiper.com

Christopher M. Strongosky
**DLA PIPER LLP (US)**
51 John F. Kennedy
Parkway, Suite 120
Short Hills, NJ 07078
Tel: (973) 520-2550
christopher.strongosky@dlapiper.com

*Attorneys for Plaintiffs-Appellants*
*Smith & Wesson Brands, Inc.*
*Smith & Wesson Sales Company*
*Smith & Wesson Inc.*

## <u>CERTIFICATION OF COMPLIANCE</u>

I, Courtney G. Saleski, certify:

***Word Count.***   This brief complies with Federal Rule of Appellate Procedure 32(a)(7) and contains 6,496 words, as counted by Microsoft Office word-processing software.

***Typeface.***   This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

***Electronic Filing.***   I prepared the electronic version of this brief in portable document format; it is identical to the paper version of the brief filed with the Court. I ran a virus scan on the electronic version of this brief using Cisco Threat Grid software, which has no version number, and no virus was detected.

*/s/ Courtney G. Saleski*
Courtney G. Saleski

July 14, 2023

## <u>CERTIFICATE OF SERVICE</u>

I, Courtney G. Saleski, hereby certify that on July 14, 2023, I caused Appellants' Reply Brief to be served on all counsel of record listed on the CM/ECF Service List.

*/s/ Courtney G. Saleski*
Courtney G. Saleski

July 14, 2023